# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| ASHLEY ALBERT, et al.,<br><br>                                        Plaintiffs,<br><br>     v.<br><br>GLOBAL TEL\*LINK CORP., et al.,<br><br>                                      Defendants. | C.A. No. 8:20-cv-01936<br><br>**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL** |

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND ....................................................................................................2

III. ARGUMENT..........................................................................................................3

    1.    Proposed Co-Lead Counsel initiated this class action after an extensive investigation into the inmate calling services industry. ............................................4

    2.    Proposed Co-Lead Counsel have substantial experience litigating and prevailing in complex antitrust and RICO class actions.........................................7

        a.    Handley Farah has a team of extraordinary lawyers with extensive experience litigating both antitrust claims and RICO claims against powerful corporations...................................................................8

        b.    Cohen Milstein is one of the largest and most respected plaintiffs' firms in the country, with a proven record of obtaining extraordinary results for class members in complex class actions. ...........12

    3.    Proposed Co-Lead Counsel have the resources to pursue these claims and will manage this case with a focus on efficiency and effectiveness. ..............16

    4.    All plaintiffs' firms and plaintiffs support the appointment of Proposed Co-Lead Counsel. ..................................................................................................17

IV. CONCLUSION.....................................................................................................17

# I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(g), Plaintiffs Ashley Albert, Ashley Baxter, Karina Jakeway, and Melinda Jabbie (collectively "Plaintiffs") respectfully move the Court for an order appointing the following law firms as Interim Co-Lead Class Counsel: Handley Farah & Anderson PLLC ("Handley Farah") and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") (collectively "Proposed Co-Lead Counsel").[1] This motion is supported by all counsel for Plaintiffs in this action and is not opposed by any of the Defendants.[2] Granting this motion will prove beneficial to the efficient and successful representation of the proposed class.[3]

Proposed Co-Lead Counsel initiated this class action litigation on June 29, 2020, after undertaking an extensive investigation into Defendants' violations of the antitrust laws and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). This investigation involved far more than simply relying on public statements. It included conducting, with the assistance of a licensed private investigator, dozens of interviews with industry participants and other confidential witnesses to uncover incriminating facts. Proposed Co-Lead Counsel devoted hundreds of hours to conducting the factual investigation necessary to present the highly detailed allegations in the complaint ("*Albert* Complaint").

---

[1] Plaintiffs' understanding is that there was no need to submit a letter request to the Court prior to the filing of the instant motion. The Letter Order Regarding the Filing of Motions only requires the submission of such letters when parties file substantive motions, discovery motions, post-judgment motions or other motions following dismissal of the case, and the instant motion is none of those things. ECF No. 3. However, should the Court prefer that Plaintiffs file a pre-motion letter, Plaintiffs stand ready to do so.

[2] The term "Defendants" herein refers to the companies Global Tel*Link Corp., Securus Technologies, LLC, and 3Cinteractive Corp.

[3] *See* Manual for Complex Litigation § 21.11 at 246 (4th ed. 2006) (the "Manual") ("[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement.").

To our knowledge, Proposed Co-Lead Counsel are the first and only firms to have conducted any investigation of the underlying claims. By extension, Proposed Co-Lead Counsel are also the first and, thus far, only firms to have filed a lawsuit on behalf of the proposed class.

Moreover, Proposed Co-Lead Counsel are well-suited to manage the litigation of this class action. The firms—both collectively and individually—bring exemplary qualifications and resources to bear, and their attorneys have decades of class action experience. Indeed, another judge in this District recently appointed both firms co-lead counsel in another antitrust class action, *Jien v. Perdue Farms, Inc.*, No. 1:19-CV-2521-SAG (D. Md.), and attorneys from both firms have been appointed lead counsel in numerous other class actions involving antitrust and RICO claims.

As a result, appointing Proposed Co-Lead Counsel will promote the orderly progress of this complex litigation and ensure its prosecution in an efficient and effective manner. Proposed Co-Lead Counsel will litigate Plaintiffs' claims with a tight-knit team of skilled attorneys who have a well-established history of prevailing on antitrust and RICO claims. Proposed Co-Lead Counsel will also (and have already begun to) work with defense counsel on case management issues in order to structure and streamline communication with the Court.

