September 18, 2020

**VIA ECF**

Hon. Paul W. Grimm
U.S. District Court, District of Maryland
6500 Cherrywood Lane, Suite 465A
Greenbelt, Maryland  20770

      Re:    *Albert et al v. Global Tel\*Link Corp. et al*, 8:20-cv-01936-PWG

Dear Judge Grimm:

In accordance with the Court's June 29, 2020 Letter Order (Dkt. No. 3), Defendants Global Tel*Link Corp. ("GTL"), Securus Technologies, LLC ("Securus"), and 3Cinteractive Corp. ("3Ci") request permission to move to dismiss Plaintiffs' Complaint (Dkt. No. 1) under Rule 12(b)(6).

Plaintiffs allege that Defendants conspired to fix prices on inmate calling services ("ICS") "single call products" in violation of the Sherman Act (Count 1) and that Defendants engaged in a pattern of mail fraud and wire fraud in communications with governments and consumers in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO") (Counts 2-7). For the reasons described below, among others, the Complaint fails to state a claim and should be dismissed.

## Antitrust Claim

Section 1 of the Sherman Act, 15 U.S.C. § 1, does not reach mere parallel conduct, and Plaintiffs have failed to satisfy their burden of pleading the required antitrust conspiracy under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Because Plaintiffs allege only a per se violation of Section 1, they must establish a horizontal agreement between Securus and GTL beyond the companies' respective vertical agreements with 3Ci. *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 907 (2007) ("Vertical price restraints are to be judged according to the rule of reason."). The heart of Plaintiffs' claim is that GTL launched its ICS single call products at the same price as the Securus products already on the market. A complaint fails to state a claim where it rests on "descriptions of parallel conduct" that can be explained by "natural, unilateral reaction[s]." *Twombly*, 550 U.S. at 564, 566. Parallel pricing can be a "rational and competitive business strategy." *Id.* at 554. The Complaint itself alleges that a high price for ICS "causes no decrease, or only a relatively small decrease, in the demand for single calls." Compl. ¶ 111. Accordingly, GTL could not have increased revenue or profits by launching at a price below Securus. The Complaint itself shows why GTL's pricing is readily explained without looking for a conspiracy.

*Twombly* suggests that "complex and historically unprecedented changes in pricing structure made at the very same time by multiple competitors, and for no other discernible reason" might suffice to allow a claim based on parallel pricing to survive a motion to dismiss. 550 U.S. at 556 n.4. But there were no changes made by "multiple competitors"—only GTL's launch pricing that matched Securus's existing pricing—and no "complex" price changes are alleged. Courts have dismissed

antitrust claims on similar facts. *See, e.g.*, *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1021-22 (N.D. Cal. 2007) (even allegation that competitors announced products within a few weeks of each other at the same price was insufficient under *Twombly*: "We must remember that competitive market forces will tend to drive the prices of like goods to the same level, so like prices on like products are not, standing alone, sufficient to implicate price-fixing.").

Allegations of communications between Securus and GTL do not constitute the "something more" than parallel conduct required by *Twombly*. 550 U.S. at 557. Although Plaintiffs vaguely allege that executives of GTL and Securus discussed "what prices should be charged for ICS calls," Compl. ¶ 77, Plaintiffs conspicuously *do not allege* that the executives discussed prices for ICS single call products (the subject of this litigation), or even that these discussions occurred before Securus or GTL launched their ICS single call products. Regardless, Securus and GTL had lawful and legitimate reasons to discuss "what prices should be charged for ICS calls" because during the class period the FCC was engaged in rulemaking regarding call rates, in which Securus and GTL filed joint comments regarding proposed caps on ICS call rates and fees for optional financial transaction services related to ICS calls, such as billing directly to a credit card or to a wireless phone account.[1] Preparation of this joint proposal necessarily required discussion of "what prices should be charged for ICS calls." Compl. ¶ 77.

Plaintiffs' antitrust claim against 3Ci fails for the additional reason that the Complaint does not adequately allege 3Ci's involvement in a conspiracy. *Akers v. Md. State Educ. Ass'n*, 376 F. Supp. 3d 563, 573 (D. Md. 2019) (complaint must sufficiently allege each defendant's participation). 3Ci does not compete with Securus or GTL. The Complaint does not allege 3Ci was involved in any call, meeting, or other communication through which a conspiracy allegedly was effected. The allegations that do reference 3Ci lack sufficient detail to state a claim. *Rojas v. Delta Airlines, Inc.*, 425 F. Supp. 3d 524, 543 (D. Md. 2019) (plaintiff must 'identif[y] the particular time, place, and manner in which the [antitrust conspiracy] initially formed.'"). And allegations that 3Ci "marketed and implemented" call programs on behalf of Securus and GTL (Compl. ¶¶ 11, 16, 62–66) do not implicate 3Ci in an alleged price-fixing conspiracy. *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 423 (4th Cir. 2015) ("Antitrust law doesn't recognize guilt by mere association, imputing corporate liability to any affiliate company unlucky enough to be a bystander to its [co-defendant's] alleged misdeeds . . . .").

