# EXHIBIT B

September 15, 2014

Chairman Tom Wheeler
Federal Communications Commission
445 12th Street, SW
Washington, DC 20554

Commissioner Mignon Clyburn
Federal Communications Commission
445 12th Street, SW
Washington, DC 20554

Commissioner Jessica Rosenworcel
Federal Communications Commission
445 12th Street, SW
Washington, DC 20554

Commissioner Ajit Pai
Federal Communications Commission
445 12th Street, SW
Washington, DC 20554

Commissioner Michael O'Rielly
Federal Communications Commission
445 12th Street, SW
Washington, DC 20554

Re:     WC Docket No. 12-375

Dear Chairman Wheeler, Commissioner Clyburn, Commissioner Rosenworcel, Commissioner Pai, and Commission O'Rielly:

The issues and policies addressed and under further consideration in the *Inmate Calling Report and Order and FNPRM*,[1] have long been of concern to all affected by them – inmates, their friends and families, inmate calling services ("ICS") providers, and local and state governments and correctional facilities. The Federal Communications Commission ("FCC" or "Commission") has worked hard to address and resolve these complex issues, attempting to balance economic needs of consumers against the cost of unique security and public safety features required to provide ICS.

As part of its ongoing review, the Commission has sought comment on additional measures it can take "to ensure that interstate and intrastate ICS are provided consistent with the statute and public interest."[2] The undersigned parties, who are the primary providers of inmate calling services ("ICS") in the United States and represented 85% of the industry revenue in 2013, agree that it is in all parties' interest to address these matters conclusively and in a manner that resolves the market uncertainty caused by the ongoing proceedings at the FCC and the courts. Consequently, the parties have cooperated to develop a consensus proposal that seeks to address the goals outlined by the Commission, reflects the business needs of the parties, addresses the security and administrative needs of correctional facilities, and recognizes the

---

[1]     *Rates for Interstate Inmate Calling Services*, 28 FCC Rcd 14107 (2013) ("*Inmate Calling Report and Order and FNPRM*"), *pets. for stay granted in part sub nom. Securus Tech., Inc. v. FCC*, No. 13-1280 (D.C. Cir. Jan.13, 2014) ("*Partial Stay Order*"), *pets. for review pending sub nom. Securus Tech., Inc. v. FCC*, No. 13-1280 (D.C. Cir. filed Nov. 14, 2013) (and consolidated cases).

[2]     *Inmate Calling Report and Order and FNPRM* ¶ 128.

rights and interests of inmates and their families and friends. The parties have made difficult compromises to find consensus in the interest of achieving regulatory certainty and the unimpeded provision of ICS in the future.

This consensus proposal consists of several inextricably-linked components. The components work in concert and any single component should not be viewed as supported by the parties in isolation of the other components. Accordingly, a material change to any individual component of this proposal may lead to the withdrawal of support for, and/or direct opposition to, any modified proposal by some or all of the parties.

In the spirit of compromise and consensus, the undersigned parties propose the following framework for the treatment of interstate and intrastate ICS rates going forward:

**Rate Caps for Interstate and Intrastate ICS Calling**

The parties propose flat rate caps of $0.20 per-minute for all debit and prepaid interstate and intrastate ICS calls, and $0.24 per minute for all interstate and intrastate collect calls.[3] No per-call surcharges should be permitted.[4] To the extent the interstate or intrastate ICS per-minute calling rates at a particular correctional facility are above the cap on the effective date of the new rule, the per-minute rates would be reduced immediately to $0.20 and $0.24, respectively.

The simplified rate structure proposed by the parties will make ICS charges more transparent for inmates and their friends and family. They will be easy for ICS providers and correctional facilities to implement quickly, and will simplify oversight and enforcement.

The new rate caps should become effective 90 days after adoption, along with any site commission reductions and ancillary fee changes outlined below. This period for implementation should ensure ICS providers and correctional facilities have adequate time to implement the new rate caps and any corresponding reductions in site commissions, including any contract amendments or adjustments that may be necessary.

