## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

ASHLEY ALBERT, et al.,

        Plaintiffs,

  v.

GLOBAL TEL*LINK CORP., et al.,

        Defendants.

Civil Action No. 8:20-CV-1936

**OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO AMEND OR
FOR PARTIAL FINAL JUDGMENT OR
INTERLOCUTORY APPEAL**

MORGAN LEWIS & BOCKIUS, LLP
Jason R. Scherr, Esquire, Bar No. 25633
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: 202.739.6000
F: 202.373.6001
jr.scherr@morganlewis.com

Elizabeth Herrington*
77 W. Wacker Drive
Chicago, IL 60601
T: 312.324.1000
F: 312.324.1001
beth.herrington@morganlewis.com

R. Brendan Fee*
1701 Market Street
Philadelphia, PA 19103
T: 215.963.5000
F: 215.963.5001
brendan.fee@morganlewis.com

COUNSEL FOR DEFENDANT SECURUS
TECHNOLOGIES, LLC

ARNOLD AND PORTER KAYE SCHOLER LLP
Jonathan I. Gleklen, Esquire, Bar No. 21350
601 Massachusetts Ave., NW
Washington, D.C. 20001-3743
T: (202) 942-5000
F: (202) 942-5999
jonathan.gleken@arnoldporter.com

Charles Scott Lent*
Javier Ortega*
250 West 55th Street
New York, NY 10019-9710
T: (212) 836-8000
F: (212) 836-8689
scott.lent@arnoldporter.com
javier.ortega@arnoldporter.com

COUNSEL FOR DEFENDANT GLOBAL
TEL*LINK CORP.

WILLIAMS & CONNOLLY LLP
Jonathan B. Pitt, Bar No. 16086
Colette T. Connor*
725 Twelfth Street, NW
Washington, DC 20005
T: 202.434.5000
F: 202.434.5029
jpitt@wc.com
cconnor@wc.com

STEARNS WEAVER MILLER
WEISSLER ALHADEFF &
SITTERSON, P.A.
Jay B. Shapiro*
150 West Flagler Street, Suite 2200
Miami, FL 33130
T: 305.789.3229
F: 305.789.2664
jshapiro@stearnsweaver.com

COUNSEL FOR DEFENDANT
3CINTERACTIVE CORP.

\* admitted *pro hac vice*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

ARGUMENT ...................................................................................................... 7

I.  THE COURT SHOULD DENY PLAINTIFFS' REQUEST TO AMEND THEIR COMPLAINT. .......................................................................................... 7

    A.  Plaintiffs Unduly Delayed in Seeking Leave To Amend ..................................... 7

    B.  Plaintiffs Failed To Cure the Defects in Their RICO Claims Despite Being on Notice. ........................................................................................... 9

    C.  Plaintiffs' Proposed Amendments Are Futile. ..................................... 10

II.  IF THE COURT DENIES LEAVE TO AMEND, IT SHOULD NOT PERMIT AN IMMEDIATE APPEAL ............................................................................ 15

    A.  Partial Final Judgment Under Rule 54(b) Is Not Warranted Here ...................... 15

    B.  Interlocutory Appeal Under 28 U.S.C § 1292(b) Is Also Inappropriate ............. 18

III.  IF THE COURT PERMITS AN IMMEDIATE APPEAL, IT SHOULD STAY THE CASE ............................................................................................... 19

CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006)......................................................................................................11, 14

*Barr Labs., Inc. v. Quantum Mechanics, Inc.*,
  No. 90-cv-4406, 1994 WL 1743983 (E.D.N.Y. Feb. 7, 1994) ................................12

*Braswell Shipyards, Inc. v. Beazer East*,
  2 F.3d 1331,1335 (4th Cir. 1993) ...........................................................15, 16, 17

*Bridge v. Phoenix Bond & Indemnity Co.*,
  553 U.S. 639 (2008)......................................................................................................12

*Calderon v. GEICO General Ins. Co.*,
  754 F.3d 201 (4th Cir. 2014) ...............................................................................15

*Carter v. Norfolk Community Hosp. Ass'n, Inc.*,
  761 F.2d 970 (4th Cir. 1985) ...........................................................................6, 7

*Clark Const. Grp., Inc. v. Allglass Sys., Inc.*,
  No. 2002-cv-1590, 2005 WL 736606 (D. Md. March 30, 2005) ...........................18

*Cooke v. Caliber Home Loans, Inc.*,
  No. 18-cv-3701, 2020 WL 1434105 (D. Md. Mar. 24, 2020) ................................10

*Coopers v. Lybrand & Livesay*,
  437 U.S. 463 (1978)......................................................................................................18

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
  446 U.S. 1 (1980)................................................................................................15, 16

*CX Reinsurance Co. v. Johnson*,
  No. 18-cv-2355, 2020 WL 406936 (D. Md. Jan. 24, 2020)....................................20

*Dual Diagnosis Treatment Ctr., Inc. v. Centene Corp.*,
  20-cv-04112, 2021 WL 4072683 (C.D. Cal. May 7, 2021)....................................12

*Figueroa Ruiz v. Alegria*,
  896 F.2d 645 (1st Cir. 1990)..................................................................................7

*Frank v. U.S. West, Inc.*,
  3 F.3d 1357 (10th Cir. 1993) ..................................................................................9

*Graham v. Secretary of the Army*,
No. 17-cv-502, 2019 WL 1968044 (E.D.N.C. May 2, 2019) .................................10

*Hall v. Greystar Mgmt. Servs., L.P.*,
193 F. Supp. 3d 522 (D. Md. 2016) .................................................................18

*Hemi Group, LLC v. City of New York, N.Y.*,
559 U.S. 1 (2010) .................................................................................11, 12

*Katyle v. Penn Nat'l Gaming, Inc.*,
637 F.3d 462 (4th Cir. 2011) .......................................................................10

