# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

ASHLEY ALBERT, et al.,

               Plaintiffs,

vs.

GLOBAL TEL*LINK CORP., et al.,

               Defendants.

Civil Action No. 8:20-cv-01936

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO AMEND OR FOR IMMEDIATE APPEAL

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.    THE COURT SHOULD ALLOW THE PROPOSED AMENDMENT ........................... 2

    A.    Plaintiffs' Amendment Is Timely and Procedurally Appropriate ........................... 3

        1.    Defendants Concede the Amendment Would Not Prejudice Them ........... 3

        2.    Plaintiffs' Motion to Amend Is Timely ...................................................... 3

        3.    Plaintiffs Were Not Obligated to Amend Their Complaint Prior to the Court's Motion to Dismiss Decision ...................................................... 5

    B.    The Proposed Amendment Is Not Futile ................................................................ 7

        1.    The PAC Adequately Pleads Causation by Clarifying That Plaintiffs' Injuries Are Not Derivative ....................................................... 8

            a.    Plaintiffs' injuries are independent from and not derivative of any harms to contracting governments ...................................... 8

            b.    Defendants' misrepresentations to contracting governments directly caused Plaintiffs' injuries ................................................. 9

        2.    The PAC Plausibly Alleges That, but for Defendants' Misrepresentations, Prices for Single Calls Would Have Been Lower ...................................................................................................... 14

II.    IF THE COURT DENIES LEAVE TO AMEND, IT SHOULD ALLOW AN IMMEDIATE APPEAL ................................................................................................... 17

    A.    Partial Final Judgment on the RICO Claim Would Be Warranted ....................... 17

    B.    Alternatively, Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) Would Be Warranted ............................................................................................. 19

CONCLUSION ................................................................................................................... 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Am. Honda Motor Co., Dealerships Rels. Litig.*,
    941 F. Supp. 528 (D. Md. 1996) ...........................................................................10

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    804 F.3d 633 (3d Cir. 2015)..................................................................................11

*Barr Laboratories, Inc. v. Quantum Pharmics, Inc.*,
    No. 90-cv-4406, 1994 WL 1743983 (E.D.N.Y. Feb. 7, 1994) .............................13

*Bridge v. Phoenix Bond & Indemnity Co.*,
    553 U.S. 639 (2008).................................................................................... *passim*

*Carolina Power & Light Co. v. 3M Co.*,
    No. 5:08-cv-460, 2010 WL 2837009 (E.D.N.C. July 19, 2010)............................7

*Clark Constr. Grp., Inc. v. Allglass Sys., Inc.*,
    No. 02-cv-1590, 2005 WL 736606 (D. Md. Mar. 30, 2005) .................................19

*Cooke v. Caliber Home Loans, Inc.*,
    No. 18-cv-3701, 2020 WL 1434105 (D. Md. Mar. 24, 2020) .................................6

*Davis v. Piper Aircraft Corp.*,
    615 F.2d 606 (4th Cir. 1980) ..............................................................................3, 4

*Dual Diagnosis Treatment Center, Inc. v. Centene Corp*,
    No. 2:20-cv-04112, 2021 WL 4072683 (C.D. Cal. Aug. 10, 2021) ......................12

*Edwards v. City of Goldsboro*,
    178 F.3d 231 (4th Cir. 1999) ................................................................................3

*Ekstrom v. Cong. Bank*,
    No. 20-cv-1501, 2020 WL 6565251 (D. Md. Nov. 6, 2020)................................12

*Estate of Olivia ex rel. McHugh v. N.J.*,
    604 F.3d 788 (3d Cir. 2010).................................................................................4

*Frank v. U.S. West, Inc.*,
    3 F.3d 1357 (10th Cir. 1993) ................................................................................4

*Galustian v. Peter*,
    591 F.3d 724 (4th Cir. 2010) ................................................................................1

*Graham v. Sec'y of the Army*,
    No. 5:17-cv-502, 2019 WL 1968044 (E.D.N.C. May 2, 2019)............................6

*Hall v. Greystar Mgmt. Servs., L.P.*,
    193 F. Supp. 3d 522 (D. Md. 2016) ...................................................................19

*Harvey v. Cable News Network, Inc.*,
    520 F. Supp. 3d 693 (D. Md. 2021) ...................................................................6

*Hemi Group, LLC v. City of New York*,
    559 U.S. 1, 11 (2010)........................................................................................12

*Holmes v. Sec. Inv. Prot. Corp.*,
    503 U.S. 258 (1992)..........................................................................................10

*Jien v. Perdue Farms, Inc.*,
    No. 1:19-cv-2521, 2020 WL 5544183 (D. Md. Sep. 16, 2020)............................6

*Laber v. Harvey*,
    438 F.3d 404 (4th Cir. 2006) ..........................................................................3, 4

*LaFleur v. Dollar Tree Stores, Inc.*,
    No. 12-cv-363, 2014 WL 2121721 (E.D. Va. May 20, 2014) ...............................19

*In re Neurontin Marketing & Sales Practices Litigation*,
    712 F.3d 21, 39 (1st Cir. 2013).........................................................................11

*Ostrzenski v. Seigel*,
    177 F.3d 245 (4th Cir. 1999) ..........................................................................6, 7

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co.*,
    943 F.3d 1243 (9th Cir. 2019) ..........................................................................10

*Reynolds v. Dep't of Recreation & Parks*,
    823 F.2d 548, 1987 WL 36725 (4th Cir. 1987) ...................................................6

*Rojas v. Delta Airlines, Inc.*,
    425 F. Supp. 3d 524 (D. Md. 2019) ...................................................................16

*Seed Co. Ltd. v. Westerman*,
    No. 08-cv-355, 2019 WL 3222412 (D.D.C. July 17, 2019) ...................................18

*Slay's Restoration, LLC v. Wright National Flood Insurance Co.*,
    884 F.3d 489, 494 (4th Cir. 2018) .....................................................................12

*Sulton v. Baltimore Cnty.*,
    No. 18-cv-2864, 2021 WL 82925 (D. Md. Jan. 11, 2021)......................................7

