## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ASHLEY ALBERT, *et al.*, )<br><br>Plaintiffs, )<br><br>v. )<br><br>GLOBAL TEL*LINK CORP., *et al.*, )<br><br>Defendants. ) | Civil Action No. 20-cv-01936-LKG<br><br>Dated:  October 2, 2024 |

## MEMORANDUM OPINION AND ORDER ON PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE SETTLEMENT

### I. INTRODUCTION

The Plaintiffs have filed a consent motion for preliminary approval of the settlement between Plaintiffs and Defendant 3Cinteractive Corp. ("3Ci"), to settle certain claims against 3Ci on behalf of themselves and a potential class of similarly situated individuals.  ECF No. 251. The proposed settlement agreement and release (the "Settlement Agreement") will resolve the Plaintiffs' claims alleging that 3Ci participated in a conspiracy to inflate prices for PayNow, Text2Collect, Collect2Card and Collect2Phone calls (collectively, "Single Calls"), for the purpose and effect of allowing 3Ci and the other Defendants in this case to charge supra-competitive prices for Single Calls, in violation of the Sherman Act, 15 U.S.C. § 1, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964.  *Id.*  The Court held a hearing on this motion on October 1, 2024.  ECF No. 294.  For the reasons that follow, the Court: (1) **GRANTS** the Plaintiffs' motion for preliminary approval of the settlement agreement; (2) **CONDITIONALLY CERTIFIES** the proposed Settlement Class; and (3) **PRELIMINARILY APPROVES** the Settlement Agreement.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A. Factual Background

<u>The Plaintiffs' Claims</u>

This putative class action matter involves claims that the Defendants in this matter participated in a conspiracy to inflate prices for Single Calls, for the purpose and effect of allowing the Defendants to charge supra-competitive prices for Single Calls, in violation of the Sherman Act and RICO. *See generally* ECF No. 205. The Plaintiffs, Ashley Albert, Ashley Baxter, Lupei Zhu, and Rhonda Howard, are individuals who allegedly paid inflated prices for the Single Calls sold by the Defendants. ECF No. 205 at 14. Relevant to the pending motion, the Plaintiffs allege that 3Ci assisted the other Defendants in implementing the alleged price-fixing scheme. *Id.* at 6.

The Plaintiffs commenced this putative class action matter on June 29, 2020. ECF No. 1. Thereafter, the parties filed several dispositive motions, litigated certain issues on interlocutory appeal, and engaged in discovery. ECF No. 251-1 at 8. On or about May 28, 2024, the Plaintiffs and 3Ci tentatively agreed to a settlement of the Plaintiffs' claims against 3Ci. *Id.*

<u>The Settlement Agreement</u>

The proposed Settlement would establish a "Settlement Class" defined as follows:

> All persons and entities that, during the period January 1, 2010, until the date of preliminary approval of this Settlement Agreement, paid: (i) a flat fee of $14.99 through Securus's PayNow program; (ii) a flat fee of $14.99 through GTL's Collect2Card program; (iii) a flat fee of $9.99 through the Securus's Text2Connect program; and/or (iv) a flat fee of $9.99 through GTL's Collect2Phone program.

ECF No. 251-1 at 8; ECF No. 251-4 at 20.

> The following persons and entities are excluded from the Settlement Class:

> Defendants and their employees, subsidiaries, affiliates, predecessors, officers, directors, legal representatives, heirs, and successors; co-conspirators; federal state, and local governmental entities; and the judge, judicial officers, and associated court staff assigned to this case and their immediate family members.

---

[1] The facts recited herein are taken from the amended complaint, the Plaintiff's motion for preliminary approval of the settlement, and the memorandum of law and exhibits in support thereof. ECF Nos. 205, 251, 251-1, 251-3, 251-4. Unless otherwise stated, the facts recited herein are undisputed.

ECF No. 251-1 at 8-9; ECF No. 251-4 at 21.

The key provisions of the Settlement Agreement are summarized below:

First, Section II(A)(1) of the Settlement Agreement sets forth the terms of the settlement payment and provides that, "in consideration for the release of the Released Claims and the dismissal with prejudice of the Action, within fourteen business days of the later of (i) the Court's grant of Preliminary Approval or (ii) the date on which 3Ci is provided with wiring information for the Escrow Account, 3Ci shall pay or cause to be paid $4,300,000.00 (four million, three hundred thousand U.S. dollars) into the Settlement Fund."  ECF No. 251-4 at 9.  Section II(A)(1)(b) further provides that "the payment . . . shall constitute the total Settlement Amount and 3Ci shall have no other payment obligations to the Settlement Class or owe any further amount under this Settlement Agreement, and the obligations described in Section II(A)(2) shall continue so long as this Settlement Agreement remains in effect . . . [, and] [e]ach Class Member shall look solely to the Net Settlement Amount for settlement and satisfaction . . . of all Released Claims[.]" *Id.*

Second, Section II(A)(2) of the Settlement Agreement provides that 3Ci will provide cooperation to the Plaintiffs as the Plaintiffs continue with the prosecution of their claims against the remaining Defendants, including providing relevant data, documents, information and witnesses concerning the allegations in the case, as defined in the Settlement Agreement.  *Id.* at 10-13.

