IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ASHLEY ALBERT, *et al.*, ) | |
| Plaintiffs, ) | Civil Action No. 20-cv-01936-LKG |
| v. ) | Dated: April 1, 2025 |
| GLOBAL TEL*LINK CORP., *et al.*, ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER ON**
**THE DEFENDANTS' MOTION TO COMPEL ARBITRATION**

**I.      INTRODUCTION**

This putative class action matter involves an alleged price-fixing and kickback scheme to inflate the prices of single call collect calls, placed by inmates from correctional facilities located within the United States, by, among others, Defendant Securus Technologies, LLC ("Securus"), in violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1-38, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68. *See generally* ECF No. 205. Defendants Securus, Platinum Equity Capital Partners IV, L.P. and Platinum Equity LLC (collectively, "Defendant Platinum"), and Abry Partners, LLC and Abry Partners VII, L.P. (collectively, "Defendant Abry"), have moved to compel Plaintiffs Ashley Gray, also known as Ashley Albert, and Ashley Layna, formerly known as Ashley Baxter, to pursue their claims against the Defendants in individual arbitration and to stay this matter pending such arbitration. ECF No. 261 and 261-2. The motion is fully briefed. ECF Nos. 261, 261-1, 263, 315, 372, 373, 374, 381, 395 and 402. No hearing is necessary to resolve the motion. *See* Local Rule 105.6. For the reasons that follow, the Court: (1) **GRANTS-in-PART** and **DENIES-in-PART** the Defendants' motion to compel arbitration (ECF No. 261); and (2) **STAYS** Plaintiffs Ashley Albert and Ashley Baxter' claims against Defendant Securus, pending the completion of the parties' arbitration proceedings.

II.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

   A. **Factual Background**[1]

In this putative class action the Plaintiffs allege that Defendants Securus, Platinum and Abry, and certain other defendants, engaged in a price-fixing and kickback scheme to inflate the prices of single call collect calls, placed by inmates from correctional facilities located within the United States. *See generally* ECF No. 205. As a result of this alleged scheme, the Plaintiffs maintain that the Defendants committed a *per se* violation of the Sherman Antitrust Act, by conspiring to: (1) eliminate competition between themselves; (2) fix and charge inflated prices; and (3) pay low site commission fees for their single call products. *See* ECF No. 205 at ¶¶ 251-56 (Count I). The Plaintiffs also allege that the Defendants violated the Racketeer Influenced and Corrupt Organizations Act, by engaging in a widespread pattern of fraudulent misrepresentations and omissions to the contracting governments and to consumers, for the purposes of charging excessive rates and paying low site commission fees for single call products. *See id.* at Counts II-IX.

Relevant to the pending motion to compel, the Plaintiffs allege that Defendant Platinum Fund IV is Securus's alter ego. *Id.* at ¶¶ 198-203. The Plaintiffs also allege that Defendant Platinum participated in the alleged conspiracy by concealing the fraud scheme. *Id.*

The Plaintiffs commenced this matter on June 29, 2020. ECF No. 1. In the original complaint, the Plaintiffs who are the subject of the Defendants' motion to compel are identified as "Ashley Albert" and "Ashley Baxter," and they are associated with the following addresses: "PO Box 52, Nashua, NH 03061" and "40 SW Wasco St. #3, Cascade Locks, OR 97014," respectively. *Id.* at 1 (caption) and ¶¶ 26-27. These Plaintiffs allege in the complaint that they have used Securus's PayNow products. *Id.* at ¶¶ 26-27. In this regard, Securus's Chief Technology Officer, Ligit Mathew, represents to the Court in his declaration that Securus searched its records for any customer account information matching the names and address information provided in the complaint, after the complaint was served. ECF No. 261-3 at ¶ 25 (Mathew Decl.). But Mr. Mathew also represents that Securus did not locate any accounts that matched "Ashley Albert" and "Ashley Baxter," with the addresses provided in the complaint. *Id.*

---

[1] The facts recited in this memorandum opinion and order are taken from the amended complaint, the Defendants' motion to compel arbitration and stay case, and the exhibits attached thereto. ECF Nos. 205, 261 and 261-2. Unless otherwise stated, the facts recited herein are undisputed.

2

at ¶¶ 27-28.

In this regard, Mr. Mathew states that Securus's records did not reflect an account for an Ashley Albert with a New Hampshire address, or a New Hampshire-based phone number. *Id.* at ¶ 27. Mr. Mathew also represents that Securus's records did reflect an account for "Ashley Baxter" in Oregon, with an Oregon phone number, but the relevant account listed a different address than the address provided for Ashley Baxter in the complaint. *Id.* ¶ 28. And so, Securus represents to the Court that it did not identify an account, or the acceptance of an Arbitration Agreement, for Ashley Gray, also known as Ashley Albert, or Ashley Layna, formerly known as Ashley Baxter, when this case was filed. ECF No. 261-2 at 4-5.