Accordingly, consistent with Rules 23(g) and sound principles of effective and efficient case management, Plaintiffs respectfully request that the Court appoint Handley Farah and Cohen Milstein as Interim Co-Lead Class Counsel.

## II. BACKGROUND

On June 29, 2020, on behalf of themselves and a class of all others similarly situated, Plaintiffs filed the *Albert* Complaint against Defendants. Plaintiffs allege that Defendants conspired to fix inflated prices for "single calls" between incarcerated individuals and their family members, friends, attorneys, and others in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 and, in order to charge inflated prices, lied to local governments and their own customers about

the costs of those calls in violation of RICO. No other complaint containing such allegations has been filed.

Since the filing of the *Albert* Complaint, Proposed Co-Lead Counsel have conferred with defense counsel to ensure the efficient and effective litigation of Plaintiffs' claims. For example, Proposed Co-Lead Counsel conferred with defense counsel regarding a proposed schedule for responses to the *Albert* Complaint, and the parties subsequently submitted a joint stipulation containing an agreed upon briefing schedule for motions to dismiss, which the Court granted in part on July 27, 2020. ECF No. 31. Notably, Defendants do not oppose the instant motion.

### III. ARGUMENT

Rule 23 of the Federal Rules of Civil Procedure provides that a court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." In complex cases such as this one—which involves both antitrust and RICO claims asserted against three separate defendants—courts customarily appoint interim class counsel to coordinate the prosecution of the case. *See, e.g.*, *Good v. Am. Water Works Co.*, No. 2:14-01374, 2014 WL 2481821, at *3 (S.D. W. Va. June 3, 2014) ("The interim appointment may produce significant benefits in terms of coordinating the litigation in the pre-certification context.").

Courts, including in this District, often appoint leadership in complex class suits even when the firms seeking leadership are unopposed. *See, e.g.*, Order, *Jien v. Perdue Farms, Inc.*, No. 1:19-cv-02521 (D. Md. Oct. 8, 2019), ECF No. 75 (appointing as interim co-lead class counsel Handley Farah, Cohen Milstein, and a third firm despite the absence of a competing leadership bid); Order, *Moehrl v. Nat'l Ass'n of Realtors*, No. 1:19-cv-01610 (N.D. Ill. May 30, 2020), ECF No. 171 (holding that it was "desirable to clarify the leadership structure" by appointing Cohen Milstein

and two other firms as interim co-lead counsel despite the absence of any "rivalry or uncertainty among Plaintiffs' counsel[]").

If appointed, Proposed Co-Lead Counsel will be responsible for the day-to-day conduct of the litigation and for carrying out the orders of the Court. Proposed Co-Lead Counsel will effectively execute that responsibility, including by presenting written and oral arguments to the Court; meeting and conferring with Defendants; organizing discovery requests and responses; examining deponents; delegating specific tasks to other Plaintiffs' counsel; ensuring that schedules are met; and other duties to coordinate pretrial activities as authorized by the Court. *See* Manual § 10.221. While doing so, Proposed Co-Lead Counsel will ensure that this matter is adjudicated in a cost-effective and efficient manner, including by establishing a time and expense reporting protocol for all counsel and by confirming that no work is duplicated.

The standards for appointment of interim leadership are well-established. A court considering the appointment of interim class counsel may consider the following criteria: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Application of these factors strongly supports appointing Proposed Co-Lead Counsel.

**1. Proposed Co-Lead Counsel initiated this class action after an extensive investigation into the inmate calling services industry.**

The first factor to consider is "the work counsel has done in identifying or investigating potential claims in the action." Fed. R. Civ. P. 23(g)(1)(A). Handley Farah initiated the investigation into Defendants' misconduct in 2019. After gathering significant evidence of wrongdoing, Handley Farah invited Cohen Milstein to assist with the continuation of the

investigation. Ultimately, Proposed Co-Lead Counsel conducted an exhaustive factual inquiry, during which attorneys and a licensed private investigator interviewed dozens of former employees and industry participants to uncover Defendants' misconduct. Proposed Co-Lead Counsel submit that absent their in-depth investigation, this litigation would not have been brought.