Beyond the *Twombly* issues, Plaintiffs' antitrust claim should be dismissed for the additional reason that their alleged injuries are too remote from the alleged violation to grant standing. "Antitrust law favors granting standing to the most direct victims of defendants' anticompetitive conduct and denying standing to more remote victims." *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 317 (4th Cir. 2007). Consistent with this principle, an "independent decision" made by a non-defendant—such as a decision to award a contract—breaks "the chain of causation between defendants' actions and a plaintiff's injury" and thus forecloses a plaintiff from establishing antitrust standing. *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, No. 16 CIV. 5263 (AKH), 2018 WL 4830087, at *6 (S.D.N.Y. Oct. 4, 2018); *see also GSI Tech. v. United Memories, Inc.*, No. 5:13-CV-01081-PSG,

---

[1] Comments of Global Tel*Link Corp., et al., WC Docket No 12-375 (Sept. 15, 2014), *at* https://ecfsapi.fcc.gov/file/7522655940.pdf. The court may properly take judicial notice of the FCC proceeding and the filings on the FCC docket. *In re Mun. Mortg. & Equity, LLC, Sec. & Derivative Litig.*, 876 F. Supp. 2d 616, 653 n.7 (D. Md. 2012), *aff'd sub nom. Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874 (4th Cir. 2014).

2014 WL 1572358, at *4 (N.D. Cal. Apr. 18, 2014) (granting motion to dismiss on antitrust standing grounds based on a third-party's "intervening, independent decision to award [a] contract").

Plaintiffs concede that inmates "cannot choose" their ICS provider, but that decision is made by "local and state governments [that] contract with a single ICS provider." Compl. ¶ 4. Governments "select" ICS providers and award contracts following a bidding process that involves "Securus, GTL, and other companies" competing based "on the reasonableness of ICS call rates and the size of the commission percentage" paid to the governments. *Id.* ¶ 7. Where, as here, there is an intervening independent government decision standing between the supposed conduct and the alleged harm, plaintiffs lack antitrust standing as a matter of law.

### RICO Claims

As with their antitrust claim, Plaintiffs' RICO claims fail because their alleged injury is too indirect. *Brandenburg v. Seidel*, 859 F.2d 1179, 1187 (4th Cir. 1988). Because, as conceded in the Complaint, Plaintiffs had no control over the ICS provider that carried their calls or the prices paid, Compl. ¶ 112, misrepresentations allegedly made to them had no effect on their call choices and therefore caused no harm. Plaintiffs allege only indirect harm from misrepresentations allegedly made to governments, which is insufficient to support a RICO claim, because it is merely "contingent or derivative of the harm suffered" by the governments. *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 493–95 (4th Cir. 2018) ("[R]egardless of how foreseeable a plaintiff's claimed injury might be . . . the injury for which a plaintiff may seek damages under RICO cannot be contingent on or derivative of harm suffered by a different party."); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006) (holding that plaintiff injured when defendants allegedly defrauded the state lacked standing); *Rojas*, 425 F. Supp. 3d at 542 ("[T]o the extent that Plaintiffs attempt to rely on misrepresentations that Defendants allegedly made to [government representatives], there is no 'sufficiently direct relationship' between these statements and the harm to Plaintiffs. . . . '[The] theory of liability rests on the independent actions of third-parties' by assuming that the . . . government would have taken those steps had it known the truth, so the causal link is too attenuated for those alleged misrepresentations to serve as the basis for Plaintiffs' RICO claim."). Courts routinely dismiss RICO claims premised on indirect injuries, particularly where government action (or inaction) is an intervening cause. *See, e.g.*, *Barr Labs. v. Quantum Pharmics, Inc.*, No. 90 Civ. 4406, 1994 U.S. Dist. LEXIS 2197 at *21 (E.D.N.Y. 1994) ("In this case the injured party is the FDA and though [plaintiff] was injured because of the injury done to the FDA, its injuries are indirect and remote.").

Plaintiffs' RICO claims against 3Ci fail for the additional reason that Plaintiffs do not allege that 3Ci misrepresented any material fact. The only communications Plaintiffs attribute to 3Ci are communications to *consumers*. *See* Compl. ¶¶ 159–169. These statements to consumers cannot constitute material misrepresentations under RICO because Plaintiffs do not (and cannot) allege that statements 3Ci made to *consumers* had any effect on the *government's* contracting decisions. *Rojas*, 425 F. Supp. 3d at 541 (dismissing RICO claim where alleged misrepresentations were not material).

We are prepared to discuss the foregoing at the Court's convenience.

Sincerely,

/s/ Jonathan I. Gleklen
**ARNOLD & PORTER KAY KAYE SCHOLER LLP**
Jonathan I. Gleklen, Bar No. 21350
601 Massachusetts Ave., NW
Washington, DC 20001
T: 202.942.5454
F: 202.942.5999
jonathan.gleklen@arnoldporter.com
*Counsel for Defendant Global Tel*Link Corp.*

/s/ Jason R. Scherr
**MORGAN LEWIS & BOCKIUS, LLP**
Jason R. Scherr, Bar No. 25633
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: 202.739.6000
F: 202.373.6001
jr.scherr@morganlewis.com
*Counsel for Defendant Securus Technologies, LLC*
(Signed by Jonathan Gleklen with permission of Jason R. Scherr)

/s/ Jonathan Pitt
**WILLIAMS & CONNOLLY LLP**
Jonathan Pitt, Bar No. 16086
725 Twelfth Street, NW
Washington, DC 20005
T: 202.434.5000
F: 202.434.5029
jpitt@wc.com
*Counsel for Defendant 3Cinteractive Corp.*
(Signed by Jonathan Gleklen with permission of Jonathan Pitt)

## Certificate of Service

I certify that on September 18, 2020, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

 /s/ Jonathan I. Gleklen
An attorney for Defendant
Global Tel*Link Corp.