The Commission should permit an ICS provider to seek a waiver of the rate cap for a particular correctional facility if the ICS provider can demonstrate that the proposed rate cap does not allow the ICS provider to economically serve the correctional facility. However, such

---

[3] The parties understand the Commission considers Sections 201 and 276 of the Communications Act to support its authority to establish a single, uniform rate cap for both interstate and intrastate ICS calls. *See* 47 U.S.C. §§ 201, 276; *see also Inmate Calling Report and Order and FNPRM* ¶¶ 135-41. The parties' consensus proposal accepts that while the Commission's exercise of jurisdiction might extend to intrastate inmate calling services, the parties do not support a finding of intrastate jurisdiction under Sections 201 and 276 that would extend beyond inmate calling services.

[4] The one exception to this prohibition on per call pricing is in states where per call pricing has been adopted and the per call rate is less than the new flat rates caps under this proposal for a 15 minute call, which would be $3.00 and $3.60, respectively.

waivers should be permissible only on a facility-by-facility basis.[5] An ICS provider seeking such a waiver should be subject to the review and approval process outlined in the *Inmate Calling Report and Order and FNPRM*[6] and the *Pay Tel Waiver Order*[7] for obtaining waivers.

**Site Commission or "Admin-Support Payments" for ICS-related Correctional Facility Costs**

The parties recognize, as the Commission acknowledged in the *Inmate Calling Report and Order and FNPRM*, that correctional facilities may incur administrative and security costs to provide inmates with access to ICS.[8] The parties' proposal supports the recovery of legitimate costs incurred by correctional facilities that are directly related to the provision of inmate calling services. The parties, however, have not reached agreement as to what amount or what percentage (if any) should be required, or how such admin-support payments can accurately be measured. Accordingly, the industry looks to the FCC to determine the appropriate amount or percentage that should be included in ICS rates for such payments to correctional facilities based on the record presented.

The parties do agree that any admin-support payment adopted should be applied, upon the effective date of the new capped rates (whether or not applied as part of a phased-in approach), to all existing contracts where site commissions are currently being paid. As the Commission has determined, "where site commission payments exist, they are a significant factor contributing to high rates."[9] The per-minute rate caps proposed above are feasible for the parties only if implemented in conjunction with corresponding reductions in site commission payments. Accordingly, if the FCC determines that such admin-support payments to correctional facilities are appropriate, the amount or percentage of such payments will have a direct effect on ICS provider's costs to provide ICS, and therefore, the proposed per-minute rate caps may have to be increased, unless such admin-support payments or percentages are nominal.[10]

ICS provider proposals ranged from the immediate and complete elimination of site commissions to a phased reduction of site commission payments with a transition to a capped admin-support payment. Further, views differed among providers regarding the appropriate calculation of the amount of the admin-support payment: some suggested it be calculated as a percentage of intrastate per minute of use calling revenue; while others preferred the admin-

---

[5] For example, waivers could be sought to provide service to individual mental health facilities, youth work camps, and other facilities with unique environments (security, geographic or otherwise) that increase the cost of providing service beyond the cap.

[6] *Inmate Calling Report and Order and FNPRM* ¶¶ 82-84.

[7] *Rates for Interstate Inmate Calling Services*, 29 FCC Rcd 1302 (2014) ("*Pay Tel Waiver Order*").

[8] *Inmate Calling Report and Order and FNPRM* at n.203 ("we cannot foreclose the possibility that some portion of payments from ICS providers to some correctional facilities may, in certain circumstances, reimburse correctional facilities for their costs of providing ICS").

[9] *Inmate Calling Report and Order and FNPRM* ¶ 34.

[10] *See, e.g.*, *Inmate Calling Report and Order and FNPRM* ¶ 3 ("we generally prefer to promote competition to ensure that inmate phone rates are reasonable").

support payment be calculated based on an intrastate per minute of use rate (*e.g.,* $0.015 - $0.025.