*LaFleur v. Dollar Tree Stores, Inc.*,
No. 12-cv-00363, 2014 WL 2121721 (E.D. Va. May 20, 2014) ...........................19

*Estate of Olivia ex rel. McHugh v. New Jersey*,
604 F.3d 788 (3d Cir. 2010) ..........................................................................9

*Myles v. Laffitte*,
881 F.2d 125 (4th Cir. 1989) .......................................................................18

*Nat'l Bank of Washington v. Pearson*,
863 F.2d 322 (4th Cir. 1988) ..........................................................................7

*Reynolds v. Dep't of Recreation & Parks*,
823 F.2d 548, 1987 WL 36725 (4th Cir. 1987) .................................................10

*Rojas v. Delta Airlines, Inc.*,
425 F. Supp. 3d 524, 542 (D. Md. 2019) .........................................................14

*Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*,
884 F.3d 489 (4th Cir. 2018) ............................................................11, 12, 13, 14

*Spiegel v. Trustees of Tufts College*,
843 F.2d 38 (1st Cir. 1988) .........................................................................17

*Stone v. Instrumentation Lab. SpA*,
No. 07-cv-3191, 2008 WL 11411589 (D. Md. Aug. 11, 2008) ...........................19

*Sulton v. Baltimore Cty.*,
No. 18-cv-2864, 2021 WL 82925 (D. Md. Jan. 11, 2021) ...................................10

*TADCO Const. Grp. Corp. v. Dormitory Auth. of New York*,
No. 08-cv-73, 2012 WL 3011735 (E.D.N.Y. July 23, 2012) ...............................16

*United States v. Georgia Pac. Corp.*,
562 F.2d 294 (4th Cir. 1977) .......................................................................15

*Vogel v. Boddie-Noell Enters., Inc.*,
    No. 11-cv-515, 2013 WL 1010354 (D. Md. Mar. 13, 2013) ...............................8, 9

*Williams & Cochrane, LLP v. Quechan Tribe of the Fort Yuma Indian Rsrv.*,
    17-cv-01436, 2018 WL 6018504 (S.D. Cal. Nov. 16, 2018).................................13

*United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*,
    525 F.3d 370 (4th Cir. 2008) ...................................................................................11

**Statutes**

15 U.S.C. § 15(a) ...........................................................................................................17

18 U.S.C. § 1964(c) .......................................................................................................17

28 U.S.C. § 1291 ............................................................................................................15

28 U.S.C. § 1292.................................................................................1, 3, 7, 15, 18, 19

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ........... *passim*

Sherman Act, 15 U.S.C. § 1 ...................................................................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure 15(a)(2) ........................................................................7

Federal Rule of Civil Procedure 54(b)....................................................................*passim*

Federal Rule of Civil Procedure 9(b)............................................................................11

Federaul Rule of Civil Procedure 12 ........................................................5, 6, 10, 11

# INTRODUCTION

The Court properly dismissed with prejudice Plaintiffs' claims brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and Plaintiffs' motion for leave to amend to reassert those claims is in essence nothing more than a motion for reconsideration. Plaintiffs unreasonably delayed in amending to cite a pair of year-old declarations that they could have cited in their original Complaint. But more importantly, nothing in the declarations or elsewhere in the proposed Amended Complaint cures the fundamental defect that Plaintiffs' injury is too indirect to show proximate causation under RICO because any alleged harm to Plaintiffs depends upon intervening decisions of the government actors that received the alleged misrepresentations. Plaintiffs' alternative requests for entry of partial final judgment under Federal Rule of Civil Procedure 54(b) or certification under 28 U.S.C. § 1292 are equally meritless as Plaintiffs fail to satisfy the standard for either.

In June 2020, Plaintiffs filed this putative class action against three companies involved in providing telephone calling services for incarcerated individuals—Defendants Global Tel*Link Corp. ("GTL"), Securus Technologies, LLC ("Securus"), and 3Cinteractive Corp. ("3Ci"). Citing statements by confidential "former employees," Plaintiffs alleged that Defendants violated the Sherman Act (Count 1) and the RICO Act (Counts 2-7) by colluding to fix the prices charged on certain phone calls by incarcerated individuals and by making false statements to contracting governments to induce them to agree to those inflated fees in their contracts with Securus and GTL. Defendants sought leave to move to dismiss Plaintiffs' allegations as inadequate to support a RICO claim because they depended on alleged harm to the supposedly misled governments. In response, the Court, Hon. Paul W. Grimm, gave Plaintiffs a choice: either amend at that time to address any defects raised in Defendants' pre-motion letter or risk dismissal with prejudice.

Plaintiffs made the strategic decision to keep secret the declarations they now invoke, and instead to stand on their initial Complaint for better or worse.

After Defendants' motion was fully briefed, this Court, Hon. Lydia K. Griggsby, issued an opinion dismissing Plaintiffs' RICO claims with prejudice and declining to dismiss Plaintiffs' Sherman Act claim. The Court found that Plaintiffs' allegations, taken as true, failed to support a finding that the RICO predicate acts proximately caused Plaintiffs' alleged injuries. The Court agreed with Defendants' causation argument discussed at the October 6 conference with Judge Grimm—during which Judge Grimm invited Plaintiffs to amend and they declined—and dismissed Plaintiffs' RICO claims with prejudice. Plaintiffs now seek a do-over to "squarely address" the deficiencies in the RICO claims that were the basis for the Court's opinion. Pls.' Mem. 1, ECF No. 103-1. This motion should be denied for two reasons.