*Tardif v. PETA*,
    829 F. Supp. 2d 1219 (M.D. Fla. 2011)...............................................................10

*Vogel v. Boddie-Noell Enterprises,*
  No. 11-cv-515, 2013 WL 1010354 (D. Md. Mar. 13, 2013). ....................................................5

*Williams & Cochrane, LLP v. Quechan Tribe of the Fort Yuma Indian*
  *Reservation,*
  No. 3:17-cv-01436, 2018 WL 6018504 (S.D. Cal. Nov. 15, 2018)........................................12

**Statutes**

28 U.S.C. § 1292(b) ....................................................................................................17, 19

**Other Authorities**

Fed. R. Civ. P. 15...............................................................................................1, 4, 5, 7

Fed. R. Civ. P. 54(b) ...........................................................................................17, 18

Less than a month after this Court's Rule 12(b)(6) decision, Plaintiffs timely moved—for the *first* time—to amend their complaint. The Proposed Amended Complaint ("PAC") bolsters and clarifies Plaintiffs' RICO allegations concerning the dispositive issues of proximate causation and standing. It includes new allegations based on facts obtained during an investigation conducted after and squarely in response to the Court's motion to dismiss ruling.

Defendants' assertion that Plaintiffs should not be permitted *even a single opportunity* to amend their complaint is flatly contradicted by Rule 15's plain language and purpose. Rule 15(a)(2) states that a "court should freely give leave when justice so requires," and the "policy" of the Fourth Circuit is "to liberally allow amendment in keeping with the spirit of" Rule 15(a). *Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010). Accordingly, courts customarily permit plaintiffs to amend their pleadings immediately following a Rule 12(b)(6) dismissal barring an affirmative showing of futility. As multiple federal appeals courts have recognized, it is an *abuse of discretion* to deny leave to amend simply because a plaintiff did not amend when first presented with a defendant's dismissal motion.

In opposing Plaintiffs' request, Defendants are unable to point to *any* prejudice they would suffer from an amendment. Instead, Defendants distract from the merits of Plaintiffs' motion by repeatedly mischaracterizing the record to manufacture non-existent procedural deficiencies:

- Taking advantage of the absence of any hearing transcript, Defendants make the unsubstantiated claim that Judge Grimm "warned" Plaintiffs that any dismissal would be "with prejudice" if they declined to amend in response to Defendants' three-page pre-motion letter. Plaintiffs' counsel recall no such warning.

- Defendants selectively quote from a briefing stipulation to make it appear as though Plaintiffs agreed to forgo their right to amend. Not only did Plaintiffs never make such a representation, but—in language from the same stipulation that Defendants omit—Plaintiffs expressly "reserve[d] all rights under Federal Rule of Civil Procedure 15" to amend their complaint. Stipulated Mot. to Set Briefing Schedule 1, ECF No. 63.

- Defendants assert that leave to amend should be denied because Plaintiffs "knew all of the facts giving rise to their proposed amendments when they filed their original Complaint." Opp. to Pls.' Mot. for Leave to Amend or for Partial Final J. or Interlocutory Appeal, at 8, ECF No. 108 ("Opp."). Not so. The PAC contains numerous allegations resulting from a *new* investigation conducted in response to the Court's order dismissing the RICO claims.

Defendants further fail to show that Plaintiffs' proposed amendment is futile. *First,* in the face of the PAC's new allegations clarifying how Plaintiffs' injuries are distinct from any potential government injuries, Defendants make a major concession. Defendants abandon the argument, which the Court appeared to credit in its decision, that Plaintiffs' injuries are somehow derivative of financial injury to contracting governments. *Second,* Defendants pivot to arguing that Plaintiffs are barred from pursuing a RICO claim that is based on misrepresentations to a third party. Yet, this same argument was squarely rejected by the Supreme Court in *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008). *Third,* the PAC contains additional allegations plausibly showing that, but for Defendants' fraud, many contracting governments would have insisted that Defendants lower their nationwide price for single calls products. These new allegations, derived from both a post-dismissal investigation and sworn declarations, directly address the Court's concerns in its motion to dismiss ruling.

Defendants also oppose Plaintiffs' request to enter a partial final judgment or certify an interlocutory appeal on their RICO claims should the Court deny leave to amend. But Defendants concede that an immediate appeal would promote efficiency by avoiding the risk of litigating the case a second time if the RICO claims were later reinstated. Defendants further fail to refute (or in, many cases, even address) the remaining factors, all of which favor an immediate appeal.

## ARGUMENT

### I.  THE COURT SHOULD ALLOW THE PROPOSED AMENDMENT

"[L]eave to amend a pleading should be denied *only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the

amendment would be futile." *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999).

Defendants do not and cannot argue that Plaintiffs' amendment would prejudice them or that Plaintiffs have acted in bad faith. Instead, Defendants assert only that the proposed amendment should be denied due to delay (which is not part of the applicable legal standard) and futility. Both arguments should be rejected: Plaintiffs' motion was timely, and the RICO claims alleged in the PAC would survive a motion to dismiss.

A. <u>**Plaintiffs' Amendment Is Timely and Procedurally Appropriate**</u>

1. **Defendants Concede the Amendment Would Not Prejudice Them**

Defendants do not argue that Plaintiffs' proposed amendment would prejudice them. Nor could they: the Court only just ruled on the motion to dismiss; discovery has not begun; this is Plaintiffs' first proposed amendment; and the amendment would bolster Plaintiffs' existing RICO allegations (and not introduce any new claims). *See Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (holding that an amendment is not prejudicial "if it merely adds . . . to the facts already pled and is offered before any discovery has occurred").

These facts alone strongly support granting the proposed amendment, as the "absence of prejudice . . . will normally warrant granting leave to amend." *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980); *see also Laber*, 438 F.3d at 428 (holding that post-dismissal leave to amend should have been granted where defendant "would not have been prejudiced" by proposed amendment and made "no argument that it would be").

2. **Plaintiffs' Motion to Amend Is Timely**

Despite the absence of prejudice, Defendants contend that Plaintiffs "delayed in seeking amendment." Opp. 7-8. Without support, Defendants claim that Plaintiffs "knew all of the facts giving rise to their proposed amendments when they filed their original Complaint." *Id.* 7-9.