Third, Section II(B)(2) of the Settlement Agreement contains a release provision, which provides that:

> Upon the Date of Final Judgment, the Releasing Parties shall completely release, acquit, and forever discharge the 3Ci Released Parties from any and all existing or potential, known or unknown, claims, demands, actions, suits, causes of action, upon any theory of law or equity, whether class, individual, parens patriae, or otherwise in nature (whether or not any member of the Settlement Class has objected to the Settlement Agreement or makes a claim upon or participates in the Settlement Fund, whether directly, representatively, derivatively or in any other capacity) that the Releasing Parties ever had, now has, or hereafter can, shall, or may ever have, on account of, or in any way arising out of, any and all known and unknown, foreseen and unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, causes of action, injuries, losses, civil or other penalties, restitution, disgorgement, damages, and the consequences

thereof that have been asserted, or could have been asserted, under federal or state law arising from or in connection with any act or omission during the Settlement Class Period relating to or referred to in the Action, arising from the factual predicate of the Action, or any conduct that was challenged, raised or alleged in the Action, including any restraint of trade or pattern of racketeering that had the purpose and effect of inflating prices for Single Calls (collectively, the "Released Claims").

*Id.* at 13.  The release provision further provides that:

During the period after the expiration of the deadline for submitting an opt-out notice, as determined by the Court, and prior to Final Judgment, all Releasing Parties who have not submitted a valid request to be excluded from the Settlement Class shall be preliminarily enjoined and barred from asserting any Released Claims against the 3Ci Released Parties. The release of the Released Claims will become effective as to all Releasing Parties upon Final Judgment. Upon Final Judgment, the Releasing Parties further agree that they will not file any other suit against the 3Ci Released Parties arising out of or relating to the Released Claims.

*Id.* at 14.

Fourth, Section II(B)(3) of the Settlement Agreement contains a waiver provision, which provides that:

[T]he Releasing Parties hereby expressly waive and release, solely with respect to the Released Claims, upon the Date of Final Judgment, any and all provisions, rights, and benefits conferred by Section 1542 of the California Civil Code . . . and Section 20-7-11 of the South Dakota Codified Laws . . . or by any law, regulation or rule of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code or Section 20-7-11 of the South Dakota Codified Laws."  Each Releasing Party may hereafter discover facts other than or different from those which he, she, they, or it knows or believes to be true with respect to the claims which are released pursuant to the provisions of Section II(B)(2), but each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon the Date of Final Judgment, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that the Releasing Parties have agreed to release pursuant to Section II(B)(2), whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

*Id.* at 14-15.

Fifth, Section II(C) of the Settlement Agreement sets forth the process for claims administration.  *Id.* at 15.  In this regard, the Settlement Agreement provides that, pursuant to the

Court's preliminary approval Order, and subject to Court approval, "Interim Co-Lead Counsel shall engage a qualified Claims Administrator" and that the Claims Administrator "shall effectuate the notice plan approved by the Court in the Preliminary Approval Order, shall administer and calculate the claims, and shall oversee distribution of the Net Settlement Fund in accordance with the Plan of Distribution . . .[and] also shall assist in the development of the Plan of Distribution and the resolution of any disputes regarding the Plan of Distribution." *Id*. at 15.

Sixth, Section II(D) of the Settlement Agreement sets forth the terms of the Settlement Fund's administration, and provides that "the Settlement Fund shall be administered pursuant to the provisions of [the] Settlement Agreement and subject to the Court's continuing supervision and control, until the funds in the Settlement Fund are fully distributed[.]" *Id*. at 16. In this regard, Section II(D)(2) further provides that the Settlement Fund "shall be established within an Escrow Account and administered by an Escrow Agent at a bank designated by Interim Co-Lead Counsel" and that "[a]ll funds held in the Escrow Account shall . . . remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement and/or further order(s) of the Court. *Id*. In addition, Section II(D)(9) sets forth the terms for the Plan of Distribution and provides that:

> After the Date of Final Approval, the Net Settlement Fund shall be disbursed in accordance with a plan of distribution to be approved by the Court. The Class Members shall look solely to the Net Settlement Fund for settlement and satisfaction of any and all Released Claims from Released Parties. The timing of a motion to approve a plan of distribution of the Net Settlement Fund created by this Settlement Agreement shall be in the discretion of Interim Co-Lead Counsel, and may be combined with a plan to distribute proceeds from other settlements in this Action.

*Id.* at 19-20.

Seventh, Section II(F)(5) of the Settlement Agreement sets forth the plan for notice to the proposed Settlement Class members, and provides that:

> The Settlement Class Notice shall provide for a right of exclusion, as set forth in Section II(F)(4). The Settlement Class Notice shall also provide for a right to object to the proposed Settlement. Individual notice of the Settlement to all Settlement Class Members who can be identified through reasonable effort shall be mailed, emailed and/or sent via text message to the Settlement Class in conformance with a notice plan to be approved by the Court. Interim Co-Lead Counsel will undertake reasonable efforts to notify potential Settlement Class Members of the settlement, including

> publication notice through traditional, digital, and/or social media sources likely to reach Settlement Class Members. The timing of a motion to approve notice to the Settlement Class of this Settlement Agreement ("Notice Motion") shall be in the discretion of Interim Co-Lead Counsel, and may be combined with notice of other settlements in this Action. The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice.