It is also undisputed that the Plaintiffs did not provide all of their current and former last names to the Defendants until the Plaintiffs provided responses to discovery requests in June and July of 2024. *See* ECF Nos. 261-2 at 6-7; 261-13; 261-14; 261-17; 261-20; 263-2; 263-3 and 263-4. In this regard, Securus represents that the discovery provided by the Plaintiffs in 2024 shows that Plaintiff Ashley Albert had at least two Securus online accounts that were not associated with the name Ashley Albert, and a bank account associated with the name Ashley Gray. ECF Nos. 261-1 at 6; 261-20 and 263-3.

Securus also represents that the discovery produced by the Plaintiffs related to Plaintiff Ashley Baxter, on July 19, 2024, similarly confirms that she had online accounts with Securus. ECF No. 263-4. In this regard, Plaintiff Ashley Baxter provided an Interrogatory verification using the name "Ashley Layna," on June 21, 2024. ECF No. 261-20. Plaintiff Ashley Baxter also provided supplemental interrogatory responses listing phone numbers with a Washington area code. ECF No. 263-2. And so, Securus contends that it was not until the date that the Plaintiffs responded to their discovery request, in June and July of 2024, that Securus was able to determine that the Plaintiffs had agreed to mandatory individual arbitration of their claims, pursuant to an arbitration agreement. ECF No. 261-1 at 6-7; *see also* ECF No. 261-10.

## The Securus Terms And Conditions

Relevant to the pending motion, on or about February 28, 2020, Securus updated its configurations to require users signing into their Securus online accounts to accept certain terms and conditions (the "Terms and Conditions"), including an arbitration agreement (the "Arbitration Agreement"), before proceeding, as shown below:

3



ECF No. 261-3 at ¶¶ 12-15.  And so, thereafter, a user would be presented with a pop-up box asking the user to review and accept the Terms and Conditions upon signing in to a Securus online account, and the user could not access her account, or any product-specific accounts *via* the website, without first accepting the Terms and Conditions.  *Id.* at ¶¶ 12-15.

Securus also represents that on February 28, 2020, it updated the Securus Mobile App (the "Mobile App") so that, when a user downloaded the new versions of the Mobile App, the user would need to accept the then-existing Terms and Conditions.  *Id.* at ¶ 14.  Securus further represents that it began requiring all Mobile App users to use the newest version of the Mobile App before they could log into their Mobile App account on May 15, 2020.  *Id.* at ¶ 18.  And so, any user who had not yet accepted the Terms and Conditions would need to accept the Terms and Conditions, before using the Mobile App, as shown below:

<u>iOS Users</u>                                              <u>Android Users</u>

   

*Id.* at ¶ 15.

The Securus Terms and Conditions provide that: "THESE TERMS INCLUDE A DISPUTE RESOLUTION PROVISION REQUIRING INDIVIDUAL ARBITRATION AND YOU MUST READ THESE TERMS CAREFULLY."  ECF No. 261-8 at 1.  The Terms and

4

Conditions also provide that: "By clicking accept, you confirm that you have read and understand these general terms and conditions, including the ARBITRATION AGREEMENT . . . and that you accept, and agree to comply with, adhere to and be bound by, said terms and conditions . . . ." *Id.*

Securus's records show that Plaintiff Ashley Baxter accepted the Terms and Conditions for her Securus online account, sometime between February 28, 2020, and June 1, 2020. ECF No. 261-3 at ¶ 20. Securus also maintains that Plaintiff Ashley Baxter accepted Securus's Terms and Conditions version 1.0.0 on October 22, 2020, and Securus's Terms and Conditions version 1.0.1 on November 19, 2020. *Id.* at ¶¶ 22-23. Securus also contends that Plaintiff Ashley Albert, also known as Ashley Gray, accepted the Terms and Conditions, on November 29, 2020. *Id.* at ¶ 24.

## The Arbitration Agreement

Section 12 of the Securus Terms and Conditions, which is entitled "DISPUTE RESOLUTION & ARBITRATION AGREEMENT ('Arbitration Agreement')," provides that:

> [B]oth you and Securus agree that any legal dispute between you and Securus concerning or arising in any way from . . . (2) any purchase from the website, (3) any Securus product or service . . . shall be resolved through binding individual arbitration . . . .