The extraordinary factual allegations in the *Albert* Complaint reflect the substantial commitment of time and resources by Proposed Co-Lead Counsel to investigate and develop Plaintiffs' claims.[4] Those factual allegations include:

**Defendants' CEOs and Employees Discussed Pricing and Exchanged Strategic Information**: Proposed Co-Lead Counsel's investigation revealed that former GTL CEO Brian Oliver and former GTL President Jeffrey Haidinger "met regularly with Rick Smith, then Chief Executive Officer of Securus, for dinner and drinks." Compl. ¶ 77. During these meetings, the ostensible competitors "shared strategic information" and "would discuss what prices should be charged for ICS calls and which companies were securing which ICS contracts, among other industry issues." *Id*. In addition, at various industry events and summits, GTL and Securus employees "regularly shared with one another considerable strategic information, including the optimal statements to make to governments in order to secure ICS contracts, how to persuade governments to accept the terms of an ICS contract, and how to best market ICS calls to governments." *Id*. ¶ 115. The existence of these collusive meetings was not publicly known and was contrary to the image that Securus and GTL cultivated as "fierce competitors in the ICS industry." *Id*. ¶ 77. These meetings were uncovered by Proposed Co-Lead Counsel through interviews with Defendants' former employees.

---

[4] Proposed Co-Lead Counsel only offer these allegations here to illustrate the scope and quality of their investigation. Obviously, Defendants will have the opportunity to present their defenses to these allegations throughout the litigation.

**The Falsity of Defendants' Statements on the Costs of Providing Single Calls**: Proposed Co-Lead Counsel's investigation also revealed how Defendants' statements to contracting governments, consumers, and others concerning the costs of providing single calls were false. "Specifically, Defendants repeatedly and falsely represented that most of the revenue from each such single call went to pay transaction fees imposed by 3CI to implement those calls," when, in fact, "the transaction fees paid by Securus and GTL to 3CI to operate single calls comprised *less than half* of the $14.99 or $9.99 charged for those calls." *Id*. ¶ 18. The actual cost of the transaction fees paid by Securus and GTL to 3CI was a "well-kept industry secret" (*id*.) and was "concealed" from "contracting governments, consumers and even most of [Defendants'] own employees," *id*. ¶ 128. Proposed Co-Lead Counsel were able to expose the true cost of the transaction fees only "through a painstaking and extensive investigation that involved contacting confidential witnesses with the assistance of a licensed private investigator." *Id*. ¶ 132.

**Defendants' Misrepresentations and Omissions to Contracting Governments and Consumers**: In addition, Proposed Co-Lead Counsel's investigation uncovered that Defendants materially misrepresented and omitted the true costs of the transaction fees paid to 3CI in at least six ways. These include: (1) "during direct communications and negotiations with contracting governments"; (2) "in written bids submitted to, and written contracts entered into with, contracting governments"; (3) "in monthly written commission reports provided to contracting governments"; (4) "on public websites directed toward consumers and governments"; (5) "in billing charges made to consumers' credit cards"; and (6) "in billing charges made to consumers' mobile phone accounts." *Id*. ¶ 142. Exposing the existence and scope of Defendants' misrepresentations required Proposed Co-Lead Counsel to conduct interviews with multiple former executives and employees of Defendants. For instance, one former Securus executive

interviewed by Proposed Co-Lead Counsel explained that Securus's salesforce would "falsely inform the contracting government that . . . the 'vast majority' of the" amounts charged for single calls "was necessarily paid to a third-party vendor (i.e. 3CI) to cover transaction fees." *Id*. ¶ 145.

**The ICS Market Was Susceptible to Collusion**: Proposed Co-Lead Counsel also investigated the structure and operation of the inmate calling services ("ICS") market to understand its susceptibility to Defendants' collusive and deceptive actions. For example, Proposed Co-Lead Counsel's investigation revealed that the ICS industry is "largely duopolistic," with GTL and Securus charging approximately 80% of all ICS calls in the United States, (*id*. ¶ 108); has high entry barriers—including due to the "substantial outlay of upfront capital" required to secure ICS contracts—that have the effect of limiting new market entrants and preventing smaller ICS providers from capturing market share, (*id*. ¶¶ 109–10); and is "characterized by inelastic supply and inelastic demand" because correctional facilities are served only by a single ICS provider, making inmates and their families, friends, and lawyers "captive markets," (*id*. ¶¶ 111–12).