If the FCC determines such admin-support payments are appropriate, the parties' submit that ICS providers should be barred from paying and correctional facilities (and their agents) should be prohibited from soliciting or accepting any other compensation or payment other than the FCC-prescribed admin-support payment, including any in-kind payments, exchanges, technology allowances, administrative fees, or the like.[11] The parties propose that the Commission define as impermissible: any payment, service, or product offered to, or solicited by an agency (or its agent) that is not directly related to, or integrated with, the provision of communications services in a correctional facility. This definition permits correctional facilities to obtain new and innovative services that are integrated or associated with ICS (ranging from email and text services to video visitation, wireless and other emerging technologies),[12] while limiting the ability to incorporate items in the contracting process that bear no relationship to the provision of secure communications in the correctional facility.

Reducing ICS providers' site commission payments to FCC-prescribed admin-support amounts is fundamental to the proposed rate caps and fee reductions under this proposal. The parties also propose that any caps established for admin-support payments should not be eligible for adjustment above the cap by ICS providers pursuant to requests for waiver.

**<u>Ancillary Fees</u>**

The parties respectfully submit that the regulation of ancillary fees for transactions other than the provision of ICS is beyond the scope of the Commission's jurisdiction. However, the overall changes in price and commission described herein dramatically alter the economic landscape of the ICS industry, making it possible for providers to forego many fees and cap others at current levels. Therefore, in the spirit of compromise, the parties propose: the elimination of certain fees, that ancillary fees are limited to a specified list of permissible fees, and that caps be established for other types of fees associated with the provision ICS.

Under this proposal, ICS providers could impose the following types of fees (subject to the caps discussed below), in connection with their provision of ICS: (1) transaction or deposit fees; (2) a cost recovery fee related to validation and security features; (3) third party money transfer fees; and (4) fees for convenience or premium channels. All other types of fees would be prohibited. Attached is a complete list of ICS provider fees that would be eliminated under this proposal.[13] In all, the providers have agreed to eliminate a least nineteen different fees currently charged in the marketplace.

---

[11] *Inmate Calling Report and Order and FNPRM* ¶ 56 ("We note that we would similarly treat 'in-kind' payment requirements that replace site commission payments in ICS contracts.").

[12] This definition would not broaden the scope of FCC jurisdiction to include such new and innovative services, whether or not integrated or associated with ICS.

[13] Under the parties' proposal, ICS providers would still be permitted to charge applicable federal, state, and local taxes as well as fees associated with federal, state and local governmental action, including federal and state universal service fund fees, numbering fees, federal and state regulatory fees, and any other federal, state, or local

The parties also propose to publish information regarding the permissible fee amounts on their company websites. This is intended to ensure transparency and compliance, as well as to provide consumers with the information they need regarding the fees associated with ICS. Publication of fees is consistent with ICS providers' existing obligation to make their current interstate rates, terms and conditions available to the public via their company website.[14]

<u>Transaction or deposit fees</u>. Transaction or deposit fees to fund prepaid ICS accounts (those held by friends and family) and debit ICS accounts (those held by inmates) would be subject to a cap for three years. The maximum amount that could be charged would be capped at $7.95 per transaction or deposit. This is consistent with the current market rate for funding ICS accounts.

<u>Money transfer fees</u>. In addition to the amounts charged by third party money transmitters such as Western Union, MoneyGram, etc., ICS providers would be permitted to impose money transfer fees to cover the administrative costs of handling such transactions. Under the parties' proposal, ICS providers would be permitted to charge a maximum $2.50 administrative fee for such money transfer services.

<u>Validation fee</u>. ICS providers would be permitted to impose a maximum validation fee of eight percent (8%) per ICS call. The fee would be applied to the base rate of all ICS calls (*i.e.*, the total charge for the ICS call based on the per-minute rate). Prior to completing an inmate-initiated call, an ICS provider is required to verify the inmate is permitted to call the dialed number, authenticate the called party (by verifying the called party's identity, telephone number, and location), and confirm the called party has provided valid consent to receive the call. The validation fee is intended to recover ICS providers' costs associated with these important call-specific security features, which are necessary for the safety and security of the general public, inmates, their families and friends, and correctional facility employees.