***First***, an amendment is improper and may be properly denied when plaintiffs act with undue delay or fail to avail themselves of earlier opportunities to remedy defects in their pleading. Here, Plaintiffs have done both. The primary basis for Plaintiffs' requested amendment is to include allegations predicated on two declarations they secured from former employees of GTL and Securus before they finalized their initial Complaint more than a year ago, but chose for strategic reasons to sit on until now. That delay is, by definition, undue. And Plaintiffs had multiple opportunities to address the deficiencies in their RICO claims before now. Judge Grimm specifically encouraged them to amend during the pre-motion letter process, and even after declining that invitation, Plaintiffs could have sought to amend after seeing Defendants' motion to dismiss. Plaintiffs chose instead to double down on their initial Complaint, reserving their "new" evidence for a more opportune reveal. Plaintiffs' proposed amendment should not be allowed.

***Second***, even if Plaintiffs had neither delayed unduly nor failed to seize opportunities to remedy the defects in their pleading, Plaintiffs' proposed amendments are futile because they would not alter the Court's dismissal of their RICO claims for lack of proximate causation. The fundamental theory of Plaintiffs' RICO case is that Securus and GTL made misrepresentations to contracting governments using the wires or mail and that such misrepresentations induced those contracting governments to accept what Plaintiffs allege are inflated prices for certain calls from incarcerated individuals. Plaintiffs' proposed amendments do nothing to change that core theory and thus the same defect that the Court concluded doomed the RICO counts in Plaintiffs' initial pleading—*i.e.*, the presence of intervening independent government action and the need to speculate about how those government actors would have acted but-for the alleged conduct—remains in Plaintiffs' proposed Amended Complaint. Plaintiffs' request to amend is, therefore, futile and should be denied.

Plaintiffs' alternative request that the Court take the extraordinary step of certifying its dismissal of their RICO claims for interlocutory appeal under either Federal Rule of Civil Procedure 54(b) or 28 U.S.C. § 1292 is equally unwarranted. The dismissal of Plaintiffs' RICO claims does not come close to the rare case in which an interlocutory appeal is appropriate. But, if the Court does take the extraordinary step of allowing an interlocutory appeal, a stay of proceedings pending the outcome of that appeal would be necessary to serve the interests of judicial economy and avoid prejudice and the needless expenditure of resources by Defendants.

## BACKGROUND

On June 29, 2020, Plaintiffs filed their Complaint alleging that Defendants participated in a scheme to charge artificially inflated prices for certain calls that incarcerated individuals make to friends and family throughout the United States. Compl. ¶ 1, ECF No. 1. Plaintiffs say Defendants colluded to fix inflated prices paid by the call recipients, and made misrepresentations

and omissions using the wires and mail to convince the contracting governments to accept these high prices. *Id.* ¶¶ 2-3. Based on these allegations, Plaintiffs asserted that Defendants violated the Sherman Act, 15 U.S.C. § 1, and RICO, 18 U.S.C. § 1962(c)-(d). *Id.* ¶ 22.

This case was initially assigned to the Honorable Paul W. Grimm. The day after Plaintiffs filed their Complaint, Judge Grimm issued his standard-form "Letter Order Regarding the Filing of Motions." *See* ECF No. 3. Under the procedure outlined in this letter, before filing a motion to dismiss, Defendants were required to submit to Judge Grimm a letter describing the planned motion and explaining the factual and legal support for it. Judge Grimm would then review the letter and decide whether to hold a phone conference to discuss the planned motion and to determine whether the issues may be resolved or otherwise addressed without the need for formal briefing. Judge Grimm employed this procedure "[i]n order to promote the just, speedy, and inexpensive resolution of this case." *Id.* (citing Fed. R. Civ. P. 1).

On September 18, 2020, Defendants filed the required letter summarizing their arguments for dismissal of the Sherman Act and RICO claims. *See* ECF No. 57 at 3. As Defendants explained in that letter, Plaintiffs' RICO claims fail because Plaintiffs asserted only indirect harm from the fraud supposedly perpetrated on the contracting governments. This harm, Defendants explained, "is insufficient to support a RICO claim, because it is merely 'contingent or derivative of the harm suffered' by the governments. *Id.* (quoting *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 494 (4th Cir. 2018)). Defendants further observed that courts routinely dismiss RICO claims based on indirect injuries, particularly where government action (or inaction) is an intervening cause. *Id.* (citing *Barr Labs., Inc. v. Quantum Mechanics, Inc.*, No. 90-cv-4406, 1994 WL 1743983, at *7 (E.D.N.Y. Feb. 7, 1994)).

On October 6, 2020, Judge Grimm held a conference to discuss Defendants' pre-motion letter. Pointing to Defendants' arguments in the letter, Judge Grimm noted that because Plaintiffs were fully aware of Defendants' positions on the Complaint's deficiencies, he did not expect Plaintiffs to ask for leave to amend only after Defendants prepared an extensive motion to dismiss. That would waste everyone's time and money. Instead, Judge Grimm explained, if he were to dismiss any of Plaintiffs' claims, he planned to do so with prejudice. Judge Grimm thus offered Plaintiffs the chance to amend at that time—before Defendants filed their motion to dismiss—to try to correct any of the pleading deficiencies raised by Defendants.

Plaintiffs expressly declined that invitation and chose instead to stand on their pleading as-is. The parties thereafter negotiated a briefing schedule for Defendants' anticipated motion, and on October 13, 2020, Plaintiffs confirmed by stipulation that they "have opted to not amend their complaint prior to the filing of Defendants' motion(s) to dismiss." ECF No. 62.

From October 2020 to January 2021, the parties briefed the motion to dismiss. In their motion and reply, Defendants pointed to the same key pleading deficiencies they had described in their pre-motion letter. As to the RICO claims, Defendants argued that Plaintiffs' allegations failed to satisfy RICO's proximate-cause requirement because Plaintiffs' claimed injuries were too indirect and speculative. *See* ECF 72-1 at 24-28.