Yet delay alone does not justify denying leave to amend under Rule 15. *See Laber*, 438 F.3d at 427 ("Delay alone . . . is an insufficient reason to deny the plaintiff's motion to amend"); *Davis*, 615 F.2d at 613 ("Delay alone . . . without any specifically resulting prejudice, or any obvious design by dilatoriness to harass the opponent, should not suffice as reason for denial."). Moreover, even were mere delay relevant under Rule 15, Defendants have not shown any unreasonable delay on Plaintiffs' part. Plaintiffs sought their first and only amendment to the complaint less than a month after the Court's motion to dismiss ruling and before the parties commenced formal discovery.

To the contrary, Defendants' own authorities uniformly support granting leave to amend in cases like this one, which is in its infancy. In each decision, amendments were denied only because they were sought *years* into the litigation and after prior amendments had been permitted. *See Estate of Olivia ex rel. McHugh v. N.J.*, 604 F.3d 788, 796-803 (3d Cir. 2010) (plaintiff sought third amendment "more than seven years" into the litigation, after "extensive discovery," and following a summary judgment motion); *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1366 (10th Cir. 1993) (plaintiff sought to amend a previously amended complaint after summary judgment motion was filed and "four months after the court's deadline for amending pleadings").

Nor did Plaintiffs here "kn[o]w all of the facts giving rise to their proposed amendments when they filed their original Complaint." Opp. 8. The PAC contains multiple allegations derived from a new investigation conducted by Plaintiffs in response to the dismissal of their RICO claims. Plaintiffs' counsel includes a declaration attesting to this fact. *See* Ex. A (Decl. of Janet Herold). This investigation, led by the nonprofit organization Justice Catalyst, involved outreach to more than 40 local governments. *Id.* ¶ 5. It informed the new allegations in the PAC detailing how contracting governments seek to minimize the ICS prices charged to consumers and how those

governments would not have allowed Defendants' pricing scheme to continue absent Defendants' misrepresentations. *Id.* ¶ 7; *see also* PAC ¶¶ 7, 20, 46, 70, 186-191, 197-199, ECF No. 103-2.

In addition to these new allegations, Plaintiffs bolster their RICO claims by introducing two previously obtained sworn declarations. Despite Defendants' objections, there is no rule preventing Plaintiffs from including in an amended complaint additional support for facts previously pled. And Plaintiffs acted reasonably to protect the identity of their sources by not attaching those declarations to the original complaint. Following the dismissal of the RICO claims, however, Plaintiffs chose to submit the declarations because the declarants' identities are material to addressing issues the Court raised regarding causation. Plaintiffs are not guilty of "neglect," like the plaintiff in *Vogel v. Boddie-Noell Enterprises* who failed to name a proper defendant until after the limitations period. No. 11-cv-515, 2013 WL 1010354, at *5 (D. Md. Mar. 13, 2013). Thus, Plaintiffs should not be faulted for submitting the declarations now rather than earlier.

### 3. Plaintiffs Were Not Obligated to Amend Their Complaint Prior to the Court's Motion to Dismiss Decision

Defendants also argue that "Plaintiffs' motion should be denied because they had 'previous opportunities to amend' but chose not to do so." Opp. 9. Instead, as Defendants would have it, Plaintiffs' last shot at amending their pleading was in response to a perfunctory pre-motion letter filed long before any ruling from this Court on the adequacy of their original complaint.

Defendants' argument is flatly inconsistent with Rule 15's liberal standards. Rule 15(a)(1)(B) provides for one amendment as of right within 21 days of service of a motion to dismiss. And Rule 15(a)(2) requires that courts "freely give leave" for amendments "[i]n all other cases . . . when justice so requires." By asserting that Plaintiffs were required to amend their complaint shortly after receiving either Defendants' pre-motion letter or dismissal brief, Defendants would impermissibly read Rule 15(a)(2) out of the Federal Rules of Civil Procedure.

Unsurprisingly, the Fourth Circuit has squarely rejected similar efforts:

> [T]he district court should not have dismissed the complaint with prejudice without permitting [plaintiff] an opportunity to amend. . . . A dismissal under Rule 12(b)(6) generally is not final or on the merits and the court normally will give plaintiff leave to file an amended complaint. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading.

*Ostrzenski v. Seigel*, 177 F.3d 245, 252-53 (4th Cir. 1999); *see also Harvey v. Cable News Network, Inc.*, 520 F. Supp. 3d 693, 725 (D. Md. 2021) ("[T]here is authority that a plaintiff should be given at least one opportunity to amend a complaint before a dismissal of the case with prejudice." (citation omitted)); *Jien v. Perdue Farms, Inc.*, No. 1:19-cv-2521, 2020 WL 5544183, at *15 (D. Md. Sep. 16, 2020) (granting leave to amend after motion to dismiss ruling because "this is the first time Plaintiffs have had the opportunity to understand the Court's view of the Amended Complaint's deficiencies").

Even Defendants' *own authorities* contradict their position. In two of the three cases cited by Defendants, the courts actually *granted* leave to amend following Rule 12 dismissals. *See Reynolds v. Dep't of Recreation & Parks*, 823 F.2d 548, 1987 WL 36725, at *1 (table) (4th Cir. 1987) ("The district court granted a motion to dismiss plaintiff's § 1981 cause of action . . . with leave to amend . . . ."); *Graham v. Sec'y of the Army*, No. 5:17-cv-502, 2019 WL 1968044, at *1 (E.D.N.C. May 2, 2019) ("The court allowed plaintiff leave to amend his complaint to correct deficiencies noted in the court's order"). And in the third case cited by Defendants, the plaintiff never even sought leave to amend. *See Cooke v. Caliber Home Loans, Inc.*, No. 18-cv-3701, 2020 WL 1434105, at *8 (D. Md. Mar. 24, 2020).