*Id.* at 22. "[T]he costs of providing Settlement Class Notice to Settlement Class Members shall be paid by the Escrow Agent from the Settlement Fund[.]" *Id.*

Lastly, Section II(F)(9) of the Settlement Agreement sets forth the terms for payment of Class Counsel Fees and Expenses and Other Costs, and provides, in relevant part, that:

> 3Ci shall have no responsibility for any other costs, including Interim Co-Lead Counsel's attorneys' fees, costs, and expenses or the fees, costs, or expenses of any Plaintiff's or Class Member's respective attorneys, experts, advisors, or representatives, provided, however, that with respect to the Action, including this Settlement Agreement, 3Ci shall bear its own costs and attorneys' fees.

> Subject to Interim Co-Lead Counsel's sole discretion as to whether to apply and the timing of such an application, Interim Co-Lead Counsel may apply to the Court for an attorney fee award, reimbursement of expenses and costs, and/or service awards for class representatives, to be paid from the proceeds of the Settlement Fund. 3Ci shall have no responsibility, financial obligation, or liability for any such fees, costs, expenses, or service awards.

*Id.* at 24-25.[2]

### B. Relevant Procedural History

The Plaintiffs commenced this putative class action matter on June 29, 2020. ECF No. 1. On July 11, 2024, the Plaintiffs filed a motion for preliminary approval of the settlement, a memorandum in support thereof, and documents related thereto. ECF Nos. 251, 251-1, 251-2, 251-3, and 251-4. The Court held a hearing on the Plaintiffs' motion on October 1, 2024.

---

[2] On September 24, 2020, the Court appointed the law firms of Handley Farah & Anderson PLLC and Cohen Milstein Sellers & Toll PLLC to serve as interim co-lead class counsel in this matter. ECF No. 58. The firm of Handley Farah & Anderson PLLC spearheaded the investigation into the Defendants' alleged actions which led to the filing of this litigation and its attorneys have considerable experience litigating complex class actions alleging violations of the antitrust and RICO laws. ECF No. 48 at 10. The firm of Cohen Milstein Sellers & Toll PLLC has particular skills and expertise in enforcing federal and state antitrust laws, with thirty lawyers dedicated to antitrust practice specifically and possesses the resources and the expertise to litigate large antitrust class successfully through trial and appeal. *Id.* at 14.

III.        STANDARDS FOR DECISION

A. Preliminary Approval Of Class Action Settlement

The decision of "[w]hether to preliminarily approve a class action settlement lies within the sound discretion of the district court." *Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 482 (D.D.C. 2019). In this regard, courts have recognized that "there is an overriding public interest in favor of settlement, particularly in class action suits." *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). But, when the parties are seeking class certification and settlement at the same time, the proposed settlement agreement requires closer judicial scrutiny. *Stephens*, 329 F.R.D. at 482 (internal quotations and citations omitted); *see also* Manual for Complex Litigation (Fourth) § 21.612 (2004).

In this regard, the Court's analysis of whether a proposed Rule 23 class action settlement is fair and reasonable involves a two-step process. First, the Court determines whether the settlement is "within the range of possible approval," such that there is "probable cause to notify the class members of the proposed settlement." *Starr v. Credible Behav. Health, Inc.*, 2021 WL 2141542, at *5 (D. Md. May 26, 2021) (quoting *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 855 F. Supp. 825, 827 (E.D.N.C. 1994)). "At this initial stage, the Court must make 'a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms' and 'direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.'" *Id.* (quoting Manual for Complex Litigation § 21.632).

To determine whether it can give preliminary approval to the Settlement Agreement, the Court looks to the factors in Fed. R. Civ. P. 23(e)(2). This Rule provides that the Court may find that a settlement is fair, reasonable, and adequate after considering whether:

> (A)    the class representatives and class counsel have adequately represented the class;
>
> (B)    the proposal was negotiated at arm's length;
>
> (C)    the relief provided for the class is adequate, taking into account:
>
> > (i)    the costs, risks, and delay of trial and appeal;
> >
> > (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

>     (iii)   the terms of any proposed award of attorney's fees,
>             including timing of payment; and
>
>     (iv)    any agreement required to be identified under Rule
>             23(e)(3); and
>
> (D)     the proposal treats class members equitably relative to each
>         other.

Fed. R. Civ. P. 23(e)(2)(A)-(D). And so, "[p]reliminary approval should be granted when a proposed settlement is 'within the range of possible approval,' subject to further consideration after a final fairness hearing at which interested parties have had an opportunity to object." *Shaver v. Gills Eldersburg, Inc.*, 2016 WL 1625835, at *2 (D. Md. Apr. 25, 2016) (quoting *Benway v. Res. Real Est. Servs., LLC*, 2011 WL 1045597, at *4 (D. Md. Mar. 16, 2011)). If the Court preliminarily approves the proposed settlement, the second step is a "fairness hearing to determine whether the settlement is 'fair, reasonable, and adequate' for all class members and thus should receive final approval." *Starr*, 2021 WL 2141542, at *5 (quoting § 21.634); *see Grice v. PNC Mortg. Corp. of Am.*, 1998 WL 350581, at *2 (D. Md. May 21, 1998).