ECF No. 261-8 at 6. This Arbitration Agreement also defines a "dispute" and provides that:

> The term "dispute" means any dispute action, claim, or other controversy between you and Securus, whether in contract, warranty, tort, statute, regulation, ordinance, or any other legal or equitable basis. "Dispute" will be given the broadest possible meaning allowable under law.

*Id.*

The Arbitration Agreement also contains a delegation clause that provides that, with the exception of the class-action waiver, "[o]nly the arbitrator is authorized to make determinations as to the scope, validity, or enforceability of this Agreement, including whether any dispute falls within its scope." *Id.* at 7. The Arbitration Agreement further provides that any arbitration "shall be conducted by the American Arbitration Association ('AAA') pursuant to its Consumer Arbitration Rules ('AAA Rules')." *Id.* at 6.

In addition, the Arbitration Agreement contains a class-action waiver, which provides that:

5

> All arbitrations shall proceed on an individual basis. The arbitrator is empowered to resolve the dispute with the same remedies available in court, however, any relief must be individualized to you and shall not affect any other customer. You and Securus also agree that each may bring claims against the other in arbitration only in your or their respective individual capacities and in so doing you and Securus hereby waive the right to a trial by jury, to assert or participate in any class action lawsuit . . . .

*Id.* at 6-7.

> The Parties agree[d] that any issue concerning the validity of the class action/representative waiver above must be decided by a court, and an arbitrator does not have authority to consider the validity of the waiver.

*Id*. at 7.  The Arbitration Agreement also provides that:

> You understand and agree that you are waiving your right to sue or to go to court to assert or defend your rights.  However, either you or Securus may bring any individual claim in small claims court consistent with the jurisdictional and dollar limits that may apply, as long as it is brought and maintained as an individual claim.

*Id.* at 6.

Lastly, the Arbitration Agreement contains a governing law provision which provides that:

> This arbitration Agreement shall be governed by, and interpreted, construed, and enforced in accordance with, the United States Federal Arbitration Act and other applicable federal law. To the extent that state law applies to any aspect of this Arbitration Agreement, or to any disputes and claims that are covered by the Arbitration Agreement, the law of the state . . . of your residence, as determined by your mailing address on file[] with Securus, will govern. Securus will provide notice of any material changes to this Arbitration Agreement.

ECF No. 261-8 at 7.

### B.  Procedural History

On August 23, 2024, the Defendants filed a motion to compel arbitration and stay case, and a memorandum in support thereof.  ECF No. 261 and 261-2.  On January 31, 2025, the Plaintiffs filed a response in opposition to the Defendants' motion.  ECF No. 372.

On February 14, 2025, the Defendants filed a reply brief.  ECF No. 381.  On March 10,

6

2025, the Plaintiffs filed a sur-reply. ECF No. 395. On March 14, 2025, Securus filed a sur-reply in support of its motion to compel. ECF No. 402.

The Defendants' motion having been fully briefed, the Court resolves the pending motion.

### III.    LEGAL STANDARDS

#### A. Motions To Compel Arbitration

This Court treats motions to compel arbitration as motions for summary judgment, pursuant to Fed. R. Civ. P. 56. *See, e.g.*, *Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 454 (D. Md. 2020) (holding that "[t]reating a motion to compel as a motion for summary judgment is proper where the formation or validity of the arbitration agreement is in dispute, . . . or where documents outside the pleadings must be considered") (internal citations and quotations omitted); *Owen v. CBRE, Inc.*, No. 16-773, 2016 WL 7033973, at *2 (D. Md. Dec. 2, 2016) (citations omitted). Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In this regard, a fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* When considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in that party's favor. *Id.* at 255 (citation omitted). But, the Court may rely only on facts supported in the record. *See Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). And so, the Court may not rely upon unsubstantiated assertions that are provided in the pleadings. *See id.*

#### B. The FAA

The FAA "requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 178 (2019) (citations omitted). Under Section 2 of the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. And so, the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505-06 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

7

*Corp.*, 460 U.S. 1, 24 (1983)). The FAA permits a party to an arbitration agreement to seek to compel another party to submit claims to arbitration. *See* 9 U.S.C. § 4. In this regard, Section 4 of the FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . [a] district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* The statute also provides that, when presented with such a petition, a court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* But, if the "making of the arbitration agreement" is at issue, "the court shall proceed summarily to the trial thereof." *Id.*

In addition, Section 3 of the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. And so, this Court has recognized that the FAA provides two parallel methods for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration under Section 3, and an affirmative order to engage in arbitration under Section 4. *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (quoting *Chorley Enters. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015)); *Brito v. Major Energy Elec. Servs., LLC*, 526 F. Supp. 3d. 95, 106 (D. Md. 2021).