## 2. Proposed Co-Lead Counsel have substantial experience litigating and prevailing in complex antitrust and RICO class actions.

Class members should be represented by the counsel that will get them the best results. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii) (a court must consider "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"). Handley Farah and Cohen Milstein are eminently qualified to serve as Co-Lead Class Counsel. As illustrated below, Proposed Co-Lead Counsel possess the requisite experience, knowledge, and resources to skillfully and efficiently prosecute this litigation on behalf of the putative class. The appointment of these highly qualified firms will allow Plaintiffs to effectively manage this litigation, draw on each firm's knowledge and experience, and combine forces to litigate against formidable defendants and their counsel. For that reason, approximately ten months ago, a judge in this District

appointed Handley Farah and Cohen Milstein to serve together (with a third firm) as interim co-lead class counsel in another nationwide antitrust class action. Order, *Jien v. Perdue Farms, Inc.*, No. 1:19-cv-02521 (D. Md. Oct. 8, 2019), ECF No. 75.

> **a. Handley Farah has a team of extraordinary lawyers with extensive experience litigating both antitrust claims and RICO claims against powerful corporations.**

Handley Farah spearheaded the investigation into Defendants' misconduct that led to the filing of this litigation. Handley Farah conducted in-depth interviews with dozens of industry participants and former employees to uncover the factual underpinnings of the secretive price-fixing conspiracy and fraudulent misrepresentations detailed in the *Albert* Complaint. With extensive, non-public knowledge of the alleged misconduct and relevant witnesses, the appointment of Handley Farah and Cohen Milstein as Interim Co-Lead Class Counsel will best serve the interests of the proposed class.

Handley Farah's attorneys have considerable experience litigating complex class actions alleging violations of the antitrust and RICO laws. Their experience is detailed in the firm's résumé, which profiles the attorneys currently working on this case and is attached as Exhibit A to the Declaration of George F. Farah, filed concurrently herewith. Notably, two of Handley Farah's largest and most vibrant practice areas involve antitrust enforcement and consumer protection, and the firm's special expertise in these legal fields makes it uniquely qualified to co-lead this litigation. Indeed, Handley Farah's lawyers have served as co-lead counsel in, and successfully prosecuted, multiple antitrust and consumer class actions on behalf of nationwide classes.

The following members of the Handley Farah litigation team in this matter will provide the putative class with the highest level of representation and include:

**George F. Farah:** Mr. Farah is a graduate of Harvard Law School and Princeton University and a partner at Handley Farah. One of the founding members of Handley Farah, Mr.

Farah chairs the firm's antitrust practice group and leads the antitrust class actions litigated by the firm. Prior to establishing Handley Farah, Mr. Farah spent 14 years as an attorney at Cohen Milstein, where he was a partner in the antitrust practice group and served in leadership positions in multiple antitrust class actions.

Mr. Farah has prosecuted many nationwide class actions against large corporations that have violated the antitrust laws, recovering hundreds of millions of dollars in damages. For example, he served as co-lead counsel in *In re: OSB Antitrust Litigation* (E.D. Pa.) and *In re Hydrogen Peroxide Antitrust Litigation* (E.D. Pa.), both price-fixing conspiracies resulting in settlements in excess of $100 million.

Mr. Farah also has substantial expertise litigating class action claims alleging violations of RICO. For example, he served as lead counsel in *Carlin v. Dairy America, Inc.* (E.D. Cal.), which accused major dairy processors of making fraudulent misrepresentations to governments in violation of RICO in order to depress compensation to dairy farmers. In finally approving a $40 million settlement in that case, the Eastern District of California held that "the Court takes a favorable view of the breadth and depth of experience of Plaintiffs' Counsel, recognizes the extraordinary efforts they made on behalf of the class, and . . . finds the settlement amount extraordinary." *Carlin v. Dairy America, Inc.*, 380 F. Supp. 3d 998, 1021 (E.D. Cal. 2019).