<u>Convenience or premium payment options</u>. Premium payment options give the customer the convenience of paying for the receipt of inmate-initiated calls using various types of payment processing methods. The concept of paying more for a service or product for the convenience of using a preferred billing method is not unique to ICS.[15] The fee associated with these premium payment options reflects that ICS providers incur additional costs for providing consumers with

---

fee permitted to be imposed on end user customers. ICS providers would impose such taxes and fees consistent with existing federal and state requirements regarding calculation and disclosure of such taxes and fees.

[14] 47 C.F.R. § 42.10; *see also Inmate Calling Report and Order and FNPRM* ¶ 118.

[15] *See, e.g.*, Dave Lieber, *Watchdog: Are discounted cash prices for gas a violation of Texas law?*, THE DALLAS MORNING NEWS (Jan. 16, 2014), http://www.dallasnews.com/investigations/watchdog/20140116-watchdog-do-cash-discounts-for-gas-purchases-violate-state-law.ece; *Paying for gas with a card could cost you $1 more per gallon as at some stations*, WESH (June 19, 2014), http://www.wesh.com/news/paying-for-gas-with-a-card-could-cost-you-1-extra-at-some-orlando-stations/26554746#!bxYtpk. Consumers can even pay their taxes and college tuition using credit cards on online systems that charge a convenience fee. *See, e.g.*, *Pay your Taxes by Debit or Credit Card*, IRS, http://www.irs.gov/uac/Pay-Taxes-by-Credit-or-Debit-Card (last visited Sept. 14, 2014); *Online Bill/Credit Card Convenience Fees FAQ*, Virginia Commonwealth University, http://www.enrollment.vcu.edu/accounting/tuition-and-fees/faq-convenience-fees/ (last visited Sept. 14, 2014).

such options.  ICS providers would be permitted to impose fees for certain "premium" payment options, but such fees should be capped based on the ICS provider's existing fee amounts for such options for a period of three (3) years.

Premium payment options include, but are not limited to, the following types of payment processing methods: (1) billing directly to credit/debit card; (2) billing to an existing wireless telephone account; and (3) transfers from canteen or commissary funds.  The following conditions should be required to be satisfied for an ICS provider to impose a premium payment fee on a customer:

- The ICS provider shall provide the customer an option to pay for an inmate-initiated call without incurring a payment processing fee, such as mailed payment by check or money order.

- The ICS provider shall fully inform customers of all payment methods available (including the no-charge option), the payment processing charges associated with each payment method, and the estimated time required to establish service applicable to each payment option.[16]

- The ICS provider shall clearly and conspicuously identify the required information.  The information should be presented clearly and prominently so that it is actually noticed and understood by the customer.[17]

    o The ICS provider shall provide a brief, clear, non-misleading, plain language description of the required information.  The description must be sufficiently clear in presentation and specific enough in content so that the customer can accurately assess each of the available payment methods.[18]

    o An ICS provider shall clearly and conspicuously disclose any information the customer may need to make inquiries about the available payment methods, such as a toll-free number, e-mail address, or web site address by which customers may inquire or dispute any charges.  An ICS provider shall include any restrictions or limitations applicable to each payment method available.

---

[16] An ICS provider may provide this information to customers (1) on its website, (2) in its web-posted rates, terms, and conditions, (3) orally when provided in a slow and deliberate manner and in a reasonably understandable volume, or (4) in other printed materials provided to a customer.

[17] For these purposes, clear and conspicuous means notice that would be apparent to the reasonable customer. *See, e.g.*, 47 C.F.R. § 64.2400 *et seq.*; *Joint FCC/FTC Policy Statement for the Advertising of Dial-Around and Other Long-Distance Services to Consumers*, 15 FCC Rcd 8654 (2000).