After briefing was complete, this case was reassigned from Judge Grimm to this Court, which issued an opinion on Defendants' motion to dismiss on September 30, 2021, *see* ECF No. 96. In that opinion, the Court denied Defendants' motion on the Sherman Act claim but granted it on the RICO claims, agreeing with Defendants that "the RICO claims in the complaint that are based upon alleged misrepresentations and/or omissions made to the contracting governments are too remote to establish proximate causation under RICO." ECF No. 96 at 16. Accordingly, the

Court dismissed Plaintiffs' RICO claim with prejudice.  *See Carter v. Norfolk Community Hosp. Ass'n, Inc.*, 761 F.2d 970, 974 (4th Cir. 1985) ("A district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice.").

Plaintiffs thereafter informed Defendants that they intended to seek leave to amend their Complaint.  Given Plaintiffs' previous chances to amend, their decision instead to put Defendants to the burden of moving to dismiss, and the Court's order dismissing Plaintiffs' RICO claims with prejudice, Defendants did not consent to Plaintiffs' proposed amendment.  On October 29, 2021, Plaintiffs filed this motion seeking leave to amend their Complaint or, in the alternative, for partial final judgment or to certify this case for interlocutory appeal.  *See* ECF No. 103.

As required, Plaintiffs also submitted with their motion a proposed Amended Complaint showing their proposed amendments.  *See* Pls.' Mem. Ex. 2, ECF No. 103-5.  Nearly all of Plaintiffs' proposed amendments are derived from declarations Plaintiffs obtained from two former employees of Securus and GTL *before* filing their original Complaint.  With their proposed amendments based on these declarations, Plaintiffs claim that, "rather than engaging in unsupported speculation," their proposed Amended Complaint plausibly shows that "but for Defendants' misrepresentations, contracting governments would have demanded lower prices for single calls, meeting Plaintiffs' pleading burden as to proximate causation."  Pls.' Mem. 2, ECF No. 103-1.  Plaintiffs' proposed amendments also include allegations supposedly showing "the way the contracts and money flows worked," Pls.' Mem. 1, which Plaintiffs claim demonstrates that their alleged injuries are not derivative of any injury the contracting governments suffered.  In the alternative, Plaintiffs ask the Court to allow them an immediate appeal of the order dismissing their RICO claims, either by entering a partial final judgment under Federal Rule of Civil Procedure 54(b) or by certifying an interlocutory appeal under 28 U.S.C. § 1292.

## ARGUMENT

**I.  The Court Should Deny Plaintiffs' Request To Amend Their Complaint.**

The "mere assertion" of a RICO claim imposes an "inevitable stigmatizing effect on those named as defendants," so courts "strive to flush out" defective RICO allegations "at an early stage of the litigation." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990). That is just what this Court did: it engaged with Plaintiffs' RICO claims on the merits, dismissed them with prejudice, and gave Plaintiffs no opportunity to amend. *See Carter*, 761 F.2d at 974.

Yet Plaintiffs now attempt to revive their defective RICO claims by seeking leave to amend their Complaint under Federal Rule of Civil Procedure 15(a)(2). Although Rule 15(a)(2) allows Plaintiffs to amend with "the court's leave," this relief is not automatic and is granted only "when justice so requires." Fed. R. Civ. P. 15(a)(2). That determination "rests within the sound discretion of the district court." *Nat'l Bank of Washington v. Pearson*, 863 F.2d 322, 327 (4th Cir. 1988). The district court may deny Plaintiffs' motion if it finds there was "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs' proposed amendment falls within several of these categories. The Court should deny Plaintiffs' motion because Plaintiffs unduly delayed in seeking this amendment and failed to cure the deficiencies in their pleading that were highlighted in the pre-motion letter process, and because their proposed amendments are futile in any event.

**A.  Plaintiffs Unduly Delayed in Seeking Leave To Amend.**

Plaintiffs filed their Complaint on June 29, 2020. Now, almost a year and a half later, Plaintiffs seek leave to amend their Complaint to include allegations they believe cure their defective RICO claims. Plaintiffs have unduly delayed in seeking amendment.

Plaintiffs knew all of the facts giving rise to their proposed amendments when they filed their original Complaint yet chose to include only some and not others. Plaintiffs' proposed amendments include numerous allegations derived from two declarations Plaintiffs obtained from former employees of Securus and GTL. According to Plaintiffs, these proposed amendments include "detailed, concrete new allegations—and *sworn declarations*—backing up the Complaint's existing allegations" on the RICO claims. Pls.' Mem. 8 (emphasis in original).

But this information is hardly new. The sworn declarations were executed May 18, 2020, and June 14, 2020, respectively—*i.e.*, *before* Plaintiffs filed their Complaint on June 29, 2020. *See* Pls.' Mem., Exs. A & B, ECF Nos. 103-3 & 103-4. And much of the original Complaint also had been drawn from these same declarations, without naming the declarants. *See, e.g.*, Compl. ¶¶ 155-160, 184-85. These "new" allegations are thus not new at all; they are merely attributed this time around—which means the Court already considered and rejected the content of these declarations. As to the portions of the declarations not previously included, Plaintiffs just sat on this information until now, hoping that their selected allegations would survive. Now that their RICO claims have been dismissed, Plaintiffs seek to use this reserved content in an effort to cure the defects highlighted in the Court's opinion.

That is the definition of undue delay. Delay is undue when "the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint." *Vogel v. Boddie-Noell Enters., Inc.*, No. 11-cv-515, 2013 WL 1010354, at *5 (D. Md. Mar. 13, 2013) (quoting *State Distribs. Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984)). The court in *Vogel* thus denied the plaintiffs' motion for leave to amend, finding that the information underlying the proposed amendment was available to the plaintiffs "at or before the time their original complaint was filed." *Id.*; *see also*

*Estate of Olivia ex rel. McHugh v. New Jersey*, 604 F.3d 788, 803 (3d Cir. 2010) (affirming district court's denial of leave to amend because proposed amendment "was or should have been apparent to [the plaintiff] from at least the time that he filed his second amended complaint"); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1366-67 (10th Cir. 1993) (affirming district court's denial of leave to amend to add defendant "because Plaintiffs knew or should have known" about the defendant "long before" they sought leave to amend).  The same outcome is warranted here.