In the face of adverse precedent, Defendants resort to distorting this case's procedural history. Seeking to take apparent advantage of the absence of a hearing transcript, and the change in judicial assignment, Defendants claim that Judge Grimm "warned" Plaintiffs that, if they

declined to amend in response to Defendants' pre-motion letter, "any dismissal would be with prejudice." Opp. 9. Plaintiffs' counsel dispute Defendants' account. *See* Ex. B (Joint Decl. of Matthew K. Handley, George F. Farah, Benjamin D. Brown, and Robert A. Braun). Plaintiffs' counsel recall Judge Grimm telling the parties that it would be inefficient for Defendants to submit a lengthy motion to dismiss brief if Plaintiffs intended to respond *to that motion* by amending their complaint. *Id.* ¶ 3. None of Plaintiffs' counsel recall Judge Grimm "warning" plaintiffs—in violation of Rule 15—that they would be prohibited from amending their complaint to address *the Court's* dismissal of any of their claims.[1] *Id.*

Defendants also selectively, and misleadingly, quote the parties' joint stipulation concerning the motion to dismiss briefing, in which Plaintiffs—consistent with Judge Grimm's instruction—stated they would not amend *before* the filing of Defendants' motion to dismiss. *See* Opp. 5. Defendants omit the very next sentence in which Plaintiffs expressly *"reserve[d] all rights under Federal Rule of Procedure 15"* to amend their complaint later. ECF No. 63 (emphasis added). Judge Grimm entered the proposed order, including this language, without modification.

## B. The Proposed Amendment Is Not Futile

"[T]o assess whether a claim is futile," the Court need determine only whether "the proposed amendment is clearly insufficient or frivolous on its face." *Sulton v. Baltimore Cnty.*, No. 18-cv-2864, 2021 WL 82925, at *2-3 (D. Md. Jan. 11, 2021) (citation omitted).

---

[1] Defendants acknowledge that this Court did not consider in its Rule 12(b)(6) opinion whether Plaintiffs should be permitted leave to amend their complaint. Defendants nevertheless repeatedly claim that the opinion's silence is tantamount to a dismissal "with prejudice." The law does not mandate such "gotcha" formalism. This Court has ample authority to properly apply Rule 15 and Fourth Circuit precedent to permit the proposed amendment. *See, e.g.*, *Carolina Power & Light Co. v. 3M Co.*, No. 5:08-cv-460, 2010 WL 2837009, at *2 (E.D.N.C. July 19, 2010) (granting leave to amend pursuant to *Ostrzenski* and other precedents despite previously "dismissing the claims . . . without giving [plaintiff] leave to amend").

The PAC is not "clearly insufficient or frivolous on its face." *Id.* at *2. It squarely addresses two issues that the Court raised with the original Complaint: (a) that Plaintiffs' alleged injuries were derivative of harms suffered by contracting governments, Mem. Op. & Order 16, ECF No. 96 (the "Order"); and (b) that Plaintiffs "only speculate about what actions the contracting governments might have taken if defendants had not made the alleged misrepresentations and/or omissions," *id.* at 17, n.6. The PAC adds substantial clarification, new facts, and sworn testimonial evidence that bolster Plaintiffs' RICO claims.

## 1. The PAC Adequately Pleads Causation by Clarifying That Plaintiffs' Injuries Are Not Derivative

The PAC clarifies that Plaintiffs' alleged injuries are not derivative of injuries to any other party, including contracting governments. Specifically, the PAC alleges that the only financial harm that contracting governments could have suffered from Defendants' misrepresentations and omissions was through reduced site commission payments, and that such harms are entirely *distinct* from the alleged financial harms to Plaintiffs resulting from their payment of inflated prices for single call products. *See* Mem. of Law in Support of Pls.' Mot. for Leave to Amend, at 5-8, ECF No. 103-1 ("Br."). Faced with these new clarifying allegations, Defendants concede that Plaintiffs' financial harm is not derivative of contracting governments' financial harm and pivot to other arguments that are inconsistent with well-established case law.

### a. Plaintiffs' injuries are independent from and not derivative of any harms to contracting governments

The PAC presents several reasons—including temporal, causal, mathematical, and logical—why the injuries that Plaintiffs suffered from paying inflated prices for Defendants' single call products were independent from, and could not have stemmed from, any financial harm to contracting governments. The PAC details the mechanics of a single call charge: how Defendants *first* charged consumers for single calls and *then* paid contracting governments site commissions.

These two transactions were separate: each transaction involved a unique pair of counterparties and a unique method of determining the transaction amount. *See* PAC ¶¶ 21, 66-70, 195-196.

The PAC further explains the "direct" nature of Plaintiffs' injury: Plaintiffs paid a "direct charge" to Defendants; Plaintiffs were the only "consumers and purchasers of the single call products"; and Plaintiffs were "the only ones who paid Defendants for these calls." *Id.* ¶¶ 194-200. Accordingly, only Plaintiffs—not contracting governments—have standing under RICO to recover the overcharges that *consumers* paid for single calls.

Defendants now concede that the financial injury to Plaintiffs was independent of, and not derivative of, any financial injury to contracting governments. Opp. 12 ("the prices to be charged for calls . . . allegedly caused Plaintiffs' injuries."); *id.* at 13 ("the alleged fraud caused . . . harm . . . suffered by Plaintiffs"). Defendants do not—and cannot—argue, as they had in their original motion to dismiss, ECF No. 72-1 at 25, that the financial harm to Plaintiffs somehow flows from a financial harm to contracting governments, because that is simply not true. This significant pivot demonstrates that the PAC is not futile; its new allegations forced Defendants to abandon an argument that was central to their motion to dismiss and informed the Court's dismissal of the RICO claims.

### b. Defendants' misrepresentations to contracting governments directly caused Plaintiffs' injuries

In light of the PAC's new allegations, Defendants shift their focus to two legal arguments on the adequacy of Plaintiffs' theory of causation under RICO: first, that contracting governments were injured through a fraudulent inducement of contract, Opp. 12-13, and second, that the decision to enter into these contracts is an "intervening cause" triggering Plaintiffs' alleged harms, *id.* at 11-13. Neither argument is availing. The PAC makes clear that the misrepresentations to contracting governments directly caused Plaintiffs' harm. *See* PAC ¶¶ 66-70, 194-201. And well-

established Supreme Court precedent permits RICO claims predicated on misrepresentations to third parties that directly harm plaintiffs. *Bridge*, 553 U.S. at 646.