**B. Class Certification**

To conditionally certify a class, the Court must confirm that this putative class action comports with Rules 23(a) and (b) of the Federal Rules of Civil Procedure. *See Starr*, 2021 WL 2141542, at *3 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–20 (1997)); *see also Shaver*, 2016 WL 1625835, at *3 ("Where a class-wide settlement is presented for approval prior to class certification, there must also be a preliminary determination that the proposed settlement class satisfies the prerequisites set forth in Federal Rule of Civil Procedure 23(a) and at least one of the subsections of Rule 23(b)."). Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative
> parties on behalf of all members only if:
>
>     (i)     the class is so numerous that joinder of all members is
>             impracticable;
>     (ii)    there are questions of law or fact common to the class;
>     (iii)   the claims or defenses of the representative parties are typical of
>             the claims or defenses of the class; and
>     (iv)    the representative parties will fairly and adequately protect the
>             interests of the class.

Fed. R. Civ. P. 23(a).

To meet the numerosity requirement under Rule 23(a), there must be a showing that the proposed class is so numerous that "joinder of all members is impractical." *Starr*, 2021 WL

2141542, at *3 (quoting Fed. R. Civ. P. 23(a)). In this regard, the United States Court of Appeals for the Fourth Circuit has held that a class with more than 30 members generally satisfies this requirement. *See id.* (citing *Williams v. Henderson*, 129 F. App'x 806, 811 (4th Cir. 2005)).

The commonality requirement is satisfied when the prospective class members share the same central facts and applicable law. *Id.* (citing *Cuthie v. Fleet Rsrv. Ass'n*, 743 F. Supp. 2d 486, 499 (D. Md. 2010)). In addition, to meet the typicality requirement, "[t]he claims need not be identical, but the claims or defenses must have arisen from the same course of conduct and must share the same legal theory." *Id.* (citing *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 498 (D. Md. 1998)).

In addition, a class action is appropriate only when both class representatives and class counsel adequately protect the interests of the class. *Bell v. Brockett*, 922 F.3d 502, 510 (4th Cir. 2019). As to the representation of class counsel, "[t]he adequacy-of-representation requirement centers on: (1) class counsel's competency and willingness to prosecute the action and (2) whether any conflict of interest exists between the named parties and the class they represent." *Id.* (citing *Robinson v. Fountainhead Title Grp. Corp.*, 252 F.R.D. 275, 288 (D. Md. 2008)). And so, "[r]epresentation is adequate if the [Plaintiff's] attorneys are qualified and able to prosecute the action on behalf of the class." *Id.* (citing *Cuthie*, 743 F.2d at 499).

> Lastly, Federal Rule of Civil Procedure 23(b)(3) provides that:
>
> A class action may be maintained if Rule 23(a) is satisfied and if: . . . . (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3). "Where the purported class members were subject to the same harm resulting from the defendant's conduct and the 'qualitatively overarching issue' in the case is the defendant's liability, courts generally find the predominance requirement to be satisfied." *Starr*, 2021 WL 2141542, at *4 (citing *Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010)). The Court must also consider:

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)     the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D); *see also Shaver*, 2016 WL 1625835, at *3.

## III.     ANALYSIS

In their motion for preliminary approval of the settlement, Plaintiffs request that the Court: (1) grant preliminary approval of the Settlement Agreement; (2) certify the proposed Settlement Class; (3) appoint the named Plaintiffs in this litigation— Ashley Albert, Ashley Baxter, Lupei Zhu, and Rhonda Howard —as representatives of the Settlement Class; (4) appoint the Interim Co-Lead Counsel in this matter as Settlement Class Counsel, (5) direct Settlement Class Counsel to submit a motion to approve a plan of notice of the Settlement Agreement " . . . after 3Ci has produced identifying data and billing and payment information regarding Settlement Class members and prior to Plaintiffs moving for final approval of the Settlement Agreement[;]" (6) stay all proceedings in this litigation as to 3Ci, except those proceedings provided for, or required by, the Settlement Agreement; and (7) defer notice to the Settlement Class members until a later date, pending Plaintiffs' receipt of information to facilitate providing them notice through discovery and/or additional settlement agreements.  ECF No. 251 at 1-2. Defendant 3Ci consents to the Plaintiffs' motion.  *See* ECF No. 251-4 at 21-22.

For the reasons discussed below, the proposed Settlement Class and the proposed Settlement Agreement comport with the requirements of Rule 23.  The Plaintiffs have also shown that the Settlement Agreement is fair, adequate and reasonable.  In addition, the Plaintiffs have shown that deferred notice to the Settlement Class members is warranted for a limited period of time.  And so, the Court: (1) GRANTS the Plaintiffs' motion for preliminary approval of the settlement agreement; (2) CONDITIONALLY CERTIFIES the proposed Settlement Class; and (3) PRELIMINARILY APPROVES the Settlement Agreement.