The United States Court of Appeals for the Fourth Circuit has also held that the question of "[w]hether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (citation omitted) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 92 (4th Cir. 1996)). And so, "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010); *see also Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (stating that

8

Section 4 of the FAA "requires that the district court—rather than the arbitrator—decide whether the parties have formed an agreement to arbitrate"). In this regard, "[a] district court . . . has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)). And so, the Court "engage[s] in a limited review to ensure that the dispute is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Murray v. United Food & Commercial Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002) (citation omitted).[2]

When determining whether there is a valid arbitration agreement, courts in the Fourth Circuit "apply ordinary state-law principles governing the formation of contracts" and "the federal substantive law of arbitrability." *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) (citations omitted).

In addition, the Fourth Circuit has recognized that "parties to an arbitration agreement can 'agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Gibbs v. Haynes Invests., LLC*, 967 F.3d 332, 337 (4th Cir. 2020) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). And so, "when an agreement 'clearly and unmistakably' delegates the threshold issue of arbitrability to the arbitrator, a court must enforce that delegation clause and send that question to arbitration." *Id.* (quoting *Rent-A-Center*, 561 U.S. at 67). But, "if the claimant specifically attacks the validity of the delegation clause itself, a court may consider that clause's enforceability." *Id.* (citing *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 455 (4th Cir. 2017)). And so, in assessing the enforceability of an arbitration agreement containing a delegation clause, the Court first must decide whether a plaintiff has lodged a challenge against the delegation clause. *Id.* at 338

---

[2] The Fourth Circuit has also held that "[a]ny uncertainty regarding the scope of arbitrable issues agreed to by the parties must be resolved in favor of arbitration." *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) (citations omitted); *see also Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) ("The 'heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.'" (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989))).

9

(citation omitted). If the Court concludes that a plaintiff "specifically challenged the enforceability of the delegation provision," the Court "then must decide whether the delegation provision is unenforceable 'upon such grounds as exist at law or in equity.'" *Id.* (quoting *Minnieland*, 867 F.3d at 455).

In this regard, the Fourth Circuit has held that "the FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.' This stay-of-litigation provision is mandatory." *Adkins*, 303 F.3d at 500 (quoting 9 U.S.C. § 3).[3] The Fourth Circuit has also determined that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001). And so, this Court has elected to dismiss a litigation if all claims are subject to arbitration on several occasions. *See, e.g.*, *Willcock v. My Goodness! Games, Inc.*, No. 16-4020, 2018 WL 3970474, at *4 (D. Md. Aug. 20, 2018); *Kabba v. Rent-A-Center*, No. 17-211, 2017 WL 1508829, at *2 (D. Md. Apr. 27, 2017), *aff'd*, 730 F. App'x 141 (4th Cir. 2018); *Phears v. LVNV Funding, LLC*, No. 20-2843, 2020 WL 7054806, at *3 (D. Md. Dec. 2, 2020).

Lastly, the question whether a nonsignatory to an arbitration agreement may compel a signatory to arbitrate claims is governed by state law. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009). The Fourth Circuit has held that "a nonsignatory to an arbitration clause may, in certain situations, compel a signatory to the clause to arbitrate the signatory's claims against the nonsignatory despite the fact that the signatory and nonsignatory lack an agreement to arbitrate." *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 373 (4th Cir. 2012). One such situation is when "the signatory is equitably estopped from arguing that a nonsignatory is not a party to the arbitration clause." *Id*. And so, the doctrine of equitable estoppel applies: (1) when the signatory's claims arise out of and relate directly to the written agreement, or (2) when the signatory raises allegations of substantially interdependent or concerted misconduct by

---

[3] The Fourth Circuit has explained that "application of the FAA requires demonstration of four elements: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (internal quotation marks omitted) (quoting *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 n.6 (4th Cir. 2012))

10

both the nonsignatory and one or more signatories to the contract. *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 849 (D. Md. 2013).

## IV.  ANALYSIS

The Defendants have moved to compel the Plaintiffs to arbitrate their claims in this matter, upon the grounds that the Plaintiffs have entered into a valid arbitration agreement that contains a delegation clause, which requires that the Plaintiffs arbitrate their claims. *See generally* ECF No. 261-2. The Defendants also argue that Defendants Platinum and Abry, who are not signatories to the Arbitration Agreement, can enforce this agreement and compel the Plaintiffs to arbitrate the claims brought against these Defendants. *Id.* at 22-25. And so, the Defendants request that the Court compel the Plaintiffs to arbitrate their claims and stay these proceedings, pending the completion of the parties' arbitration proceedings. *Id.* at 30.