**Matthew K. Handley:** Mr. Handley is a graduate of the University of Texas School of Law and Princeton University and a partner at Handley Farah's Washington, DC office. One of the founding members of Handley Farah, Mr. Handley has litigated hundreds of class and collective actions around the country. Prior to establishing Handley Farah, Mr. Handley was Director of Litigation at the Washington Lawyers' Committee for Civil Rights and Urban Affairs, where he supervised the organization's active litigation docket, including cases involving the rights

of inmates and their families. Prior to directing litigation at the Washington Lawyers' Committee for Civil Rights and Urban Affairs, Mr. Handley spent eight years as an attorney at Cohen Milstein, where he was a partner and served in leadership positions in multiple complex class actions.

Mr. Handley has devoted much of his legal career to litigating claims against corporations that have unlawfully depressed compensation to their employees, including through violations of the federal antitrust laws. For example, Mr. Handley serves as co-lead counsel in *Jien v. Perdue Farms, Inc.*, No. 1:19-CV-2521-SAG, which is pending in this District and alleges that poultry processors secretly conspired to depress the compensation of poultry plant workers.

Mr. Handley also has experience litigating RICO claims on behalf of plaintiffs. He is currently counsel in *Wencelaus Provost, Jr. v. First Guaranty Bank* (E.D. La.), which alleges that a commercial bank made fraudulent misrepresentations to the United States Department of Agriculture in violation of RICO, and in *Burrell et. al. v. Lackawanna County et. al* (M.D. Pa.), which alleges that Lackawanna County violated RICO by forcing civilly detained debtors to work at a private recycling plant.

Mr. Handley's litigation on behalf of vulnerable populations has been widely recognized. For instance, his efforts on behalf of exploited workers are featured prominently in the 2018 book *The Girl from Kathmandu, Twelve Dead Men and a Woman's Quest for Justice*, by award-winning journalist Cam Simpson. In *Adhikari v. Daoud & Partners*, the lawsuit chronicled in that book, the Southern District of Texas noted "that herculean efforts of Plaintiffs' counsel have been in the highest traditions of the bar. No lawyer or group of lawyers could have done more or done better." In 2018, Mr. Handley was a Finalist for Public Justice's Trial Lawyer of the Year.

**William A. Anderson:** Mr. Anderson is a graduate of American University's Washington College of Law and The George Washington University, and is a founding partner at Handley

Farah. As chair of the firm's consumer protection practice, Mr. Anderson has litigated dozens of nationwide consumer class actions to recover monies for overcharged consumers. Before establishing Handley Farah, Mr. Anderson spent 14 years with the law firm Cuneo Gilbert & LaDuca, where he was a partner litigating consumer and antitrust class actions.

Since entering private practice following a clerkship with Judge Rhonda Reid Winston of the Superior Court of the District of Columbia, Mr. Anderson has successfully prosecuted consumer claims against some of the largest corporations for making fraudulent misrepresentations. In so doing, Mr. Anderson has halted deceptive business practices and recovered hundreds of millions of dollars for consumers that were harmed by them. For example, Mr. Anderson served as a co-lead counsel in *True v. American Honda Motor Co.*, (C.D. Cal.), which resulted in a settlement in excess of $50 million for consumers, and *Friedman v. Guthy-Renker* (C.D. Ca.), which secured a $26.25 million settlement for consumers.

Mr. Anderson has been recognized for his achievements, including being named as a Super Lawyers "Rising Star" for 2014, 2015, 2016, 2017 and 2018.

**Rebecca Chang:** Ms. Chang graduated from Yale University and Harvard Law School and is an Associate at Handley Farah. She litigates complex antitrust and consumer class actions. For example, she is currently counsel in *Jien v. Perdue Farms, Inc.* (D. Md), which is described above; *Moehrl v. National Association of Realtors* (D. Ill), which alleges that the four largest real estate brokerages conspired to inflate commissions charged to home sellers; *Orshan v. Apple Inc.* (N.D. Ca), which alleges that Apple Inc. made misrepresentations about devices that resulted in overcharging consumers; and *Clemmons v. Samsung Electronics America, Inc.* (D.N.J)*,* which alleges that Samsung overcharged consumers for smartwatches that possessed inadequate battery life.