[18] In determining the effectiveness of the disclosure, the Commission should consider the prominence of the disclosure in comparison to other information, the proximity and placement of the information, the absence of distracting elements, and the clarity and understandability of the text of the disclosure.  *See, e.g.*, 47 C.F.R. § 64.2400 *et seq.*; *Joint FCC/FTC Policy Statement for the Advertising of Dial-Around and Other Long-Distance Services*, 15 FCC Rcd 8654 (2000).

**Disability Access**

The parties commit to continue to comply with their existing obligations under the Americans with Disabilities Act ("ADA"), the Twenty-First Century Communications and Video Accessibility Act of 2010, and Sections 225 and 255 of the Communications Act with respect to inmates with disabilities. In accordance with the requirements of the *Inmate Calling Report and Order and FNPRM*, the parties will not levy or collect an additional charge for any form of telecommunications relay service ("TRS") call.[19] The parties also will work closely with correctional facilities "to ensure that deaf and hard of hearing inmates are afforded access to telecommunications that is equivalent to the access available to hearing inmates."[20]

**Enforcement and Compliance**

The parties acknowledge that the Commission retains all existing authority to impose fines and penalties on ICS providers or require refunds for non-compliance with its rules.[21] The Commission may investigate ICS providers' compliance with the forthcoming rules on the Commission's own motion or in response to an informal or formal complaint. The Commission also may investigate ICS providers' compliance with existing rules applicable to ICS, including the Commission's oral disclosure requirements.[22]

In addition to the Commission's general enforcement power, the parties propose ICS providers should be required to provide certain information to the Commission annually for three (3) years to ensure the caps on per-minute rates and any admin-support payments adopted are implemented as required. Such information should include a list of the ICS provider's current interstate and intrastate per-minute ICS rates, the ICS provider's current fee amounts, the locations where the ICS provider makes admin-support payments, and the amount of those admin-support payments. In addition, all ICS providers should be required to submit an annual certification by the company Chief Executive Officer, Chief Financial Officer and General Counsel, under penalty of perjury, certifying that the company is in compliance with the FCC ICS rate rules and any admin-support payment rules adopted.

This carefully constructed consensus proposal reflects the collaborative efforts and compromises of the vast majority of the ICS industry, and represents a reasonable path forward toward the Commission's objective "to ensure that rates and practices are just and reasonable,

---

[19] *Inmate Calling Report and Order and FNPRM* ¶ 95; *see also* 47 U.S.C. § 225(d)(1)(D).

[20] *Inmate Calling Report and Order and FNPRM* ¶ 97.

[21] 47 U.S.C. § 503; 47 C.F.R. § 1.80

[22] *Inmate Calling Report and Order and FNPRM* ¶ 118.

and to ensure that payphone compensation is fair to both end users and to providers of payphone services, including ICS providers."[23] The undersigned parties urge the Commission to move expeditiously to adopt the industry consensus proposal set forth herein.

Respectfully submitted,

/s/ Brian D. Oliver
Brian D. Oliver
Chief Executive Officer
**Global Tel*Link Corporation**

/s/ Richard A. Smith
Richard A. Smith
Chief Executive Officer
**Securus Technologies, Inc.**

/s/ Kevin O'Neil
Kevin O'Neil
President
**Telmate, LLC**

Attachment

cc: Rebekah Goodheart
Lynne Engledow
Kalpak Gude
Rhonda Lien
David Zesiger

---

[23] *Inmate Calling Report and Order and FNPRM* ¶ 100.

**Fees Eliminated under the Industry Proposal in Addition to the Per-Call Surcharge**

VINE
State regulatory cost recovery fee
Federal regulatory cost recovery fee
Refund fees
Account set-up fee
Billing statement fee
Single bill fee
USF administration fee
Wireless administration fee
Location validation fee
Voice biometrics fee
Technology fee
Account close-out fee
Withdrawal fee
Carrier Cost Recovery fee
Collect Call Regulatory fee
Funding fee
Regulatory Assessment fee
Account Services fee