**B.    Plaintiffs Failed To Cure the Defects in Their RICO Claims Despite Being on Notice.**

Plaintiffs could have previously amended to try to fix the flaws in their RICO claims, but affirmatively chose not to.  At the start of this case, Plaintiffs were well aware of Defendants' arguments—with which the Court ultimately agreed—as to why Plaintiffs' RICO claims were flawed.  In their September 18, 2020 pre-motion letter, Defendants explained that Plaintiffs' alleged injuries are "too indirect" to show proximate cause under RICO because Plaintiffs alleged only indirect harm from the misrepresentations allegedly made to governments.  *See* ECF No. 57 at 3.  Given this deficiency, Judge Grimm offered Plaintiffs the chance to amend and warned them that, if they declined, any dismissal would be with prejudice.  Yet Plaintiffs plowed ahead and only now—after the case was reassigned to this Court and the RICO claims dismissed—do they seek leave to amend to "squarely address" these deficiencies in their RICO claims.  Pls.' Mem. 1.

Plaintiffs' motion should be denied because they had "previous opportunities to amend" but chose not to do so.  *See Olivia*, 604 F.3d at 803.  Courts in this Circuit frequently refuse to allow amendments when, as here, the defects in the Complaint were identified in a pre-motion letter, but the plaintiff declined the opportunity to amend.  *See, e.g.*, *Cooke v. Caliber Home Loans, Inc.*, No. 18-cv-3701, 2020 WL 1434105, at *8 (D. Md. Mar. 24, 2020) (denying leave to amend because plaintiff "was given an opportunity to amend her Complaint to resolve the deficiencies

raised in the pre-motion filing letters, but she chose not to amend"); *cf. Graham v. Secretary of the Army*, No. 17-cv-502, 2019 WL 1968044, at *4 n.4 (E.D.N.C. May 2, 2019) (denying leave to amend because plaintiff was aware of defects in complaint yet "declined to amend his complaint"); *Reynolds v. Dep't of Recreation & Parks*, 823 F.2d 548, 1987 WL 36725, at *1 (4th Cir. 1987) (table decision) (stating that when plaintiff failed to amend despite knowing deficiencies with claim, "that ended the claim"). There is no reason for the Court to reach a different conclusion in this case.

**C. Plaintiffs' Proposed Amendments Are Futile.**

The fundamental defect in Plaintiffs' motion for leave to amend is not that the amendment comes too late, but that the proposed amendment would not survive a motion to dismiss because plaintiffs do not and cannot allege a viable RICO claim. The Court dismissed Plaintiffs' RICO claims because they are "too remote to establish proximate causation under RICO." *See* ECF No. 90 at 16. Plaintiffs must do more than show that their proposed amendment is not frivolous on its face, Pls.' Mem. 5; their own authority makes clear that where a proposed amended complaint "fails to include allegations to cure defects in the original pleading," the amendment is futile and should be rejected. *Sulton v. Baltimore Cty.*, No. 18-cv-2864, 2021 WL 82925, at *2 (D. Md. Jan. 11, 2021) (quoting Federal Practice & Procedure § 1487 (3d ed. 2010)). Here, Plaintiffs' failure stems from the fact that their alleged injuries are indirect and they accordingly fail to plead plausible allegations on proximate causation, meaning their RICO claims would again be dismissed under Rule 12(b)(6). *See Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) ("Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards."); *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) ("Because Relators' proposed amended complaint

does not properly state a claim under Rule 12(b)(6) and lacks sufficient particularity under Rule 9(b), we find the district court correctly determined that further amendment would be futile.").

Plaintiffs' proposed amendments do not show that their alleged injuries are direct—*i.e.*, not too remote or derivative of the harm suffered by the contracting governments. The new allegations (and charts of hypothetical alternatives based on the original allegations of injury) merely claim to show the "chronology of the payments": the Consumer paid GTL and Securus for a call and then GTL or Securus paid a percentage of that charge to the government as a site commission. *See* Pls.' Mem. 5-6. Plaintiffs claim this demonstrates that their harm (increased call prices) is not derivative of the harm to the contracting governments (lower site commissions) and that these harms are independent of each other and move in "opposite directions." Pls.' Mem. 6.

But proximate causation under RICO turns not on the order of payments but "on the directness of the relationship *between the conduct and the harm*." *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 12 (2010) (emphasis added). The "central question," then, when "a court evaluates a RICO claim for proximate causation . . . is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). This is the case only when the alleged "injury is sequentially the direct result" of the unlawful conduct, which is "generally at the first step in the chain of causation." *Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 494 (4th Cir. 2018) (internal quotation marks and citation omitted).

Courts, including the Supreme Court, thus find proximate causation lacking under RICO when the alleged injuries are indirect and result from intervening causes. In *Hemi Group*, for example, the Supreme Court found no proximate causation because "[m]ultiple steps . . . separate the alleged fraud from the asserted injury" and there are "independent factors" that account for the

plaintiff's injury. 559 U.S. at 15 (stating that "theory of liability rests on the independent actions of third and even fourth parties"). In doing so, the Court contrasted the circumstances in *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008), in which there were "no independent factors that account[ed] for [the plaintiffs'] injury." *Hemi Group*, 559 U.S. at 3 (quoting *Bridge*, 553 U.S. at 658) (alterations in original). And in *Slay's Restoration*, the Fourth Circuit affirmed the district court's dismissal of the plaintiff's RICO claim, holding that the "potential intervening causes" of the plaintiff's injuries precluded the plaintiff from establishing proximate causation. 884 F.3d at 495.