(1)   <u>No intervening cause triggered Plaintiffs' harms</u>

Defendants argue that governments' decisions to include single call products in ICS contracts with Defendants constitute a supposed "intervening cause" of Plaintiffs' harms. Opp. 12. Yet, this Court has already considered—and rejected—the argument that "decisions of the contracting governments to contract with Securus and GTL . . . are independent, intervening causes of [p]laintiffs' alleged injuries," finding "that plaintiffs allege an injury in this case that is sufficiently direct, and of the type that Congress meant to prevent." Order 15. That the Court reached this conclusion when analyzing Plaintiffs' *antitrust* claims is immaterial. As the Supreme Court has explained at length, Congress intended for RICO to incorporate antitrust law's proximate causation and standing standards, including the *Associated General Contractors* factors. *See Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 267-69, 279 (1992) ("[T]he Court sensibly holds that the statutory words 'by reason of' operate, as they do in the antitrust laws"); *In re Am. Honda Motor Co., Dealerships Rels. Litig.*, 941 F. Supp. 528, 537 n.5 (D. Md. 1996) (treating "standing analysis for both RICO and antitrust claims . . . the same" with respect to injury in fact and proximate causation).

Moreover, contracting governments' assent to the inclusion of Defendants' single call products in ICS contracts cannot be an intervening cause because that assent was readily foreseeable. An intervening cause is "a later cause of independent origin that was not foreseeable." *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co.*, 943 F.3d 1243, 1257 (9th Cir. 2019); *see also Tardif v. PETA*, 829 F. Supp. 2d 1219, 1234 (M.D. Fla. 2011) ("[W]hen an intervening cause is foreseeable to the defendant, he may still be held liable."). As such, when it is "perfectly foreseeable that [a third party] would play a causative role in

10

Defendants' alleged fraudulent scheme," those third-party actions do not constitute an intervening cause. *Takeda*, 943 F.3d at 1257. Here, it was "perfectly foreseeable" that contracting governments, faced with Defendants' misrepresentations, would play a causative role in Defendants' overall scheme. Indeed, the very purpose of Defendants' misrepresentations was to secure contracting governments' assent to the provision of single call products so that Defendants could overcharge Plaintiffs for these products.

Likewise, in *In re Neurontin Marketing & Sales Practices Litigation*, defendant Pfizer "fraudulently marketed to physicians with the intent that those physicians would write prescriptions paid for by Kaiser," the plaintiff. 712 F.3d 21, 39 (1st Cir. 2013). Even though these physicians were "exercis[ing] independent medical judgment in making decisions about prescriptions," the court upheld the RICO claim and found key the fact that "Pfizer's scheme relied on the expectation that physicians would base their prescribing decisions in part on Pfizer's fraudulent marketing." *Id.* Here, the fact that contracting governments exercised some discretion—as the court put it in *Neurontin*, "[t]he fact that some physicians may have considered factors other than Pfizer's detailing materials in making their prescribing decisions"—"does not add such attenuation to the causal chain as to eliminate proximate cause." *Id.*; *see also In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d 633, 645 (3d Cir. 2015) (rejecting argument "that the presence of intermediaries, doctors and patients, destroys proximate causation because they were the ones who ultimately decided whether to rely on [the defendant's] misrepresentations").

Defendants next argue that contracting governments' decisions render them an intervening cause because those governments were the recipients of Defendants' misstatements. Opp. 12. But this argument is plainly inconsistent with binding Supreme Court precedent in *Bridge*, which held that an injured party "may recover through RICO whether or not it is the direct *recipient* of the

false statements." 553 U.S. at 646. The Court explained that its holding was part of a "long line of cases in which courts have permitted a plaintiff directly injured by a fraudulent misrepresentation to recover even though it was a third party, and not the plaintiff, who relied on the defendant's misrepresentation." *Id.* at 656; *see also Ekstrom v. Cong. Bank*, No. 20-cv-1501, 2020 WL 6565251, at *24 (D. Md. Nov. 6, 2020) (rejecting argument to dismiss RICO claim because "plaintiffs did not personally receive the alleged fraudulent solicitations").

In contrast, the cases Defendants rely on are distinguishable in at least two key respects. First, Defendants' authorities concern third parties that *themselves* independently harmed the plaintiff for reasons *wholly unrelated to the defendants' misconduct*. For example, in *Hemi Group, LLC v. City of New York*, the Supreme Court rejected a RICO claim by New York City against Hemi, an out-of-state cigarette vendor. Hemi allegedly failed to submit tax information about its customers to New York State, which impeded New York City from collecting funds from customers who had failed to pay cigarette taxes. The Supreme Court found that Hemi's customers—third parties—were "directly responsible for the City's harm" because they had "fail[ed] to pay their taxes" in the first place. 559 U.S. 1, 11 (2010).[2] In contrast, the PAC makes clear that Plaintiffs' injury flows *directly* from Defendants' misconduct—their charging of inflated

---

[2] Similarly, in *Dual Diagnosis Treatment Center, Inc. v. Centene Corp.*, the defendants were businesses that wrongly "reported to federal authorities that Plaintiffs were engaging in illegal conduct." No. 2:20-cv-04112, 2021 WL 4072683, at *2 (C.D. Cal. Aug. 10, 2021). The court was unwilling to conclude that Defendants' purported misrepresentations were the proximate cause of a major federal raid conducted six months after those misrepresentations where the FBI decided to "investigate Plaintiffs and apply for a search warrant" and a judge made a "decision to issue the search warrant." *Id.* at *3. And in *Williams & Cochrane, LLP v. Quechan Tribe of the Fort Yuma Indian Reservation*, the defendants were competitor law firms that made misrepresentations to a third-party client, who then later terminated the plaintiff. The court ruled that the third party's decision to terminate could have been "for any number of reasons unconnected to the asserted pattern of fraud," including the fact that defendants charged much lower rates. No. 3:17-cv-01436, 2018 WL 6018504, at *13 (S.D. Cal. Nov. 15, 2018).

single call prices—and is not the product of misconduct by contracting governments that is unrelated to Defendants' misrepresentations.