### A. The Court Conditionally Certifies The Proposed Settlement Class

As an initial matter, the Court first determines whether it should preliminarily certify the proposed settlement class of Plaintiffs in this putative class action matter.  For the reasons stated below, the Court CONDITIONALLY CERTIFIES the Rule 23 Settlement Class.

In determining whether to conditionally certify a class, the Court must confirm that this action comports with Rule 23(a) and (b) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 23(a)-(b); *see Starr*, 2021 WL 2141542, at *3 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S.

591, 619–20 (1997)); *see also Shaver*, 2016 WL 1625835, at *3 ("Where a class-wide settlement is presented for approval prior to class certification, there must also be a preliminary determination that the proposed settlement class satisfies the prerequisites set forth in Federal Rule of Civil Procedure 23(a) and at least one of the subsections of Rule 23(b)."). In this regard, Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
>> (1) the class is so numerous that joinder of all members is impracticable;
>> (2) there are questions of law or fact common to the class;
>> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

The Court is satisfied that the requirements of Rule 23(a) have been met in this case. As an initial matter, the numerosity requirement under Rule 23(a) is satisfied here, because several thousand individuals likely fall within the definition of the Settlement Class. The Settlement Class definition in this case includes "all persons and entities" that paid certain prices for Single Calls, between January 1, 2010 and the date of preliminary approval of the Settlement Agreement. ECF No. 251-1 at 8; ECF No. 251-4 at 20. As the Plaintiffs explain, the exact number of members in the proposed Settlement Class is currently unknown, but is anticipated to be quite large. ECF No. 251-1 at 19. Given this, the Plaintiffs anticipate that several thousand individuals will fall within the Settlement Class based upon the millions of Single Calls sold by Defendants during the relevant period. *Id.* And so, joinder of all members of this class is impractical in this matter. *See Starr*, 2021 WL 2141542, at *3 (quoting Fed. R. Civ. P. 23(a)).

The commonality requirement is also satisfied here, because the Plaintiffs have shown that the resolution of an issue of fact or law "is central to the validity of each" proposed Settlement Class member's claim. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Within the antitrust context, courts have generally held that an alleged conspiracy or monopoly is a common issue that will satisfy Rule 23(a)(2), because the singular question of whether defendants conspired to harm plaintiffs will likely prevail. *See Wilson v. Eagle Nat'l Bank*, 2023 WL 2478933, at *11 (D. Md. Mar. 13, 2023) (internal citation omitted). Courts have also held

that a RICO allegation "will often contain common issues because . . . a RICO allegation is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members." *Beltran v. InterExchange, Inc.*, 2018 WL 1948687, at *4 (D. Colo. Feb. 2, 2018) (quoting *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 487 (3d Cir. 2015)).

In this case, the Plaintiffs persuasively argue that commonality is satisfied, because a key allegation in the complaint is that the Defendants illegally conspired to fix and charge inflated prices for Single Calls.  And so, proof of this alleged conspiracy will be common to all members of the proposed Settlement Class.  ECF No. 251-1 at 19; *see generally* ECF No. 205.  The Plaintiffs also persuasively argue that there are other questions of law and fact that are common to the proposed Settlement Class in this case, including the identity of the participants in the alleged conspiracy, the duration of the alleged conspiracy, and the measure of damages caused by the alleged conspiracy.  *Id.*

The claims of the representative Plaintiffs are also typical of the claims of the proposed Settlement Class members.  And so, the typicality requirement is also satisfied.  *Starr*, 2021 WL 2141542, at *3 (citing *Peoples*, 179 F.R.D. at 498) ("[T]o meet the typicality requirement, the . . . claims need not be identical, but the claims or defenses must have arisen from the same course of conduct and must share the same legal theory.")  Notably, this Court has held that, within the context of an antitrust case, typicality is "established by plaintiffs and all class members alleging the same antitrust violations by defendants." *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 338-39 (D. Md. 2012), *amended*, 962 F. Supp. 2d 840 (D. Md. 2013); *see also D&M Farms v. Birdsong Corp.*, 2020 WL 7074140 at *3 (E.D. Va. July 28, 2017) (internal quotation omitted). Courts have also found that in RICO class actions, " . . . the typicality requirement is satisfied if the claims of the class representative and the class arise from the same scheme by the defendant to defraud the class members." *Marrero-Rolon v. Puerto Rico Elec. Power Auth.*, 2018 WL 4740202, at *4 (D.P.R. Sept. 30, 2018) (quoting *Torres-Ronda v. Joint Underwriting Ass'n*, 2012 WL 4681063, at *5 (D.P.R. Oct. 2, 2012); *see also* 5 Moore's Federal Practice - Civil § 23.24[8][d]).  Here, the named Plaintiffs' claims and the proposed Settlement Class members' claims will arise out of the same course of conduct—paying a price for Single Calls that was allegedly inflated by the Defendants through the alleged conspiracy.  Given this, the Plaintiffs have shown that their claims arise out of the same legal theory as those of the proposed Settlement Class members.