The Plaintiffs counter that they should not be compelled to arbitrate their claims, because: (1) the Arbitration Agreement is not valid; (2) Securus has waived the right to compel arbitration; (3) the Arbitration Agreement does not apply to past purchases or existing litigation; (4) the Court should exercise its authority under Fed. R. Civ. P. 23 to refuse to enforce the Arbitration Agreement retroactively; (5) Defendant Platinum and Defendant Abry cannot invoke equitable estoppel to enforce the Arbitration Agreement; and (6) the Defendants fail to show good cause to stay these proceedings. ECF No. 372. And so, the Plaintiffs request that the Court deny the Defendants' motion to compel. *Id.* at 35.

For the reasons that follow, the Defendants have shown that the Plaintiffs and Securus entered into a valid Arbitration Agreement when the Plaintiffs agreed to certain Terms and Conditions for their Securus online accounts. The plain language of the Arbitration Agreement also makes clear that the Plaintiffs and Securus have agreed that any legal disputes between them, "concerning or arising in any way from" any purchase from the Securus website, or any Securus product or service, shall be resolved through binding individual arbitration. The Court also reads the delegation clause in the Arbitration Agreement to require the parties to arbitrate gateway issues regarding the enforceability and scope of the Arbitrations Agreement.

The evidentiary record before the Court also does not show that the Defendants waived the right to arbitrate the Plaintiffs' claims, or that the Plaintiffs opted out of the Arbitration Agreement before the commencement of this litigation. Lastly, the Defendants have not shown that Defendants Platinum and Abry can enforce the Arbitration Agreement and require the

11

Plaintiffs to arbitrate their claims against these Defendants. And so, the Court: (1) GRANTS-in-PART and DENIES-in-PART the Defendants' motion to compel arbitration (ECF No. 261); and (2) STAYS Plaintiffs Ashley Albert and Ashley Baxter's claims against Defendant Securus, pending the completion of the parties' arbitration proceedings.

### A. The Plaintiffs Have Entered Into A Valid Arbitration Agreement With Securus

As an initial matter, the Defendants have shown that the Plaintiffs must pursue their claims against Securus in this case in individual arbitration. It is well-established that the Defendants can compel the Plaintiffs to arbitrate their claims in this matter pursuant to the FAA, if they can show: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of the opposing party to arbitrate the dispute. *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (citation omitted). Where, as is the case here, an arbitration agreement contains a delegation clause, the Court only assesses the existence of an agreement to arbitrate and, if a valid agreement exists, the Court must either dismiss or stay the case to allow the arbitrator to determine whether the dispute falls within the scope of that provision. *See, e.g.*, *Gibbs v. Haynes Invs., LLC*, 967 F.3d 332, 336-37 (4th Cir. 2020).

The Defendants have met their burden to show that the Plaintiffs must arbitrate their claims against Securus for several reasons. First, the evidence before the Court shows that the Plaintiffs and Securus entered into a valid Arbitration Agreement. "The Fourth Circuit has held that the question of '[w]hether a party has agreed to arbitrate an issue is a matter of contract interpretation.'" *George v. Experian Info. Sols.*, No. 23-CV-02303-LKG, 2024 WL 3013146, at *5 (D. Md. June 14, 2024) (quoting *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011)). And so, the Court looks to the relevant state law—New Hampshire and Oregon—to determine whether parties have entered into a valid and enforceable agreement to arbitrate here. *See Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005); *see also Kramer v. Bally's Park Place, Inc.*, 535 A.2d 466, 467 (Md. 1988) ("[T]he law of the jurisdiction where the contract was made controls its validity and construction.").

In this case, the unrebutted evidence shows that the Plaintiffs and Securus entered into the Arbitration Agreement when the Plaintiffs signed up for their Securus online accounts. Specifically, the evidence before the Court shows that, when the Plaintiffs accessed their Securus

12

online accounts, they were presented with Securus's Terms and Conditions and were asked to review the Terms and Conditions. ECF No. 261-3 at ¶¶ 12-24. It is also undisputed that the Plaintiffs had to click the "accept" button, to accept the Terms and Conditions, to continue using their Securus online accounts. *Id.* at ¶¶ 11 and 14.

Securus also represents to the Court that the company's records show that Plaintiff Ashley Baxter accepted the Terms and Conditions on at least three separate occasions: (1) between February 28, 2020, and June 1, 2020; (2) on October 22, 2020; and (3) on November 19, 2020. *Id.* at ¶¶ 20-23; ECF Nos. 261-7, 261-8 and 263. Securus also represents that the company's records show that Plaintiff Ashley Albert accepted the Terms and Conditions on November 29, 2020. ECF No. 261-3 at ¶ 24; ECF No. 263-1.