**Rachel Nadas:** Ms. Nadas graduated from American University Washington College of Law and Brandeis University and is an Associate at Handley Farah. She litigates complex class and collective actions, including antitrust and RICO claims. For example, she is currently counsel in the following cases described above: *Jien v. Perdue Farms, Inc.* (D. Md); *Burrell v. Lackawanna County* (M.D. Pa.); and *Wencelaus Provost, Jr. v. First Guaranty Bank* (E.D. La.). Prior to joining Handley Farah, Ms. Nadas was a Staff Attorney in the Economic Justice and Immigrant Advocacy programs at the Legal Aid Justice Center in Virginia.

      **b.**      **Cohen Milstein is one of the largest and most respected plaintiffs' firms in the country, with a proven record of obtaining extraordinary results for class members in complex class actions.**

Cohen Milstein is one of the oldest, largest, and most successful firms in the nation dedicated primarily to the prosecution of class actions.[5] Cohen Milstein's background and experience are more fully detailed in the firm résumé attached as Exhibit A to the Declaration of Brent W. Johnson, filed concurrently herewith. Cohen Milstein has particular skills and expertise in enforcing federal and state antitrust laws, with thirty lawyers dedicated to antitrust practice specifically.

Cohen Milstein possesses the resources and the expertise to litigate large antitrust class successfully through trial and appeal. Recently, Cohen Milstein served as co-lead counsel in *In re Urethane Antitrust Litigation* (D. Kan.), where it secured the largest ever price-fixing jury verdict in United States history and obtained a $1.06 billion judgment. Cohen Milstein successfully defended that judgment on appeal in the United States Court of Appeals for the Tenth Circuit, and recouped $974 million for the class (including an $835 million settlement with Dow Chemicals

---

[5] Forbes has called Cohen Milstein a "class action powerhouse," while Inside Counsel has dubbed Cohen Milstein "[t]he most effective law firm in the United States for lawsuits with a strong social and political component."

while Dow's petition for certiorari was pending). In approving the firm's petition for fees, United States District Judge John W. Lungstrum noted:

> Hundreds of millions were at stake here, and counsel achieved incredible success on the merits of the claims. . . . The case was not settled pretrial for a percentage of the damages, nor was it settled on appeal for a steep discount from the judgment amount; instead counsel litigated the case to a verdict and an appellate affirmance. Counsel achieved this verdict and judgment without the benefit of a government investigation or prosecution of members of the alleged antitrust conspiracy. The subject matter was complex and not easily digestible by a lay jury, and there were no personal injuries to heighten sympathy. In almost 25 years of service on the bench, this Court has not experienced a more remarkable result.

Memorandum and Order, *In re Urethane Antitrust Litig.*, MDL No. 1616 (July 29, 2018), ECF No. 3272 at 10-11.

Cohen Milstein has achieved extraordinary settlements in a number of other antitrust cases. For example, Cohen Milstein secured $560 million in settlements in *In re E-Books Antitrust Litigation* (S.D.N.Y.) and $191 million in settlements in *In re Domestic Drywall Antitrust Litigation* (E.D. Pa.).

Cohen Milstein's antitrust prowess has been recognized by numerous industry associations and legal publications. For instance, Cohen Milstein was chosen by the Legal 500 for nine straight years as one of the top antitrust class action firms in the country and by the National Law Journal in 2016 and 2018 as a "Winner" and "Finalist" respectively in the "Elite Trial Lawyers – Antitrust" category. It is also one of the few plaintiffs' firms to be selected by Law360 as a "Competition Group of the Year"—an honor it has received twice over the past five years.

Cohen Milstein has also successfully prosecuted RICO claims in multiple matters. For example, Cohen Milstein served as lead counsel in *Carlin v. DairyAmerica, Inc.* (E.D. Cal.), in which it obtained a $40 million settlement following the court's denial of the defendants' motions to dismiss the class's RICO claims. Cohen Milstein also represented various public pension funds

in New York City in litigation concerning deceptive practices by Valeant Pharmaceuticals. The court there held that the plaintiffs' RICO claims were adequately pleaded. Memorandum Opinion, *N.Y.C. Emps. Ret. Sys. v. Valeant Pharm. Int'l, Inc.*, No. 18-cv-0032 (D.N.J. Sept. 26, 2018).