That is also the case here, and Plaintiffs' proposed amendments do not alter that reality. Like in *Hemi Group* and *Slay's Restoration*, Plaintiffs' injuries are not sequentially the direct result of Defendants' conduct. Rather, according to Plaintiffs, Defendants made the alleged misrepresentations to the contracting governments, which decided to contract with either GTL or Securus on certain terms that included the prices to be charged for calls, which then allegedly caused Plaintiffs' injuries. Because—unlike in *Bridge*—Plaintiffs' injuries are separated from Defendants' alleged fraudulent conduct by the contracting governments' independent action, Plaintiffs cannot satisfy proximate causation under RICO because their injuries are too indirect. *See, e.g.*, *Dual Diagnosis Treatment Ctr., Inc. v. Centene Corp.*, 20-cv-04112, 2021 WL 4072683, at *3 (C.D. Cal. May 7, 2021) (dismissing RICO claim for lack of proximate causation because intervening act of government intermediary broke causal chain); *Barr Labs., Inc. v. Quantum Mechanics, Inc.*, No. 90-cv-4406, 1994 WL 1743983, at *4 (E.D.N.Y. Feb. 7, 1994) (dismissing RICO claim for lack of proximate causation because "intervening acts" by FDA rendered plaintiff "an indirect victim of the alleged predicate acts").

That the alleged fraud caused the contracting governments different harm than that suffered by Plaintiffs is immaterial. The contracting governments—which Plaintiffs concede were harmed by the alleged fraud, *see* Pls.' Mem. 7—are still the direct victims of the alleged fraud because they were supposedly fraudulently induced to enter the contracts and any injuries to Plaintiffs followed from there. *See, e.g.*, *Williams & Cochrane, LLP v. Quechan Tribe of the Fort Yuma Indian Rsrv.*, 17-cv-01436, 2018 WL 6018504, at *13 (S.D. Cal. Nov. 16, 2018) (dismissing RICO claim for lack of proximate causation when an intermediary suffered a different harm than the plaintiff because the intermediary was still the "direct victim" of the fraud). Indeed, under RICO's proximate causation standard, the focus is not on whether Plaintiffs' injures were a "foreseeable result" of Defendants' conduct—or even whether those injuries may have been "the *intended* consequences*" of that conduct—but rather on "the *directness of the relationship* between the conduct and the harm." *Slay's Restoration*, 884 F.3d at 493 (quoting *Anza*, 547 U.S. at 470) (emphases in original).

Plaintiffs' proposed amendments also fail to establish a sufficiently direct relationship between Defendants' alleged misrepresentations and their injuries because they still only speculate about what would have happened had the contracting governments learned the truth about Defendants' alleged misrepresentations. *See* ECF No. 96 at 17 n.6 ("Plaintiffs only speculate about what actions the contracting governments might have taken if defendants had not made the alleged misrepresentations and/or omissions."). Relying on the two declarations underlying most of their proposed amendments, as well as on select statutes and regulations from states in which none of the Plaintiffs live, Plaintiffs argue that "the majority of contracting governments would have lowered single call prices absent Defendants' misrepresentations." Pls.' Mem. 8. And, their

argument continues, because the majority of contracting governments purportedly would have insisted on lower prices, Defendants would have reduced those prices *nationwide*.

Plaintiffs' proposed amendments do not make this prediction any less speculative. Based on the declarations from only two former employees of Defendants—only one of whom ever even worked for a contracting government—Plaintiffs cannot plausibly predict what a majority of contracting governments "would have done," or that they "would have" insisted on lower prices. Even more speculative is Plaintiffs' prediction that this would have resulted in lower prices not just for the majority of contracting governments but also for contracting governments nationwide. Pls.' Mem. at 10. Courts have rejected less speculative predictions. In *Rojas v. Delta Airlines, Inc.*, for example, the court rejected the plaintiffs' prediction about what *one government entity* would have done had it "known the truth" about the defendants' misrepresentations. 425 F. Supp. 3d 524, 542 (D. Md. 2019). Here, Plaintiffs claim to be predicting what *thousands of government entities* would have done had they known the truth. "The element of proximate causation . . . is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation." *Anza*, 547 U.S. at 460; *see also Slay's Restoration*, 884 F.3d at 494 (finding proximate cause lacking because the plaintiffs' injuries were based on speculation about the actions of numerous intervening entities). And, critically, even an allegation that "the majority of contracting governments would have lowered single call prices" would not help the named plaintiffs in this case, because their proposed Amended Complaint is silent about what the contracting governments that entered into the agreements under which *these plaintiffs* were charged would have done.

Because Plaintiffs' proposed amendments do not change the unavoidable fact that the injuries they allegedly suffered are too remote to establish proximate causation under RICO, the Court should reject Plaintiffs' proposed amendments as futile.

## II. If the Court Denies Leave To Amend, It Should Not Permit an Immediate Appeal.

Appeals are normally allowed only from "final decisions of the district courts of the United States." 28 U.S.C. § 1291. To ensure that litigation proceeds in an orderly and efficient manner, all claims in a case should usually move together because "the entire lawsuit [is] generally the appropriate unit for appellate review." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 9 (1980). Proceeding "otherwise would frustrate the basic federal policy against piecemeal appeals." *United States v. Georgia Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977). Thus, courts of appeal generally have jurisdiction to review only a final decision, one "that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Calderon v. GEICO General Ins. Co.*, 754 F.3d 201, 204 (4th Cir. 2014) (citation omitted).

If the Court denies leave to amend, Plaintiffs seek an immediate appeal under two narrow exceptions to the final-judgment rule: partial final judgment under Federal Rule of Civil Procedure 54(b) and interlocutory appeal under 28 U.S.C. § 1292(b). Neither is appropriate.