Second, Defendants' authorities involve a host of third-party actors that break the chain of causation. In *Slay's Restoration, LLC v. Wright National Flood Insurance Co.*, the Fourth Circuit described the plaintiff's allegations as "proceeding from the [defendant] consulting firms' [original] fraudulent conduct, through Colonial Claims and Wright Insurance [two third parties] to City Line [a *third* party], then to First Atlantic [a *fourth* third party], and ultimately to Slay's Restoration [the plaintiff]." 884 F.3d 489, 494 (4th Cir. 2018). And, in *Barr Laboratories, Inc. v. Quantum Pharmics, Inc.*, the court similarly identified *four* intervening third parties in a RICO suit by generic drug manufacturer alleging that competitors had submitted false filings to the FDA. No. 90-cv-4406, 1994 WL 1743983, at *4 (E.D.N.Y. Feb. 7, 1994). Here, no such attenuation exists; Defendants are the only ones who dealt harm to Plaintiffs. It was Defendants—not any third party—who charged Plaintiffs inflated prices for single call products.

(2)   Plaintiffs were the direct victims of the alleged misconduct

The PAC demonstrates that Plaintiffs were "directly injured by" Defendants' fraudulent misrepresentations concerning the pricing and fees associated with their single call products. *Bridge*, 553 U.S. at 656. It shows that consumers paid the inflated single call charges directly to Defendants, without contracting governments acting as an intermediary (or being involved at all: contracting governments made *no* payments to Defendants). *See* PAC ¶¶ 66-68, 195, 200. It shows that the economic injury to consumers and any economic injury to a contracting government would move in opposition; for example, a reduction in single call price that would *eliminate* the economic injury to the consumer could, contradictorily, *increase* the economic injury to the contracting government by lowering site commission payments. *Id.* ¶¶ 70, 198-99. And it shows that Plaintiffs are the only parties with standing under RICO to recover the overcharges they paid for single calls.

*Id.* ¶¶ 200-01. The PAC shows that "no more immediate victim is better situated to sue" than Plaintiffs, *Bridge*, 553 U.S. at 658, and thus it sufficiently pleads causation.

Faced with these additional allegations, Defendants make a brand new argument: that contracting governments were the "direct victims" of the alleged scheme because they were fraudulently induced into contracts with Defendants. Opp. 13. Yet Defendants point to *no damages* that contracting governments—or anyone else—would have suffered at the time of this fraudulent contracting, nor do they cite *any authority* that would permit the recovery of damages based on the mere signing of a contract.

Nor can Defendants articulate why this harm would be "more direct" than the harm alleged by Plaintiffs. Indeed, the alleged facts here are nearly identical to *Bridge*: a defendant misled a third party who served as a gatekeeper to the intended victim, who was then directly financially harmed. In *Bridge*, as here, a government (Cook County, Illinois) was fraudulently induced by defendants into contracting (selling its tax liens) with those defendants, which in turn injured the plaintiffs, who also sought to buy those same tax liens. The Supreme Court held that the plaintiffs' "alleged injury—the loss of valuable liens—[was] the direct result of [defendants'] fraud." *Bridge*, 553 U.S. at 658. The Supreme Court explained that plaintiffs' injury "was a foreseeable and natural consequence of [defendants'] scheme to obtain more liens for themselves" by contracting with and buying those liens from Cook County. *Id.* Here, too, Plaintiffs' payment of inflated prices for single calls was a "foreseeable and natural consequence of" Defendants' misrepresentations about single call prices to contracting governments.

### 2. The PAC Plausibly Alleges That, but for Defendants' Misrepresentations, Prices for Single Calls Would Have Been Lower

With concrete new allegations, the PAC addresses the Court's concern about speculative injury. The PAC provides sworn declarations from former Securus and GTL executives—one of

whom also negotiated ICS contracts for a contracting government. *See* Decl. of Brian Gunter, ECF No. 103-3 ("Gunter Decl."); Decl. of Ron Meadows, ECF No. 103-4 ("Meadows Decl."). Based on their extensive experience in the market, both witnesses declare that, absent Defendants' misrepresentations to contracting governments, Plaintiffs would have paid lower prices to Defendants for single calls. *See* Gunter Decl. ¶¶ 16-20; Meadows Decl. ¶¶ 7-10. Both witnesses similarly attest that contracting governments consistently expressed concerns over the high price of single calls and, in turn, that Securus and GTL responded by making misrepresentations in order to persuade these concerned governments to include single calls in their ICS contracts. *Id.*

Defendants dismiss the two declarants as "only two former employees of Defendants" who "cannot plausibly predict what a majority of contracting governments 'would have done.'" Opp. 14. Yet the former Securus executive, Brian Gunter, had years of experience as Securus' Director of Sales and "personally negotiated ICS contracts with *hundreds* of local governments around the country." Gunter Decl. ¶ 6 (emphasis added). Mr. Gunter "supervised and managed approximately 650 accounts . . . with county and other local governments . . . in 44 states." *Id.* ¶¶ 4-5. And the former GTL executive, Ron Meadows, had nearly 25 years of experience as a former Deputy Sheriff and Director of Information Services. In that role, he personally negotiated ICS contracts with Securus. Meadows Decl. ¶¶ 2-3. Following his government service, Mr. Meadows worked for nearly five years as a "Payment Services Product Manager" at GTL and gained insight into GTL's nationwide approach to negotiating single calls products with contracting governments from his "conversations with government officials, Securus employees and GTL employees," including GTL's CEO Brian Oliver and President Jeff Haidinger. *Id.* ¶¶ 4-8, 15-16.