The Court is also satisfied that the named Plaintiffs and their counsel will adequately represent the proposed Settlement Class members.  A class action is appropriate only when both class representatives and class counsel adequately protect the interests of the class.  *Bell v. Brockett*, 922 F.3d 502, 510 (4th Cir. 2019).  Given this, "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if . . . the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4). Here, the named Plaintiffs will adequately represent the class, because their interests in obtaining the maximum recovery and cooperation from 3Ci are aligned with the interests of the proposed Settlement Class members.  *See In re Corrugated Container Antitrust Litig*., 643 F.2d 195, 208 (5th Cir. 1981) ("[S]o long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes." (citation omitted)).

The representation of Settlement Class counsel is also adequate here.  "[T]he adequacy-of-representation requirement centers on: (1) class counsel's competency and willingness to prosecute the action and (2) whether any conflict of interest exists between the named parties and the class they represent."  *Id.* (citing *Robinson*, 252 F.R.D. at 288).  And so, "[r]epresentation is adequate if the [Plaintiff's] attorneys are qualified and able to prosecute the action on behalf of the class."  *Id.*  The Plaintiffs seek appointment of the lawyers and law firms that have already been appointed as Interim Co-Lead Class Counsel by the Court in this matter to serve as Settlement Class Counsel.  *See* ECF No. 58.  These two law firms and their attorneys have extensive experience in antitrust and class action litigation and they have litigated this matter for more than four years and have been "solely responsible for coordinating and organizing the litigation on behalf of the proposed class."  *Id.*  And so, the adequacy requirement is also satisfied in this case.

As a final matter, the Court is also satisfied that the requirements of Rule 23(b) have been met in this case.  Once Rule 23(a) is satisfied, a class action may be maintained if the Court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b).  "Where the purported class members were subject to the same harm resulting from the defendant's conduct and the 'qualitatively overarching issue' in the case is the defendant's liability, courts generally

find the predominance requirement to be satisfied." *Starr*, 2021 WL 2141542, at *4 (citing *Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010)). Relevant here, the Fourth Circuit has observed that, in RICO cases, courts generally find the predominance standard of Rule 23(b)(3) to be satisfied if "common questions predominate over individual questions as to liability," even if proof of individualized inquiries into damages are necessary. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 428 (4th Cir. 2003).

As discussed above, the Plaintiffs have shown that common issues predominate in this case. The key issues in this case are: (1) whether the Defendants committed antitrust or RICO violations; (2) the impact of the Defendants' alleged unlawful activity and whether that activity caused cognizable injury; and (3) whether damages are measurable. *See* ECF No. 251-1 at 22. These issues are common to all members of the proposed Settlement Class. And so, as Plaintiffs persuasively argue, proving these common issues regarding the Defendants' liability for the alleged unlawful activity, and the impact of that unlawful activity, will involve evidence common to the proposed Settlement Class members. *Id.*

The Plaintiffs have also shown that a class action litigation is superior to other available methods for adjudicating this controversy. The relevant factors to determine the superiority of a class action under Rule 23(b)(3) include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D). Plaintiffs persuasively argue here that a class action is a superior way to litigate this dispute, because: (1) no class member has demonstrated any interest in litigating individually; (2) the claims in this case are not being litigated anywhere else; and (3) it would be inefficient for both the Court and the parties, and prohibitively expensive for the class members, to engage in multiple individual actions. ECF No. 251-1 at 26. And so, the factors outlined in Fed. R. Civ. P 23(b)(3)(A)-(C) also weigh in favor of proceeding as a class action in this case.

For all these reasons, the Court CONDITIONALLY CERTIFIES the Class, pursuant to Rule 23.

**B. Preliminary Approval Of Settlement**

Having decided to conditionally certify the Settlement Class, the Court next considers whether to grant preliminary approval of the Settlement Agreement.  For the reasons set forth below, the Court PRELIMINARILY APPROVES the Settlement Agreement.

### 1. The Proposed Settlement Agreement Is Fair

First, the Court is satisfied that the Settlement Agreement is fair.  In determining whether to preliminarily approve the Settlement Agreement, the Court considers the factors set forth in Fed. R. Civ. P. 23(e)(2), which provide that the Court may find that the Settlement is fair, reasonable and adequate after considering whether:

(A)     the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

> (i)     the costs, risks, and delay of trial and appeal;
>
> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)      the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).  In determining whether the Settlement Agreement is fair, the Fourth Circuit has instructed that the Court must consider the following factors: (1) the posture of the case at the time the settlement was proposed; (2) the extent of discovery that has been conducted; (3) the circumstances surrounding negotiations; and (4) the experience of counsel in the area of class action litigation.  *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991).

These factors weigh in favor of approving the Settlement Agreement at issue for several reasons.  First, with regards to the current posture of this case, the Plaintiffs commenced this putative class action matter in June 2020, more than four years ago.  ECF No. 1.  Since then, the parties have litigated this matter, including engaging in the briefing of dispositive motions, litigating an interlocutory appeal, and conducting discovery, before reaching the proposed settlement.  *See* ECF No. 251-3 at ¶ 12.  Given this, the parties have had a sufficient opportunity to understand the issues and the evidence in this case, and to reach a well-informed settlement.