It is also undisputed that Section 12 of the Securus Terms and Conditions, which is entitled "DISPUTE RESOLUTION & ARBITRATION AGREEMENT," contains an arbitration agreement. ECF No. 261-8 at 6. And so, these undisputed facts show that the Plaintiffs and Securus entered into valid arbitration agreement under New Hampshire and Oregon law, when the Plaintiffs accepted the Terms and Conditions. *See, e.g.*, *Daschbach v. Rocket Mortg., LLC*, No. 22-CV-346, 2023 WL 2599955, at *6 (D. N.H. Mar. 22, 2023) ("Courts routinely find clickwrap agreements enforceable."); *Beard v. PayPal, Inc.*, No. 09-1339, 2010 WL 654390, at *2 (D. Or. Feb. 19, 2010) ("[A]bsent a showing of fraud, failure to read an enforceable clickwrap agreement, as with any binding contract, will not excuse compliance with its terms." (citation omitted)).

The plain language of the Arbitration Agreement also shows that the parties agreed to arbitrate claims related to Securus's products and services. Notably, the Arbitration Agreement provides that:

> [B]oth you and Securus agree that any legal dispute between you and Securus concerning or arising in any way from . . . (2) any purchase from the website, (3) any Securus product or service . . . shall be resolved through binding individual arbitration . . . .

ECF No. 261-8 at 6. The Arbitration Agreement also defines a "dispute" and provides that:

> The term "dispute" means any dispute action, claim, or other controversy between you and Securus, whether in contract, warranty, tort, statute, regulation, ordinance, or any other legal or equitable basis. "Dispute" will be given the broadest possible meaning allowable under law.

13

*Id.* And so, the Court reads the plain language of the Arbitration Agreement to require that Securus and the Plaintiffs arbitrate any disputes or claims concerning, or arising from, Securus's products and services. *Id.*

The Court also observes that Plaintiffs' arguments to show that the Arbitration Agreement is not valid are not persuasive. In this regard, the Plaintiffs first argue that the Arbitration Agreement is invalid, because the agreement provides that Securus reserves the right to modify, or revoke, the Arbitration Agreement without notice. ECF No. 372 at 7-9. But a careful reading of the Arbitration Agreement shows that the agreement clearly states that Securus will provide notice of any material changes to the Arbitration Agreement. ECF No. 261-8 at 8. Given this, the Plaintiffs' argument that the Arbitration Agreement contain an illusory promise is unsubstantiated. *See e.g.*, *Larsen v. Citibank FSB*, 871 F.3d 1295, 1320-21 (11th Cir. 2017) (arbitration agreement requiring notice to consumers did not provide "unfettered, unlimited, or absolute" power to bank and thus was not illusory); *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 173-74 (5th Cir. 2004) (change-in-terms provision of the contract did not render the contract's obligations illusory; "[t]he fact that the company has the right to change the terms upon notice does not mean that the contract never bound it"); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 604 (3d Cir. 2002) (rejecting challenge that contract was illusory where it required notice and consent for all material changes).

The Plaintiffs next argue that the Arbitration Agreement is not valid, because the agreement has been superseded by the terms and conditions of Securus's PayNow single call product, which do not include an arbitration agreement. ECF No. 372 at 5-6. But, the evidence before the Court shows that the terms and conditions for PayNow single call related to another company, namely, 3Ci. ECF No. 381 at 4-5; ECF No. 381-1 at ¶ 30; ECF No. 395 at 2-4. Given this, the Plaintiffs have not shown that the terms and conditions for PayNow alter Securus's Terms and Conditions. And so, the Court is satisfied that the Plaintiffs and Securus have entered into a valid Arbitration.

### B. The Plaintiff's Have Not Shown Waiver Or That They Opted Out Of The Arbitration Agreement

The Plaintiffs have also not shown that they opted out of the Arbitration Agreement, or that Securus waived the right to enforce this agreement. ECF No. 372 at 9-10. The Plaintiffs argue that they opted out of the Arbitration Agreement, because they sent letters to Securus

14

indicating that they opt out of that agreement on January 8, 2025, and January 10, 2025, respectively. ECF No. 374-3 and 374-4. But, there is no dispute that these letters were sent many years after the Plaintiffs initiated this litigation in 2020, and well after the Plaintiffs began using their Securus online accounts. Given this, the Plaintiffs have not shown that they opted out of the Arbitration Agreement with regards to the claims asserted in this litigation.