The following members of the Cohen Milstein litigation team in this matter will provide the putative class with the highest level of representation:

**Benjamin D. Brown**: Mr. Brown graduated *cum laude* from Harvard Law School and Phi Beta Kappa from the University of Wisconsin. As a Partner and Co-Chair of the firm's Antitrust Practice Group, Mr. Brown has been appointed by federal courts to serve as co-lead counsel for plaintiffs in numerous important antirust matters including *Mixed Martial Arts (MMA) Antitrust Litigation* (D. Nev.) and *In re Plasma-Derivative Protein Therapies Antitrust Litigation* (N.D. Ill.). Mr. Brown also served as co-lead counsel in *Carlin v. DairyAmerica, Inc.* (E.D. Cal.), which alleges that defendants made fraudulent misrepresentations to suppress compensation paid to dairy farmers in violation of RICO.

In recognition of his significant achievements, Mr. Brown was named a "Thought Leader – Competition" by Who's Who Legal" in 2018. Mr. Brown has also been recognized by The Legal 500 as one of the nation's leading class action antitrust attorneys. Mr. Brown is an adjunct professor at Georgetown Law School, where he teaches Complex Litigation, a course that explores the policy and procedures implicated by aggregated, high stakes, multi-party litigation, especially class actions.

Before joining Cohen Milstein, Mr. Brown was a Trial Attorney in the U.S. Department of Justice's Antitrust Division and a Special Assistant United States Attorney in the Eastern District of Virginia.

**Brent W. Johnson**: Mr. Johnson graduated from Stanford Law School and *magna cum laude* from Duke University. As a Partner and Co-Chair of the firm's Antitrust Practice Group, Mr. Johnson has been appointed as co-lead counsel and helped lead co-lead counsel teams in a number of high-stakes antitrust class actions, including *In re Domestic Drywall Antitrust Litigation* (E.D. Pa.), in which Cohen Milstein (as co-lead counsel) obtained $191 million in settlements for direct purchasers and *In re Animation Workers Antitrust Litigation* (N.D. Cal.), where Cohen Milstein (as co-lead counsel) recovered nearly $169 million for the class of workers harmed by defendants' agreement to suppress employee wages and salaries.

Mr. Johnson was recognized in 2017, 2018 and 2019 by The Legal 500 as a "Next Generation Lawyer," an honor bestowed upon less than a dozen lawyers positioned to become leaders in the field of antitrust civil litigation and class actions. He also was named by Super Lawyers a "Rising Star" in Antitrust Litigation in 2016, 2017, and 2018 and a Super Lawyer for Antitrust Litigation in 2020. He was named a "Future Star" by Benchmark Litigation in 2018. Lawdragon named him to its 2019 list of "500 Leading Plaintiff Financial Lawyers."

**Robert A. Braun**: Mr. Braun graduated from Yale Law School and *summa cum laude* from Princeton University. As a Partner in the firm's Antitrust Practice Group, Mr. Braun has played key roles in several successful antitrust suits including *In re Resistors Antitrust Litigation* (N.D. Cal.) in which Cohen Milstein (as co-lead counsel) obtained more than $50 million in settlements and *In re Loestrin Antitrust Litigation*, where Cohen Milstein (as co-lead counsel) obtained $63.5 million for end payors of oral contraceptives. Among other matters, Mr. Braun currently helps lead *Moehrl v. National Association of Realtors* (N.D. Ill.), in which Cohen Milstein (as co-lead counsel) represents a proposed class of home sellers in antitrust litigation

against the four largest national real estate services conglomerates, and their trade association. Mr. Braun was recognized as a "Rising Star" by Super Lawyers in 2018, 2019, and 2020.

Prior to joining Cohen Milstein, Mr. Braun served as a law clerk for the Honorable Carolyn Dineen King, U.S. Court of Appeals for the Fifth Circuit, and the Honorable Lee H. Rosenthal, Chief Judge of the U.S. District Court for the Southern District of Texas.