### A. Partial Final Judgment Under Rule 54(b) Is Not Warranted Here.

The Fourth Circuit has made clear that Rule 54(b) certification should not be granted "as an accommodation to counsel." *Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331,1335 (4th Cir. 1993). Rule 54(b) affords a district court the discretion to "direct entry of a final judgment as to one or more, but fewer than all, claims," but "only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). The party seeking to obtain a Rule 54(b) certification bears the burden of showing that the case warrants certification. *Braswell*, 2 F.3d at 1335.

Rule 54(b) certification is "the exception rather than the norm," so the inquiry is "tilted from the start against fragmentation of appeals." *Id.* (citation omitted). In determining whether

there is no just reason for delay in entry of judgment, the Fourth Circuit in *Braswell Shipyards* identified five factors that a district should consider if applicable:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Id.* at 1335-36. (quoting *Allis Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360, 364 (3d Cir. 1975)). The Court "must make an express determination that there is no just reason for delay," *Curtiss-Wright*, 446 U.S. at 3, and in doing so "[t]he expression of clear and cogent findings of fact is crucial," *Braswell*, 2 F.3d at 1336.

There is no basis here for the Court to make such an express determination. Plaintiffs gloss over the relevant factors, instead using their pages to reargue the merits—in effect, Plaintiffs say that the Court should grant Rule 54(b) certification because they will prevail in the Fourth Circuit on the proximate-causation issue. *See* Pls.' Mem. 14 ("Plaintiffs submit that there is a substantial likelihood that the Fourth Circuit would reinstate Plaintiffs' RICO claims on appeal."). Given this purported likelihood of success, Plaintiffs assert, permitting them to appeal now would be more efficient than litigating the RICO claims "from scratch" following an appeal at the end of the case. But Plaintiffs' likelihood of success on appeal is not a relevant consideration under Rule 54(b). *See TADCO Const. Grp. Corp. v. Dormitory Auth. of New York*, No. 08-cv-73, 2012 WL 3011735, at *7 (E.D.N.Y. July 23, 2012) (stating that whether the "case involves a meritorious appeal and a likelihood of success on the merits" is not a proper consideration under Rule 54(b)). And even if it were, Plaintiffs' likelihood of success in the Fourth Circuit is far from certain, as recognized not only by this Court in dismissing Plaintiffs' RICO claims, but by numerous other courts, including

the Supreme Court and the Fourth Circuit, in dismissing similar RICO claims based on lack of proximate causation.  *See* Section I.C, *supra*.

Plaintiffs' failure to engage with the controlling standard for a Rule 54(b) appeal in this Circuit is not a surprise because the first *Braswell* factor—the relationship between the adjudicated and unadjudicated claims—is alone dispositive.  First, the parties on appeal would remain contestants below, an overlap that "militates against the use of Rule 54(b)."  *Braswell*, 2 F.3d at 1336; *see also Spiegel v. Trustees of Tufts College*, 843 F.2d 38, 44 (1st Cir. 1988) ("It will be a rare case where Rule 54(b) can appropriately be applied when the contestants on appeal remain, simultaneously, contestants below.").  Second, Plaintiffs' dismissed RICO claims and surviving Sherman Act claim seek the same relief: trebled overcharge damages on calls made during the proposed class period.  *See* Compl. Prayer for Relief 115, ECF No. 1 ("Plaintiffs and the other members of the Class and Subclasses [seek to] recover their Damages from each Defendant, jointly and severally, in an amount to be determined, and that this damages amount be trebled pursuant to 15 U.S.C. § 15(a) [Sherman Act] and 18 U.S.C. § 1964(c) [RICO].").  As a result, if Plaintiffs were to prevail on their Sherman Act claim, they would be awarded the same damages they would be awarded on their RICO claims.  In that case, Plaintiffs' need to appeal the dismissal of their RICO claims would disappear.  "Appellate courts, understandably, have treated such a possibility as a major negative in the Rule 54(b) equation."  *Spiegel*, 843 F.2d at 45 (finding Rule 54(b) certification improper because adjudicated and unadjudicated claims sought similar relief).

Because the first *Braswell* factor is dispositive and Plaintiffs have not met their burden on the other factors, Plaintiffs' request that the Court take the extraordinary step of entering partial final judgment on their RICO claims should be denied.

**B.      Interlocutory Appeal Under 28 U.S.C. § 1292(b) Is Also Inappropriate.**

Plaintiffs request, in the alternative, that the Court certify its ruling on their RICO claims for interlocutory appeal under 28 U.S.C. § 1292(b), which allows a district court to certify an order for interlocutory appeal when "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers v. Lybrand & Livesay*, 437 U.S. 463, 475 (1978); *see also Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989) (emphasizing that § 1292(b) "should be used sparingly and . . . its requirements must be strictly construed"). Under § 1292(b), a court may certify an order for interlocutory appeal only if it finds the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." And even if a district court certifies an order under § 1292(b), the court of appeals can, "in its discretion," opt not to permit the appeal. *See* 28 U.S.C. § 1292(b). Plaintiffs have not met their burden of demonstrating that a § 1292(b) interlocutory appeal is warranted.

First, Plaintiffs fail to show that the Court's order dismissing their RICO claims involves a "controlling question of law." A controlling question of law refers to "a narrow question of pure law whose resolution will be *completely dispositive* of the litigation, either as a legal or practical matter, whichever way it goes." *Hall v. Greystar Mgmt. Servs., L.P.*, 193 F. Supp. 3d 522, 525 (D. Md. 2016) (quoting *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, 1989 WL 42583, at *5 (4th Cir. 1989) (table decision)) (emphasis added). Whether Plaintiffs have sufficiently alleged proximate causation under RICO is not a narrow question of pure law. *Cf. Clark Const. Grp., Inc. v. Allglass Sys., Inc.*, No. 2002-cv-1590, 2005 WL 736606, at *2 (D. Md. March 30, 2005) (stating that "antithesis of a proper § 1292(b) appeal is one that turns on . . . whether the district court properly applied settled law to the facts or evidence of a particular case" (citation omitted)). And

even if it were, the resolution of that question would not completely dispose of the litigation, either as a legal or practical matter. Regardless of the outcome of an appeal on the RICO claims, the parties will need to continue to litigate Plaintiffs' Sherman Act claim. *See LaFleur v. Dollar Tree Stores, Inc.*, No. 12-cv-00363, 2014 WL 2121721, at *2 (E.D. Va. May 20, 2014) ("A question of law is not controlling if litigation will necessarily continue regardless of how that question [is] decided." (citation omitted)).