The PAC also reflects statements from multiple other contracting government officials, as well as C-suite executives from another ICS provider. These include statements from *five* different

officials with contracting governments around the country, all of whom describe contracting governments' priority on keeping ICS prices low for consumers. *See* PAC ¶¶ 187-91. The CEO and President of another ICS provider have also related that contracting governments would have insisted on lower ICS call prices had they learned that those prices substantially exceeded the actual cost. *See* PAC ¶¶ 186. Defendants ignore these allegations entirely.

Finally, the PAC includes a host of exemplar statutes and regulations requiring that state and local governments enter into ICS contracts that charge consumers the lowest price possible. *See* PAC ¶¶ 51-52. These include laws from 12 different state and local governments spanning the continental United States. These new allegations show that contracting governments across the country are *required* to protect their consumers from excessive ICS charges.

Taken together with Plaintiffs' existing allegations, the PAC's new allegations plausibly plead that, but for Defendants' misrepresentations, enough contracting governments would have demanded lower prices for single calls so as to force Securus and GTL to reduce those prices. Securus and GTL generally imposed uniform nationwide prices for their single call products. Plaintiffs plausibly allege that pushback from enough contracting governments on these nationwide prices would have caused Securus and GTL to reduce their pricing nationally. PAC ¶ 193. These allegations are not speculative; rather, they are specific and concrete and plausibly plead causation for Plaintiffs' RICO claims.[3]

---

[3] As Plaintiffs related in their opening brief, *see* Br. 10-11, Defendants' reliance on *Rojas v. Delta Airlines, Inc.*, 425 F. Supp. 3d 524 (D. Md. 2019) is unpersuasive. First, the cited commentary by the *Rojas* court was *dicta*. It followed the court's central grounds for dismissal that "[a]s a preliminary matter," plaintiffs' allegations did not meet the requisite standard of particularity and also failed to adequately plead that the eight airline defendants operated as a RICO enterprise. *Id.* at 540-41. Second, the facts before the *Rojas* court are readily distinguishable. The plaintiffs in that case presented only "attenuated" assumptions. *Id.* at 542. Through the provision of detailed and specific declarations, statutes, and regulations, Plaintiffs here have done far more. As such, *Rojas* is inapposite.

## II. IF THE COURT DENIES LEAVE TO AMEND, IT SHOULD ALLOW AN IMMEDIATE APPEAL

Defendants also oppose Plaintiffs' request that, should the Court deny leave to amend, it either (i) enter a partial final judgment under Rule 54(b) with respect to the RICO claims or (ii) certify an interlocutory appeal under 28 U.S.C. § 1292(b). Yet Defendants concede that an immediate appeal "would not delay this case materially" and that separately litigating Plaintiffs' antitrust and RICO claims would contravene the interests of judicial economy and prejudice the parties. Opp. 20. These concessions, combined with Defendants' general failure to address the relevant legal standard, strongly favor permitting an immediate appeal.

### A. Partial Final Judgment on the RICO Claim Would Be Warranted

Defendants argue that partial final judgment is unwarranted solely because (i) "the parties on appeal would remain contestants below" and (ii) "Plaintiffs' dismissed RICO claims and surviving Sherman Act claim seek the same relief: trebled overcharge damages on calls made during the proposed class period." Opp. 17. Defendants are wrong for several reasons.

First, Plaintiffs' RICO claims begin on January 1, 2010, while their antitrust claims run only from January 1, 2013. Accordingly, following the dismissal of Plaintiffs' RICO claims, numerous class members who purchased single calls solely between 2010 and 2012 no longer have *any* live claims before this Court. This also means that any RICO damages for this period are necessarily nonduplicative of the antitrust damages sought for the later period. As Defendants acknowledge, this is a "dispositive" reason for entering a Rule 54(b) judgment. Opp. 17.

Second, Defendants illogically leap from the availability of "trebled" damages under both RICO and antitrust law to claim that "if Plaintiffs were to prevail on their Sherman Act claim, they would be awarded the same damages they would be awarded on their RICO claims." Opp. 17. But the fact that both X and Y can be multiplied by 3 does not make X and Y the same. Here, Plaintiffs'

RICO and Sherman Act claims seek different relief because they involve different time periods, different sets of defendants and class members, and potentially different overcharge measures.

Third, Defendants fail even to acknowledge (much less distinguish) the multiple decisions cited in Plaintiffs' opening brief showing that courts regularly enter Rule 54(b) judgments—*even when the same parties would have live claims in the trial court and on appeal*. *See* Br. 12-16. These courts recognize that allowing an immediate appeal of a Rule 12(b)(6) dismissal can prevent the highly inefficient outcome of the parties litigating the remaining claims to judgment and then having to litigate the dismissed claims afresh if they are reinstated on appeal. *See id.*

Finally, Defendants address only the first of the five controlling *Braswell* factors, each of which favor an immediate appeal. Opp. 15. As Plaintiffs explain in their opening brief, there is little risk that appellate review might be mooted by future developments in this Court (Factor 2), or that the appeals court would have to decide the same issues more than once even if there were subsequent appeals (Factor 3). *See* Br. 16. Nor is there any claim or counterclaim here that could result in a set-off (Factor 4). With respect to the final factor, rather than rebut Plaintiffs' arguments, Defendants *concede* the efficiencies gained by litigating the antitrust and RICO claims together. Defendants acknowledge that allowing the antitrust claim alone to "proceed to discovery" could cause the parties to "spend years, millions of dollars in attorney time and expenses, and considerable Court resources (including on motion practice, class certification, and trial), only to have to litigate the RICO claims from scratch if they are reinstated." Opp. 20 (quoting Br. 15).[4]

---

[4] Citing an out-of-circuit district court opinion, Defendants argue that the Court should not consider the likelihood that the RICO claim would be reinstated. Opp. 16 (citing *TADCO Constr. Grp. Corp. v. Dormitory Auth. of N.Y.*, No. 08-cv-73, 2012 WL 3011735, at *7 (E.D.N.Y. July 23, 2012)). But, if true, this further *supports* entering judgment under Rule 54(b). Because the *Braswell* factors uniformly favor an appeal, the Court need not "speculate as to Plaintiffs' likelihood of success." *Seed Co. Ltd. v. Westerman*, No. 08-cv-355, 2019 WL 3222412, at *6

## B.  Alternatively, Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) Would Be Warranted

Defendants also argue that an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is inappropriate. Defendants claim that the Court's dismissal of the RICO claims does not implicate a "controlling question of law" because such a question *must* be "a narrow question of pure law whose resolution *will be completely dispositive* of the litigation." Opp. 18 (quoting *Hall v. Greystar Mgmt. Servs., L.P.*, 193 F. Supp. 3d 522, 525 (D. Md. 2016)).