With regards to the extent of discovery in this matter, the litigation history of this case also makes clear that the parties have conducted formal discovery, including serving and responding to multiple document requests and interrogatories, and the parties have also engaged in informal discovery, prior to reaching a settlement. *See id.* at ¶¶ 11, 13. The Settlement Agreement also appears to be the result of an arm's-length negotiation between experienced attorneys who are familiar with class action litigation and the specific legal and factual issues in this case. *See id.* at ¶¶ 9-10. Notably, the parties' settlement negotiations have spanned multiple months, with the parties exchanging multiple proposals and drafts prior to executing the Settlement Agreement. *Id.* Both parties have also been represented by competent and experienced counsel in this matter. *See id.* And so, for each of these reasons, the Court is satisfied that the Settlement Agreement is fair.

## 2. The Proposed Settlement Agreement Is Adequate

The Court is also satisfied that the proposed Settlement Agreement is adequate. In determining whether a settlement is adequate, the Court considers: (1) the relative strength of the Plaintiff's case on the merits; (2) the existence of any difficulties of proof or strong defenses the Plaintiff is likely to encounter if the case goes to trial; (3) the anticipated duration and expense of additional litigation; (4) the solvency of the Defendant and the likelihood of recovery on a litigated judgment: and (5) the degree of opposition to the Settlement. *Jiffy Lube*, 927 F.2d at 159. In this regard, the Fourth Circuit has held that the most important factor in weighing the adequacy of a proposed settlement is the strength of the plaintiff's claims on the merits, combined with any difficulties the plaintiff would likely encounter if he chose to litigate on his own. *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015).

In this case, the Plaintiffs maintain that the antitrust and RICO claims asserted in this case are meritorious and that they would prevail on these claims if this matter proceeded to trial. *See* ECF No. 251-1 at 16. But the Plaintiffs also acknowledge the risks associated with continuing this litigation. *Id.*; ECF No. 251-3 at ¶ 14. Notably, the Plaintiffs acknowledge the difficulties that they would encounter in continuing to litigate their claims against 3Ci, which would require that they conduct additional discovery and brief additional dispositive motions. ECF No. 251-1 at 16. The Plaintiffs would also need to prepare a liability case against 3Ci for trial. *Id.* The Plaintiffs have balanced these risks with the possibility of obtaining the cooperation of 3Ci in this

16

matter and receiving $4,300,000, which will be paid by 3Ci into a Settlement Fund.  ECF No.
251-3 at ¶ 7; ECF No. 251-1 at 17; *see e.g., In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654
(D.D.C. 1979) (approving settlement in light of settling defendant's "assistance in the case
against [a non-settling defendant]"); *In re IPO Sec. Litig.*, 226 F.R.D. 186, 198–199 (S.D.N.Y.
2005) (recognizing the value of cooperating defendants in complex class action litigation).  Both
parties acknowledge that this additional litigation could be quite expensive for Plaintiffs and for
3Ci.  *Id.*  And so, the Court is satisfied that the Settlement Agreement is adequate and equitable
to the Settlement Class Members.[3]

      Because the Settlement Agreement reflects a reasonable compromise, that takes into
account the litigation risks for both parties, the proposed Settlement Agreement is adequate.

### C. Deferred Notice Is Appropriate

      As a final matter, the Court will conditionally approve the Plaintiffs' request to defer
notice of the Settlement Agreement to the Settlement Class members, pending their identification
of the proposed Settlement Class members.  Fed. R. Civ. P. 23(c)(2)(B) requires that notice of a
settlement be "the best notice that is practicable under the circumstances, including individual
notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P.
23(c)(2)(B).  But, some courts have found that "postpon[ing] . . . formal notice under Rule
23(c)(2) [may be appropriate,] if there is a reason for the delay and it would not prejudice those
class members who are not before the court."  *McKinney v. U.S. Postal Serv.*, 292 F.R.D. 62, 68
(D.D.C. 2013) (quoting 7AA Charles A. Wright et al., Fed. Prac. And P. § 1788, at 530 (3d ed.
2005)).

      In their motion for preliminary approval of the settlement, the Plaintiffs request that the
Court allow them to defer notice of the Settlement Agreement to the proposed Settlement
Class members for two reasons: (1) the Plaintiffs need to obtain the names and/or contact
information of the proposed Settlement Class members and (2) combining notice of the

---

[3] The method for distributing relief to the Class Members is also fair and reasonable given the nature and
circumstances of this action.  The Settlement Agreement provides that, upon the Court's grant of
preliminary approval, 3Ci will pay $4,300,000 into the Settlement Fund, and after Court's final approval,
the Net Settlement Fund shall be disbursed in accordance with a plan of distribution to be approved by the
Court.  ECF No. 251-4 at 9, 19.  The Court observes, however, that Plaintiffs do not currently know the
exact number of Settlement Class members.  And so, the Court's evaluation of the adequacy and fairness
of the Settlement Agreement will be further informed by that information when it is obtained by the
Plaintiffs.