The evidence before the Court also shows that Securus did not waive the right to arbitrate the Plaintiffs' claims. This Court has held that a party waives the right to arbitration if the party: (1) knew of an existing right to arbitrate and (2) acted inconsistently with that right. *Holloman v. Consumer Portfolio Servs.*, Inc., 2023 WL 4027036, at *9 (D. Md. June 15, 2023); *see also SZY Holdings, LLC v. Garcia*, No. 23-1305, 2024 WL 3983944, at *3 (4th Cir. Aug. 29, 2024) ("The relevant question . . . is whether the party requesting arbitration 'knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right.'" (quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022))). In this case, the Plaintiffs argue with some persuasion that Securus has acted inconsistently with the right to arbitrate the claims at issue here, because Securus engaged in this litigation for more than four years without seeking to enforce its right to arbitration. *See* ECF No. 372 at 15-19. But, the evidence before the Court also shows that Securus did not know of its right to arbitrate the claims of the Plaintiffs who are the subject of the pending motion, until the Defendants received the Plaintiffs' responses to certain discovery in June and July of 2024. *See* ECF No. 261-2 at 6 and 7; *see also* ECF Nos. 261-13; 261-14; 261-17; 261-20; 263-2; 263-3 and 263-4.

Notably, the evidence before the Court shows that the Plaintiffs' discovery responses revealed to the Defendants for the first time: (1) all of the current and former names of Plaintiffs Ashley Albert and Ashley Baxter; (2) that these Plaintiffs had Securus online accounts; (3) that these Plaintiffs had bank accounts associated with various surnames; and (4) that these Plaintiffs also had addresses in states other than the addresses provided in the complaint and amended complaint. ECF No. 261-2 at 6-7. Securus also explains that this newly disclosed information allowed the company to discover the Securus online accounts associated with these Plaintiffs and to confirm that the Plaintiffs had entered into the Arbitration Agreement. *See* ECF No. 261-2 at 6-9.

Securus also persuasively argues that it could not have discovered that the Plaintiffs had Securus online accounts earlier in this litigation, because the company did not know all of the

15

Plaintiffs' surnames and addresses. *See* ECF No. 381 at 14-19. In addition, the evidence shows that Securus promptly took steps to compel the Plaintiffs to arbitrate their claims, once the company became aware of the Arbitration Agreement. In fact, Securus filed a notice of intent to file a motion to compel arbitration on July 30, 2024, just one month after discovering the Arbitration Agreement. ECF No. 254. Given these facts, the Court is satisfied that Securus has not waived its right to arbitrate the Plaintiffs' claims. *Holloman*, 2023 WL 4027036, at *9 (D. Md. June 15, 2023).

### C. The Arbitration Agreement's Delegation Clause Delegates Arbitrability Issues

Having determined that the Arbitration Agreement between Securus and the Plaintiffs is valid and enforceable, the Court next considers the delegation clause contained in that agreement. The Arbitration Agreement's delegation clause provides that, except for the class-action waiver, "[o]nly the arbitrator is authorized to make determinations as to the scope, validity, or enforceability of this Agreement, including whether any dispute falls within its scope." ECF No. 261-8 at 7.

The Court reads the language in the delegation clause to broadly delegate to the arbitrator all issues regarding the scope and enforceability of the Arbitration Agreement. *See id.* Given this, the Plaintiffs' remaining arguments, including whether the Arbitration Agreement applies to past purchases, or to existing litigation, have been delegated to the arbitrator for resolution. *See generally* ECF No. 372.

### D. Defendants Platinum And Abry May Not Enforce The Arbitration Agreement

The Court next considers whether Defendants Platinum and Abry, who are not signatories to the Arbitration Agreement, may also enforce that agreement. The Supreme Court has held that the question of whether a nonsignatory to an arbitration agreement may compel a signatory to arbitrate claims is governed by state law. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009). The Fourth Circuit has also held that a nonsignatory to an arbitration clause may compel a signatory to the clause to arbitrate the signatory's claims against the nonsignatory, despite the fact that the signatory and nonsignatory lack an agreement to arbitrate, when "the signatory is equitably estopped from arguing that a nonsignatory is not a party to the arbitration clause." *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 373 (4th Cir. 2012). And so, the doctrine of equitable estoppel applies to the signatories' claims: (1) when the signatory's claims arise out of and relate directly to the written agreement, or (2) when the

16

signatory raises allegations of substantially interdependent or concerted misconduct by both the nonsignatory and one or more signatories to the contract. *In re Titanium Dioxide Antitrust Litigation*, 962 F.Supp.2d 840, 849 (D. Md. 2013). While a close question, the Defendants have not shown that Defendants Platinum and Abry can enforce the Arbitration Agreement for several reasons.