**Christopher J. Bateman**: Mr. Bateman graduated *cum laude* from both Harvard Law School and Dartmouth College. He currently works on a variety of antitrust matters, including *In re Interest Rate Swaps Antitrust Litigation* (S.D.N.Y.), *Iowa Public Employees' Retirement System v. Bank of America Corp* (S.D.N.Y.) (concerning the stock lending market), *Old Jericho Enterprise, Inc. v. Visa, Inc.* (E.D.N.Y.) (concerning credit card interchange fees), and *Alternative Finance, Inc. v. Fair Isaac Corp.* (N.D. Ill.) (concerning credit scores).

Prior to joining Cohen Milstein, Mr. Bateman was a law clerk for the Honorable Naomi Reice Buchwald, U.S. District Court for the Southern District of New York. Before law school, Mr. Bateman was an editorial associate at Vanity Fair for several years, where he wrote about politics, civil rights, culture, and environmental issues, and edited feature articles

**3. Proposed Co-Lead Counsel have the resources to pursue these claims and will manage this case with a focus on efficiency and effectiveness.**

Proposed Co-Lead Counsel stand ready to dedicate all the resources necessary to represent and protect the interests of the proposed class through rigorous motion practice, discovery, class certification, trial, and any appeals. The firms have demonstrated their dedication and commitment in many complex cases, as noted above, and will bring the same resources and commitment to ensure the successful prosecution of this case. Moreover, Proposed Co-Lead Counsel will do so in a manner that is efficient and economical, monitoring the time and expenses of all Plaintiffs' counsel to ensure that the litigation is conducted without duplication or excess. *See Manual* §

10.22, at 24 (courts consider whether the proposed leadership will "act fairly, efficiently, and economically in the interest of all parties and parties' counsel").

4. **All plaintiffs' firms and plaintiffs support the appointment of Proposed Co-Lead Counsel.**

Unsurprisingly, given the investigation conducted by Proposed Co-Lead Counsel, no other lawsuit has been filed alleging claims similar to those in the *Albert* Complaint. The three non-profit, public interest law firms that joined Handley Farah and Cohen Milstein in filing the *Albert* Complaint—Justice Catalyst Law, Inc., the Human Rights Defense Center, and the Washington Lawyers' Committee for Civil Rights and Urban Affairs—support this motion and the appointment of Handley Farah and Cohen Milstein as Interim Co-Lead Class Counsel. Courts generally favor such private ordering in appointing class counsel. *See* Manual § 21.272 at 279 ("The lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class interests.").

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court enter an order that appoints Handley Farah and Cohen Milstein as Interim Co-Lead Class Counsel.

Dated: August 6, 2020

Respectfully submitted,

/s/ Matthew K. Handley
Matthew K. Handley (D. Md. Bar # 18636)
Rachel Nadas (*pro hac vice* forthcoming)
HANDLEY FARAH & ANDERSON PLLC
777 6th Street, NW, Eleventh Floor
Washington, DC 20001
Telephone: (202) 559-2433
mhandley@hfajustice.com
rnadas@hfajustice.com

George F. Farah (admitted *pro hac vice*)
Rebecca Chang (admitted *pro hac vice*)

HANDLEY FARAH & ANDERSON PLLC
81 Prospect Street
Brooklyn, NY 11201
Telephone: (212) 477-8090
gfarah@hfajustice.com
rchang@hfajustice.com

William A. Anderson (admitted *pro hac vice*)
HANDLEY FARAH & ANDERSON PLLC
4730 Table Mesa Drive
Suite G-200
Boulder, CO 80305
Telephone: (202) 559-2433
wanderson@hfajustice.com

*/s/ Brent W. Johnson*
Benjamin D. Brown (*pro hac vice forthcoming*)
Brent W. Johnson (admitted *pro hac vice*)
Robert A. Braun (admitted *pro hac vice*)
Christopher J. Bateman (admitted *pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW
5th Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699
bbrown@cohenmilstein.com
bjohnson@cohenmilstein.com
rbraun@cohenmilstein.com
cbateman@cohenmilstein.com

*Proposed Interim Co-Lead Class Counsel*