Second, Plaintiffs cannot show that there is "substantial ground for difference of opinion" on whether Plaintiffs adequately alleged proximate causation under RICO. While Plaintiffs claim that "reasonable jurists might disagree" with the Court's ruling on this issue, Pls.' Mem. 17, the Court's ruling involved a straightforward application of settled law on proximate causation under RICO. *See* Section I.C, *supra*. The Court did not wrestle with an issue of first impression or grapple with a split of authority. Plaintiffs "merely disagree with the Court's ruling, which is an inappropriate reason to grant an interlocutory appeal." *Stone v. Instrumentation Lab. SpA*, No. 07-cv-3191, 2008 WL 11411589, at *2 (D. Md. Aug. 11, 2008).

Because Plaintiffs have not even come close to demonstrating that the applicable requirements are satisfied, the Court should deny Plaintiffs' request to certify its ruling dismissing their RICO claims for interlocutory appeal under § 1292(b).

## III. If the Court Permits an Immediate Appeal, It Should Stay the Case.

For the reasons above, there is no proper basis for the Court to allow an appeal of the dismissal of Plaintiffs' RICO claims now. But, if the Court does allow an immediate appeal, Defendants request an order staying the case pending the outcome of the appeal. *See* 28 U.S.C. § 1292(b) (stating that interlocutory appeal under this provision does not "stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order"). The Court can stay the case during appeal through "its inherent power to 'control the disposition

of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *CX Reinsurance Co. v. Johnson*, No. 18-cv-2355, 2020 WL 406936, at *3 (D. Md. Jan. 24, 2020) (quoting *Hunt Valley Presbyterian Church, Inc. v. Baltimore Cty.*, No. CCB-17-3686, 2018 WL 2225089, at *2 (D. Md. May 15, 2018)). The factors the Court should consider are "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the nonmoving party." *Id.* These factors all favor a stay if the Court were to determine that an immediate appeal is warranted.

As Plaintiffs acknowledge, if the case were to proceed to discovery during any appeal of their RICO claims, the parties could "spend years, millions of dollars in attorney time and expenses, and considerable Court resources (including on motion practice, class certification, and trial), only to have to litigate the RICO claims from scratch if they are reinstated on appeal." Pls.' Mem. at 15. A stay pending any interlocutory appeal would thus serve the interests of judicial economy and would obviate hardship to Defendants if an appeal were to be allowed. And a stay would not prejudice Plaintiffs. As Plaintiffs recognize, complex cases like this one can take years to resolve. *See* Pls.' Mem. 15. This case is in its early stages. A stay pending any interlocutory appeal of the dismissal of Plaintiffs' RICO claims would not delay this case materially. Thus, if the Court is inclined to permit an interlocutory appeal—which it should not—a stay is appropriate.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for leave to amend and not allow an immediate appeal. But if the Court does allow an appeal, Defendants request that the Court stay this case while that appeal is pending.

Dated: November 22, 2021

Respectfully submitted,

/s/ Jason R. Scherr
Jason R. Scherr, Esquire (Bar No. 25633)
MORGAN LEWIS & BOCKIUS, LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: 202.739.6000
F: 202.373.6001
jr.scherr@morganlewis.com

Elizabeth Herrington*
MORGAN LEWIS & BOCKIUS, LLP
77 W. Wacker Drive
Chicago, IL 60601
T: 312.324.1000
F: 312.324.1001
beth.herrington@morganlewis.com

R. Brendan Fee*
MORGAN LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103
T: 215.963.5000
F: 215.963.5001
brendan.fee@morganlewis.com

COUNSEL FOR DEFENDANT SECURUS
TECHNOLOGIES, LLC

/s/ Jonathan I. Gleklen
Jonathan I. Gleklen, Esquire (Bar No. 21350)
ARNOLD AND PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001-3743
T: (202) 942-5000
F: (202) 942-5999
jonathan.gleken@arnoldporter.com
(Signed by Jason R. Scherr with permission of
Jonathan I. Gleklen)

Charles Scott Lent*
Javier Ortega*
ARNOLD AND PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
T: (212) 836-8000
F: (212) 836-8689
scott.lent@arnoldporter.com
javier.ortega@arnoldporter.com

COUNSEL FOR DEFENDANT GLOBAL
TEL*LINK CORP.

*/s/ Jonathan B. Pitt*
WILLIAMS & CONNOLLY LLP
Jonathan B. Pitt, Bar No. 16086
Colette T. Connor*
725 Twelfth Street, NW
Washington, DC 20005
T: 202.434.5000
F: 202.434.5029
jpitt@wc.com
cconnor@wc.com
(Signed by Jason R. Scherr with permission of
Jonathan Pitt)

STEARNS WEAVER MILLER
WEISSLER ALHADEFF &
SITTERSON, P.A.
Jay B. Shapiro*
150 West Flagler Street, Suite 2200
Miami, FL 33130
T: 305.789.3229
F: 305.789.2664
jshapiro@stearnsweaver.com

COUNSEL FOR DEFENDANT 3CINTERACTIVE
CORP.


* admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I certify that on November 22, 2021, Defendants' Opposition to Plaintiffs' Motion for Leave to Amend or for Partial Judgment or Interlocutory Appeal was served via the Court's CM/ECF system on all counsel of record in accordance with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Maryland.

*/s/ Jason R. Scherr*
Jason R. Scherr