Defendants misstate the applicable legal standard. As Defendants' own authorities reflect, Section 1292(b) requires only that resolution of the legal question "*may materially advance* the ultimate termination of the litigation"—not that it be "completely dispositive of the litigation." *Hall*, 193 F. Supp. 3d at 525 (quoting 28 U.S.C. § 1292(b)) (emphasis added); *see also LaFleur v. Dollar Tree Stores, Inc.*, No. 12-cv-363, 2014 WL 2121721, at *2 (E.D. Va. May 20, 2014) (acknowledging that "an issue need not be dispositive in order to be controlling"). In using the "will be completely dispositive" language, *Hall* spoke only of a hypothetical "kind of question best adapted to discretionary interlocutory review." *Hall*, 193 F. Supp. 3d at 525 (quoting *Fannin v. CSX Transp., Inc.*, No. 88-8120, 1989 WL 42583, at *5 (4th Cir. 1989)).

Defendants also assert that whether "Plaintiffs have sufficiently alleged proximate causation under RICO is not a narrow question of pure law." Opp. 18. Defendants' support for this proposition is a decision holding that a pure question of law does not include "whether the district properly applied settled law to the facts or evidence of a particular case." *Clark Constr. Grp., Inc. v. Allglass Sys., Inc.*, No. 02-cv-1590, 2005 WL 736606, at *2 (D. Md. Mar. 30, 2005). But this decision concerned a ruling on *summary judgment*, not a motion to dismiss. *Id.* at *2-3. Thus, the

---

(D.D.C. July 17, 2019) (quoting *Steinle v. City & Cnty. of San Francisco*, No. 16-2859, 2017 WL 2021360, at *4 n.3 (N.D. Cal. May 12, 2017)).

parties there sought review of disputed factual issues, not legal questions, making an interlocutory appeal inappropriate. *See, e.g.*, *id.* ("Defendants plainly seek a review of whether any of the material facts the court found as undisputed were, in fact, disputed.").

That is not the case here. Resolving whether Plaintiffs' allegations (which must be taken as true at the pleading stage) state a claim under RICO would not require "having to delve beyond the surface of the record in order to determine the facts." *Id.* at \*3 (quoting *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004)). It would merely require determining whether the correct legal standards (i.e., "a pure question of law") were applied to Plaintiffs' RICO allegations.

Defendants also claim there is no "substantial ground for difference of opinion" on the legal questions on which Plaintiffs seek interlocutory appeal, because the Court's dismissal of the RICO claims "involved a straightforward application of settled law." Opp. 19. But as noted above, *see supra* I.B, the Court's ruling appears to be in tension with Supreme Court precedent that RICO claims may be premised on misrepresentations to third parties where those misrepresentations harmed both those third parties and the plaintiffs. Thus, a "substantial ground for difference of opinion" exists, making interlocutory appeal appropriate.

## <u>CONCLUSION</u>

For the reasons stated in Plaintiffs' briefs, Plaintiffs respectfully request that the Court allow Plaintiffs' proposed amendment of their Complaint. Should the Court deny leave to amend, Plaintiffs request entry of a partial final judgment as to Plaintiffs' RICO claims or, alternatively, certification of an interlocutory appeal.

Dated: December 16, 2021

Respectfully submitted,

*/s/ Matthew K. Handley*
Matthew K. Handley (D. Md. Bar # 18636)
Rachel E. Nadas (*pro hac vice*)
Stephen Pearson (*pro hac vice*)
HANDLEY FARAH & ANDERSON PLLC
200 Massachusetts Ave NW, Seventh Floor
Washington, DC 20001
Telephone: (202) 559-2433
mhandley@hfajustice.com
rnadas@hfajustice.com

George F. Farah (*pro hac vice*)
Rebecca P. Chang (*pro hac vice*)
HANDLEY FARAH & ANDERSON PLLC
33 Irving Place
New York, NY 10003
Telephone: (212) 477-8090
gfarah@hfajustice.com
rchang@hfajustice.com

William H. Anderson (*pro hac vice*)
HANDLEY FARAH & ANDERSON PLLC
4730 Table Mesa Drive, Suite G-200
Boulder, CO 80305
Telephone: (202) 559-2433
wanderson@hfajustice.com

Benjamin D. Brown (*pro hac vice*)
Brent W. Johnson (*pro hac vice*)
Robert A. Braun (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave., Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
bbrown@cohenmilstein.com
bjohnson@cohenmilstein.com
rbraun@cohenmilstein.com

Christopher J. Bateman (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
cbateman@cohenmilstein.com

Janet Herold (*pro hac vice* forthcoming)
Benjamin D. Elga (*pro hac vice*)
JUSTICE CATALYST LAW, INC.
123 William Street, 16th Floor
New York, NY 10038
Telephone: (518) 732-6703
jherold@justicecatalyst.org
belga@justicecatalyst.org

Daniel Marshall (*pro hac vice*)
HUMAN RIGHTS DEFENSE CENTER
P.O. Box 1151
Lake Worth, FL 33460
Telephone: (561) 360-2523
dmarshall@hrdc-law.org

Hannah E.M. Lieberman (D. Md. Bar #05456)
WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS AND URBAN AFFAIRS
700 14th St. NW, Ste 400
Washington, DC 20005
Telephone: (202) 319-1040
Hannah_Lieberman@washlaw.org

**CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2021, Plaintiffs' Reply in Support of Their Motion to Amend or for Immediate Appeal was served via the Court's CM/ECF system on all counsel of record in accordance with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Maryland.


Dated:    December 16, 2021                              */s/ Matthew K. Handley*
                                                        Matthew K. Handley