Settlement Agreement with notice of any future settlements with other Defendants will create efficiencies and cost savings for the Settlement Class members.  ECF No. 251-1 at 28; *see* ECF No. 251-3 at ¶ 15; *see also* ECF No. 289.  In light of these concerns, the anticipated size of the Settlement Class, and the complex nature of this litigation, the Court will approve the Plaintiffs' request to defer notice of the Settlement Agreement at this time.  The Plaintiffs shall continue their efforts to identify the names and/or contact information of the Settlement Class members and FILE a status report, stating whether notice should continue to be deferred, on or before January 6, 2025.

## IV. CONCLUSION

For the foregoing reasons, the Court:

1. **GRANTS** Plaintiffs' motion for preliminary approval of the settlement (ECF No. 251);

2. **PRELIMINARILY FINDS** that the proposed settlement, as set forth in a written Settlement Agreement between Plaintiffs and 3Ci, has been negotiated at arm's length and is fair, reasonable and adequate;

3. **PRELIMINARILY CERTIFIES** the following Settlement Class for the purpose of the Settlement Agreement:

   > All persons and entities that, during the period January 1, 2010 until the date of preliminary approval of this Settlement Agreement, paid: (i) a flat fee of $14.99 through Securus's PayNow program; (ii) a flat fee of $14.99 through GTL's Collect2Card program; (iii) a flat fee of $9.99 through the Securus's Text2Connect program; and/or (iv) a flat fee of $9.99 through GTL's Collect2Phone program;

4. **PRELIMINARILY HOLDS** that the Settlement Class excludes:

   > Defendants and their employees, subsidiaries, affiliates, predecessors, officers, directors, legal representatives, heirs, and successors; co-conspirators; federal, state, and local governmental entities; and the judge, judicial officers, and associated court staff assigned to this case and their immediate family members;

5. **PRELIMINARILY FINDS** that the Settlement Class fully complies with the requirements of Federal Rule of Civil Procedure 23;

6. **PRELIMINARILY FINDS** that (1) the Settlement Class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the Settlement Class; (3) the claims of the named Plaintiffs are typical of the claims of the Settlement Class; and (4) the named Plaintiffs will fairly and adequately protect the interests of the Settlement Class;

7. **PRELIMINARILY FINDS** that questions of law or fact common to the Settlement Class predominate over any questions that may affect only individual members, and that a class action is superior to all other available methods for fairly and efficiently adjudicating the controversy;

8. **PRELIMINARILY APPROVES** the Settlement Agreement;

9. **APPOINTS** the following named Plaintiffs as representatives of the Settlement Class: Ashley Albert, Ashley Baxter, Lupei Zhu, and Rhonda Howard;

10. **APPOINTS** the following law firms as Settlement Class Counsel: Handley Farah & Anderson PLLC and Cohen Milstein Sellers & Toll, PLLC;

11. **ORDERS** that Settlement Class Counsel shall submit a motion to approve a plan of notice of the Settlement Agreement at an appropriate time, *i.e.*, after the other Defendants have produced contact information regarding Settlement Class members and/or after the Plaintiffs have reached any additional settlement with other the Defendants, and prior to the Plaintiffs moving for final approval of the Settlement Agreement;

12. **APPROVES** the establishment of an escrow account, as set forth in the Settlement Agreement, as a "Qualified Settlement Fund" pursuant to Treas. Reg. § 1.468B-1, **RETAINS** continuing jurisdiction over any issues regarding the formation or administration of the escrow account, and **AUTHORIZES** Settlement Class Counsel and their designees to expend funds from the escrow account to pay taxes, tax expenses, and notice and administration costs, as set forth in the Settlement Agreement; and

13. **STAYS** further proceedings as to Defendant 3Ci and the 3Ci Released Parties (as that term is defined in the Settlement Agreement), except as necessary to effectuate the Settlement Agreement or otherwise agreed to by the settling parties.

It is further **ORDERED** that:

14.  The terms used in this Order that are defined in the Settlement Agreement are, unless otherwise defined herein, used as defined in the Settlement Agreement;

15. After notice to the Settlement Class has ultimately been approved and disseminated, the Court shall hold a hearing (the "Fairness Hearing"), regarding the Settlement Agreement and any additional settlement agreements Plaintiffs may reach with other Defendants in the future, to determine whether they are fair, reasonable, and adequate and whether they should be finally approved;

16. After Settlement Class Notice has been disseminated, members of the Settlement Class who wish to exclude themselves from the Settlement Class will be required to submit an appropriate and timely request for exclusion, and members of the Settlement Class who wish to object to the Settlement Agreement will be required to submit an appropriate and timely written statement of the grounds for objection. Members of the Settlement Class who wish to appear in person to object to the Settlement Agreements may do so at the Fairness Hearing pursuant to directions by the Court; and

17. The Plaintiffs shall **FILE** a status report, stating whether notice should continue to be deferred, on or before **January 6, 2025**.



**IT IS SO ORDERED.**


s/Lydia Kay Griggsby
 LYDIA KAY GRIGGSBY
United States District Judge