In this case, the Defendants correctly observe that the amended complaint contains factual allegations to show substantially interdependent or concerted misconduct by and among Securus and Defendants Platinum and Abry. ECF No. 261-2 at 22-25. But the Court agrees with the Plaintiffs that this fact is not dispositive of the issue of whether they are equitably estopped from arguing that Defendants Platinum and Abry may not enforce the Arbitration Agreement, because the applicable state law governs this issue.

Notably, Oregon and New Hampshire state law require that the Defendants show, among other things, a false representation and that they were induced to act on that false representation, to successfully invoke the doctrine of equitable estoppel. ECF No. 372 at 28; *see also Day v. Advanced M & D Sales, Inc.*, 86 P.3d 678, 682 (Or. 2004); *Great Lakes Aircraft Co. v. City of Claremont*, 608 A.2d 840, 854 (N.H. 1992). The Defendants make no such showing here. ECF No. 372 at 22-5; ECF No. 381 at 23-25. The Defendants' argument that federal law should govern whether equitable estoppel applies in this case is also unconvincing, because the Arbitration Agreement provides that "[to] the extent state law applies to any aspect of the Arbitration Agreement, or to any disputes and claims that are covered by the Arbitration Agreement, the law of the state . . . of your residence, as determined by your mailing address on file[] with Securus, will govern." ECF No. 261-8 at 7. Given this, the Defendants Platinum and Abry have not shown that they can enforce the Arbitration Agreement and compel the Plaintiffs to arbitrate their claims in this matter. And so, the Court DENIES the Defendant's motion to compel arbitration with regards to Defendants Platinum and Abry.

### E. The Court Stays The Plaintiff's Claims As To Defendant Securus

As a final matter, the Court will stay the claims asserted by Plaintiffs Ashley Albert and Ashley Baxter against Securus, pending the completion of the parties' arbitration proceedings. The Fourth Circuit has held that, when an arbitration agreement is valid and enforceable, the Court must "stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration.'" *Adkins v Lab. Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002). The Fourth Circuit

17

has also recently held that the Court must stay a case pending arbitration, when the case involves an arbitrable dispute and the party opposing a motion to compel arbitration requests a stay of the case if the case is sent to arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024); *SZY Holdings, LLC v. Garcia*, No. 23-1305, 2024 WL 3983944, at *3 (4th Cir. Aug. 29, 2024) ("Section 3 of the FAA 'provides that a court must stay litigation upon being satisfied that the issue is referable to arbitration under the agreement,' so long as 'the applicant for the stay is not in default in proceeding with such arbitration.'" (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019))). And so, the Court STAYS the litigation of Plaintiffs Ashley Albert and Ashley Baxter's claims against Securus, pending the resolution of the parties' arbitration.

## V.  CONCLUSION

In sum, the Defendants have shown that the Plaintiffs and Securus entered into a valid Arbitration Agreement and that the parties agreed to arbitrate this legal dispute. The parties also agreed to arbitrate gateway issues regarding the enforceability and scope of the Arbitration Agreement. In addition, the evidentiary record does not show that the Plaintiffs opted out of the Arbitration Agreement, or that the Defendants waived their right to arbitrate the Plaintiffs' claims. Lastly, the Defendants have not shown that Defendants Platinum and Abry can enforce the Arbitration Agreement. And so, for the foregoing reasons, the Court:

> (1) **GRANTS-in-PART** and **DENIES-in-PART** the Defendants' motion to compel arbitration (ECF No. 261); and

> (2) **STAYS** Plaintiffs Ashley Albert and Ashley Baxter's claims against Defendant Securus, pending the completion of the parties' arbitration proceedings.

**IT IS FURTHER ORDERED** that Defendants Securus, Platinum and Abry shall **FILE** a status report stating whether they intend to pursue, or seek to stay, the motions set forth below, pending the completion of the arbitration proceedings between Securus and the Plaintiffs, **on or before April 15, 2025**.

1. Defendants Abry Partners, LLC's and Abry Partners VII, L.P.'s motion to dismiss the amended complaint (ECF No. 299);
2. Defendant Securus Technologies, LLC's motion to dismiss or, in the alternative, strike class allegations (ECF No. 300); and

3. Defendants Platinum Equity, LLC and Platinum Equity Capital Partners IV, L.P.'s motion to dismiss all claims in the amended complaint or, in the alternative, to strike the class allegations (ECF No. 303).

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge
